UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 19cv6860

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MARCIA KOUTELLOS**

Index_____ - CV-_____

                    Plaintiff,

        -against-

**COMPLAINT**

**FOR EMPLOYMENT DISCRIMINATION**

WELLS FARGO COMPANY
WELLS FARGO BANK, N.A.
                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

TO:  **United States District Court
of the Southern District of New York**

   500 Pearl Street
   New York, NY 10007-1312

CC:  **United States District Court
of the Southern District of New York**

   **Pro Se Intake Unit**
   Thurgood Marshall U.S. Courthouse
   40 Foley Square, Room 105
   New York, New York 10007

From:  MARCIA KOUTELLOS
   **PLAINTIFF PRO-SE**

   One Columbus Place, Apt N34C
   New York, NY 10019
   Phone: +1646.414.4800
   Email: KOUTTMA@GMAIL.COM

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -

MARCIA KOUTELLOS                          Index_____ - CV-_____

                        Plaintiff,


            -against-


WELLS FARGO COMPANY
WELLS FARGO BANK, N.A.          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - -

List of Exhibits included on MARCIA KOUTELLOS' COMPLAINT of EMPLOYMENT DISCRIMINATION
filed with United States District Court Southern District of New York on July 23, 2019.


EXHIBITS DESCRIPTION:

TAB 2 – MARCIA KOUTELLOS – PRO SE – Affidavit

TAB 1 – MARCIA KOUTELLOS – Employment Discrimination Complaint – USDC SDNY Form

TAB 3 – MARCIA KOUTELLOS – EEOC Notice of Suit Rights Letter dated 4/29/19

TAB 4 – MARCIA KOUTELLOS – EEOC ADR Unit Letter & EEOC Investigator's Email

TAB 5 – MARCIA KOUTELLOS – EEOC Complaint filed on November 13, 2018 (in person)

TAB 6 – MARCIA KOUTELLOS – WELLS FARGO Termination Letter & Proposed Departure

Agreement;

TAB 7 – MARCIA KOUTELLOS – WELLS FARGO Amended Complaint dated July 6, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**19 CV 6860**

MARCIA KOUTELLOS

_____

Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

Do you want a jury trial?

☒ Yes   ☐ No

-against-

WELLS FARGO COMPANY

WELLS FARGO BANK, N.A.

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

# EMPLOYMENT DISCRIMINATION COMPLAINT

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

MARCIA

KOUTELLOS

First Name      Middle Initial      Last Name

One Columbus Place, Apt N34C

Street Address      N.Y.      10019

State      Zip Code

New York

County, City      KOUTTMA@GMAIL.COM

646-414-4800

Telephone Number      Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

WELLS FARGO COMPANY

Name

150 East 42nd Street, 18th floor | Phone: 877-479-3557 (Human Resources))

Address where defendant may be served      N.Y.      10017

New York      State      Zip Code

County, City

Defendant 2:

WELLS FARGO BANK, N.A.

Name

150 East 42nd Street, 18th floor | Phone: 877-479-3557

Address where defendant may be served      N.Y.      10017

New York      State      Zip Code

County, City

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
                              State          Zip Code
_____
County, City

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

WELLS FARGO Company  [Corporate Headquarters New York City]
_____
Name

150 East 42nd Street, 18th floor
_____
Address                    N.Y.          10017
                          State          Zip Code
New York
_____
County, City

## III.   CAUSE OF ACTION

### A.   Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒   **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒   race:          Hispanic / Latina

□   color:         _____

□   religion:      _____

□   sex:           _____

☒   national origin:   Hispanic, Brazilian

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law): _____

_____

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☒ did not promote me
- ☐ did not accommodate my disability
- ☒ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☒ other (specify): Racial discrimination and unlawful harassment and retaliation

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

PLAINTIFF MARCIA KOUTELLOS ("MS. KOUTELLOS") IS A 50-year-old FEMALE WHO WAS EMPLOYED BY DEFENDANT WELLS FARGO  FROM SEPTEMBER 1, 2016 TO FEBRUARY 20, 2019 AS VICE PRESIDENT, COMPLIANCE CONSULTANT.  WELLS FARGO DISCRIMINATED AGAINST MS. KOUTELLOS IN THE TERMS AND CONDITIONS OF HER EMPLOYMENT  BECAUSE OF MS. KOUTELLOS' RACE AND NATIONAL ORIGIN (HISPANIC, BRAZILIAN). DEFENDANTS ALSO SUBJECTED  KOUTELLOS TO UNLAWFUL RETALIATION AND RETALIATORY HARASSMENT BECAUSE SHE  OPPOSED DISCRIMINATION IN THE WORKPLACE AND FILED COMPLAINTS OF DISCRIMINATION WITH WELLS FARGO HUMAN RESOURCES

NOTE. FOR ADDITIONAL COMPLAINT DETAILS, PLEASE REFER TO THE ATTACHED DOCUMENT (TOTAL OF 40 PAGES)

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARCIA KOUTELLOS

Plaintiff,

-against-

WELLS FARGO COMPANY
WELLS FARGO BANK, N.A.

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index_____ - CV-_____

COMPLAINT

FOR EMPLOYMENT

DISCRIMINATION

SDNY PRO SE OFFICE
2019 JUL 23  PM 2: 22
RECEIVED

Plaintiff, Marcia Koutellos is Pro Se representation for her complaint against Defendants

Wells Fargo Company and Wells Fargo Bank ("Wells Fargo"), alleges:

## THE PARTIES

1.   Plaintiff, Marcia Koutellos ("Ms. Koutellos"), is a 50-year-old Hispanic female of Brazilian national origin who resides in New York City. Ms. Koutellos was employed by Defendants Wells Fargo Company and Wells Fargo Bank ("Wells Fargo") from September 1, 2016 to February 20, 2019 at its New York City Corporate Headquarters located at 150 East 42nd Street, New York, NY 10017.

2.   Before being recruited to Wells Fargo, Ms. Koutellos rose from early management roles as AVP Credit Examiner at BTM to the position of Vice President at BNY Mellon and Vice President of Global Compliance. Overall, Ms. Koutellos built a successful career record of 26 plus years' employment experience in the United States, working for Global Banks and counterparts in Europe and Latin America.

3.   On August 22, 2016, Ms. Koutellos received Wells Fargo offer of employment for the Compliance Consultant 4 - BCBS Governance Oversight with Corporate title as *"Vice President"*

1

and with annual base salary of USD$150,000.00 dollars. From September 1, 2016 to April 2, 2018, Ms. Koutellos reported directly to her hiring manager, Robert Bing ("Mr. Bing"), SVP/ Compliance Manager 5 - Head of Governance & Reporting. [Mr. Bing could work from his home office in San Diego, CA]. Mr. Bing reported directly to Mrs. Sara Satten ("Ms. Satten"), SVP/ COO Compliance Manager 6, who worked from Wells Fargo Headquarters in San Francisco, CA. Ms. Satten reported to Head of Compliance Group, Ms. Yvette Hollingsworth ("Ms. Hollingsworth"), Wells Fargo Chief Compliance Officer.

(a)   On October 2017, Ms. Hollingsworth was demoted to Regulatory Innovation Officer position and transferred out of Compliance Group. The Chief Compliance Officer position was filled by Mr. Michael Roemer ("Mr. Roemer") on December 2017.

(b)   On March 30, 2018, Ms. Satten resigned from Wells Fargo and her position was filled by Jillian Berman ("Ms. Berman") on the interim basis.

(c)   On April 2, 2018, Mr. Bing resigned from Wells Fargo and his position was filled by Ms. Cynthia Boorman ("Ms. Boorman"), who at that time was also in charged for Compliance Operations team.

(d)   On April 13, 2018, Ms. Koutellos was assigned by Ms. Boorman to work with Ms. Coles, who reported directly to Ms. Boorman. On May 29, 2018, Ms. Koutellos filed a complaint of racial discrimination, retaliation and harassment, including other employment issues for investigation by Human Resources against Ms. Boorman and Ms. Coles and Wells Fargo Executives.

(e)   On January 16, 2019, Wells Fargo Legal Department led by General Counsel, Allen Parker ("Mr. Parker") in an effort to eliminate Ms. Koutellos' employment at Wells Fargo, Mr. Parker offered Ms. Koutellos a "Proposed Settlement Agreement (aka Departure Agreement and Release of Claims)" offering a sum of USD$ 55,000.00 thousand dollars ($35K regular pay + $20K bonus) lump sum payments in exchange for Ms. Koutellos to withdraw her EEOC Charge of Discrimination and not to file any legal actions against Wells Fargo Company and Executives.

2

(f)   On February 7, 2019, after Ms. Koutellos refused to sign the "Proposed Settlement Agreement", Defendants and Wells Fargo Human Resources prohibited Ms. Koutellos to return to work in the office (Wells Fargo Corporate Headquarters in NYC) and cut-off Koutellos' access to all Wells Fargo systems, Corporate emails and internal communication with Wells Fargo Team members. Wells Fargo and Ms. Koutellos' managers demanded for Ms. Koutellos to stay home until further instructions. Wells Fargo terminated Ms. Koutellos employment on February 20, 2019.

4.   Defendant Wells Fargo Company and Wells Fargo Bank, NA ("Wells Fargo") is a New York Corporation with principal place of business and New York Headquarters located at 150 East 42nd Street, New York, NY  10017.

## NATURE OF THE ACTION

5.   This is a civil action for damages and remedies alleging unlawful discrimination and retaliation, in violation Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Administrative Code of the City of New York, § 8-101 et seq. (the "New York City Human Rights Law" or "NYCHRL"); and the New York State Executive Law, § 290 et seq. (the "New York State Human Rights Law" or "NYSHRL").

## JURISDICTION AND VENUE

6.   This Court has original subject matter jurisdiction over the Title VII claims asserted pursuant to 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States and are brought to recover damages for the deprivation of equal rights.

7.   This Court has supplemental jurisdiction over the NYSHRL and NYCHRL claims asserted under the provisions of 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims, and are so related to the federal claims as to form a part of the same case or controversy under Article III of the United States Constitution.

3

8.    Plaintiff, Ms. Koutellos has exhausted her administrative remedies and has complied with all statutory prerequisites to this Title VII claim. On 4/29/2019, EEOC Investigator, Ms. Fogle issued EEOC Notice of Suit Rights.  Any and all other prerequisites to the filing of this complaint have been met.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. §2000e-5(f)(3) because Wells Fargo Corporate Headquarters located at 150 East 42nd Street, New York, NY was the Wells Fargo office where  Ms. Koutellos (Plaintiff) worked and also Wells Fargo (Defendant) conducts business can be found in this district, and a substantial part of the events giving rise to Koutellos' claims occurred in the Southern District of New York.

## SUMMARY OF THE ACTION

10.    As Wells Fargo Company's legitimate employment records reflect, Ms. Koutellos has been an excellent and hardworking employee, who has consistently performed in exemplary fashion since the commencement of her employment on August 31, 2016. Based on Wells Fargo Mid-Year and Year-End Performance Appraisals mandatory by Human Resources, Ms. Koutellos' Year End Performance Review of 2016, which was done by Mr. Bing (Ms. Koutellos' first manager from 09/01/2016 to 04/02/2018) it shows that Ms. Koutellos performed well and met goals/ objectives and expectation set for her performance by Mr. Bing and was awarded an overall performance "meet expectations", which consequently awarded a USD$6,500.00 bonus for fiscal year 2016. During Ms. Koutellos' Year End Performance Review of 2017, also done by Mr. Bing and approved by Sara Satten (Compliance Executive) Ms. Koutellos was awarded an internal YE Performance rating of "meet expectations", which consequently awarded a USD$21,000.00 bonus for fiscal year 2017.

11.    Defendants Wells Fargo discriminated against Ms. Koutellos in the terms and conditions of her employment because of Ms. Koutellos' race and national origin (Hispanic, Brazilian). Ms. Koutellos was the only person in the Compliance group from South America and

4

who also speaks fluent English, Portuguese and Spanish.  Defendants also subjected Koutellos to retaliation and retaliatory harassment because Ms. Koutellos opposed discrimination in the workplace and filed complaints of discrimination with Wells Fargo Head of Human Resources against her Supervisor, Nancy Coles ("Ms. Coles"), Cynthia Boorman ("Ms. Boorman" who was also Ms. Cole's manager) and Michael Roemer ("Mr. Roemer" who was Ms. Boorman's manager) also known as Executive Chief of Compliance. Ms. Koutellos' opposition to discrimination in the workplace resulted in a pattern of ongoing retaliation by Defendants.  Among other things, Koutellos was:

(a)   Progressively stripped of her material responsibilities by Wells Fargo and her managers Ms. Coles, Ms. Boorman and Mr. Roemer at the time when Ms. Koutellos filed several complaints of employment discrimination, harassment and retaliation against Wells Fargo managers (Ms. Boorman, Ms. Coles and Mr. Roemer) with Wells Fargo Head of Human Resources and Wells Fargo CEO;

(b)   Subjected to continuous reprisals by Wells Fargo Human Resources team and Wells Fargo managers (Ms. Boorman, Ms. Coles and Mr. Roemer) when Ms. Koutellos made additional complaints to Wells Fargo Human Resources for investigations of Wells Fargo managers' ongoing retaliation and discriminatory conduct against Ms. Koutellos;

(c)   Wells Fargo and Human Resources failed to promote and interfered with Ms. Koutellos' internal job interviews and internal job transfer to senior positions for which Ms. Koutellos was interviewed and selected by the hiring managers. While defendants retaliated against Koutellos' internal job transfer, Wells Fargo Human Resources allowed Ms. Boorman to internally transfer out of Compliance Group to the PVSI group on December 2018.

(d)   Wells Fargo and Ms. Koutellos' managers (Ms. Boorman, Ms. Coles and Mr. Roemer) didn't allow Ms. Koutellos to have a fair 2018 YE Performance appraisal and instead forced a "Negative Informal Warning" on Ms. Koutellos on November 6, 2018, which could result of termination of Ms. Koutellos' employment at Wells Fargo;

(e)   Defendant Wells Fargo managers (Ms. Boorman, Ms. Coles and Mr. Roemer) subjected Ms. Koutellos to a series of materially adverse employment actions which significantly diminished Ms. Koutellos' material job responsibilities by not assigning any work or tasks to Ms. Koutellos, and excluding her repeatedly from important Compliance group meetings that were required for Ms. Koutellos to get the job done;

(f)   Defendant, Wells Fargo Human Resources and Chief Compliance Officer, Ms. Roemer threatened Ms. Koutellos with employment termination, telling Ms. Koutellos to do what Ms. Coles and Ms. Boorman said, because they were Koutellos' managers at Wells Fargo Compliance department, otherwise Ms. Koutellos was going to lose her employment at Wells Fargo;

(g)   Defendant Wells Fargo hostile environment, personal attacks and ongoing retaliation from Ms. Koutellos' managers (Ms. Boorman, Ms. Coles, Mr. Roemer) and Wells Fargo Human Resources against Ms. Koutellos worsened and Koutellos' health declined, which resulted on unexpected Short-Term Disability (STD) from August 7 to September 10, 2018;

(h)   Defendant Wells Fargo discriminated against Ms. Koutellos, when Ms. Boorman and Mr. Roemer (post Mr. Bing's resignation), assigned Ms. Koutellos' co-workers that were previously reporting to Mr. Bing to managerial positions in the Compliance Group, while Defendants treated Ms. Koutellos different than those co-workers, demoting Koutellos' position, transferring BCBS projects (Ms. Koutellos' job responsibilities) to other employees that lacked BCBS project experience, enforcing a false "Negative Informal Warning" that reflected poor job performance and and finally eliminating Koutellos' employment at Wells Fargo with no probable cause. Ms. Koutellos' co-workers were not Hispanic (like Koutellos) and three of them had the same Corporate title as Koutellos - "Compliance Consultant";

(i)   Defendants (Wells Fargo Human Resources, Legal Department, Ms. Boorman, Ms. Coles and Mr. Roemer) discriminated and retaliated against Ms. Koutellos when she refused to sign a "*Wells Fargo Departure Agreement and Release of Claims*" that was provided by Wells Fargo Legal Department ("Allen Parker") on January 16, 2019.  After Ms. Koutellos proved that

6

she was complying with the goals described in the "Negative Informal Warning" (enforced by management on 11/06/2019), Defendants in efforts to eliminate Ms. Koutellos' employment at Wells Fargo, through the Legal Department offered Ms. Koutellos a "Proposed Settlement Agreement (aka *Departure Agreement and Release of Claims*)" offering a sum of USD$ 55,000.00 thousand dollars ($35K regular pay + $20K bonus) lump sum payments in exchange for Ms. Koutellos to withdraw her EEOC Charge of Discrimination and also not to file any legal actions against Wells Fargo managers and Executives Officers;

(j)   Defendants Wells Fargo retaliated against Ms. Koutellos when she refused to sign the Legal Department "Proposed Settlement Agreement (aka *Departure Agreement and Release of Claims*)" on February 7, 2019 and as a result, prohibited Ms. Koutellos to return to Wells Fargo's office and work from her desk located in the Wells Fargo Corporate Headquarters in New York City. In addition, Wells Fargo cut-off Koutellos' access to all Wells Fargo systems, corporate emails and internal communication with Wells Fargo co-workers and team members. Wells Fargo Human Resources demanded for Koutellos to stay at home until further instructions from Human Resources.

(k)   On February 20, 2019, Ms. Koutellos received an employment termination letter from Chris Baker – "Mr. Baker". Mr. Baker reported to Mr. Roemer, since he replaced Ms. Boorman position on December 2018 and became Ms. Koutellos' new manager. Ms. Koutellos' employment with Wells Fargo was terminated for retaliatory and discriminatory reasons.

(l)   Defendants discrimination against Ms. Koutellos continued after the termination of her employment on February 20, 2019. At Wells Fargo, during fiscal year 2018, while working for Ms. Boorman, Ms. Coles and Mr. Roemer, Ms. Koutellos did not receive any meaningful salary increased or higher bonus incentives from Mr. Roemer, Chief of Compliance, even though Ms. Koutellos proved that she met goals and objectives assigned by Ms. Boorman and Ms. Coles. On March 8, 2019, Defendant Wells Fargo issued a bonus incentive i/a/o USD$5,390.00 for FYE 2018, which was assigned by Mr. Roemer. Other employees in the same group, Ms. Koutellos'

7

co-workers received a much higher bonus than Koutellos for the same period. Again, Koutellos was treated different by Mr. Roemer, Ms. Boorman and Wells Fargo Human Resources. Conversely, during the previous FYE 2017, Ms. Koutellos received a bonus incentive of USD$ 21,000.00 (Twenty-one Thousand Dollars) from Mr. Bing and Ms. Satten in the Compliance group.

(m) When Ms. Koutellos filed her EEOC Charge of Discrimination against Wells Fargo at the EEOC Office in New York City, Ms. Koutellos' complaint was assigned to EEOC ADR Mediation Unit on December 2018 for mediation. The mediation process required for both parties to agree with mediation at EEOC. Based on information from EEOC Staff Mediator ("Mr. Reinman"), Wells Fargo didn't agree with EEOC mediation. Therefore, Ms. Koutellos EEOC Charge of Discrimination was transferred to from EEOC ADR Unit to EEOC Investigation team, Mr. Alvin Mallette on February 11, 2019.

## FACTUAL BACKGROUND

12.   At all times relevant to this Complaint, Plaintiff, Ms. Koutellos was an excellent and hardworking employee, who had consistently performed in exemplary fashion since the commencement of her employment at Wells Fargo. Ms. Koutellos was hired by Mr. Bing and Ms. Satten and work for them in the Compliance group from September 1, 2016 to April 2, 2018. During that period of 18 months, Ms. Koutellos received high praises and two excellent (2016 & 2017) Wells Fargo Year-End Employment Performance Appraisals from Mr. Bing and Ms. Satten, and consequently Ms. Koutellos was awarded a USD$21,000.00 (Twenty-one thousand dollars) bonus on March 2018.

13.   At the time, Mrs. Koutellos was recruited by Wells Fargo Company, she had over 26 plus years of extensive experience in the Financial Services industry, working for other Global Banks and holding senior job positions at Bank of Tokyo Mitsubishi, Royal Bank of Canada, BNY Mellon and among others.

8

14.  During fiscal year 2018, Ms. Koutellos' managers Mrs. Satten (resigned March 31, 2018) and Mr. Bing (resigned April 2, 2018) both resigned from Wells Fargo Company and were replaced by Ms. Boorman, Compliance Manager who became the Head of Compliance Operations group. On April 13, 2018, Ms. Boorman assigned Koutellos' co-workers (total of 4 people) that previously reported to Mr. Bing to managerial positions in the Compliance group. Wells Fargo and Ms. Boorman treated Ms. Koutellos different than those co-workers and assigned Ms. Koutellos to non-managerial positions, demoting Koutellos' position, transferring BCBS projects previously managed by Ms. Koutellos to other Wells Fargo employees that lacked BCBS project management experience. At that time, Ms. Boorman assigned Ms. Koutellos to work for Ms. Coles, who had a Wells Fargo corporate title as Compliance Consultant, which was the same title as Ms. Koutellos. Ms. Coles was not a Compliance Manager as Mr. Bing (Ms. Koutellos' former manager).

15.  Upon information and belief, during that same time period, Ms. Koutellos was treated differently than her non-Hispanic, non-Brazilian peers and co-workers under Ms. Boorman and Ms. Coles management in the Compliance department at Wells Fargo.  None of the other Koutellos' co-workers were stripped of their responsibilities in a similar manner.

16.  On May 29, 2018, Ms. Koutellos filed a several pages complaint of employment discrimination, harassment and retaliation with Wells Fargo Head of Human Resources (Hope Hardison – "Ms. Hardison") against Wells Fargo manager Ms. Boorman and Ms. Coles. In addition, Ms. Koutellos included Wells Fargo CEO, Timothy Sloan ("Sloan") on the email complaint sent to the Head of Human Resources, Ms. Hardison. On October 24, 2018, Ms. Hardison was fired by Wells Fargo CEO, Timothy Sloan and replaced by David Galloreese ("Mr. Galloreese"). On May 28, 2019, Timothy Sloan resigned from Wells Fargo and was replaced by Allen Parker ("Mr. Parker") who previously served as SVP, General Counsel of Wells Fargo.

17. At the time that Ms. Koutellos filed her discrimination complaint with Human Resources, the only remedy she had requested was to be allowed to internally transfer to another position over which Ms. Borman and Ms. Coles would not have supervisory responsibility.

18. Defendant Wells Fargo Human Resources retaliated against Ms. Koutellos when she applied for internal job interviews and transfer to positions for which Koutellos was interviewed and selected by the hiring manager from "Operational Risk" for final interviews with executive managers interested on Ms. Koutellos' career experience. Based on Ms. Koutellos positive performance results of 2016 & 2017 FYE Performance Appraisals and Wells Fargo employment policies Ms. Koutellos could apply for internal transfer and interview for Wells Fargo's jobs via career section. The Operational Risk positions that Ms. Koutellos internally applied and interviewed were managerial roles with corporate manager title and higher salary compensation.

19. Wells Fargo and Human Resources failed to promote and interfered with Ms. Koutellos' internal job interviews and internal transfer to senior positions for which Koutellos was interviewed and selected by respective hiring manager

| Interview Date | Job ID | Wells Fargo Position | Interviewer(s) |
|---|---|
| 4/16/2018 | Operational Risk Manager 4 – Reputational Risk Oversight – Jorie Thomas (Rec) |
| 4/27/2018 | Operational Risk Manager 4 – Financial Crimes Operations – Michael Cho | Manager |
| 4/30/2018 | Financial Crimes Manager 3 – Product Risk Manager HRA –Michael Torregiano |
| 5/15/2018 | Operational Risk Manager 4 – Customer Due Diligence – Kat Claxton (Rec) |
| 5/21/2018 | Operational Risk Manager 4 – Customer Due Diligence – Crystal Reilly /Mark Ward |

(a) On few occasions, Ms. Koutellos applied for positions with "Manager Corporate Title - Vice President within Wells Fargo Operational Risk group. Ms. Koutellos' applications were well received by the hiring managers and executive managers (Michael Cho |Michael Torregiano | Crystal Reilly and Mark Ward) who provided positive feedback from other Wells Fargo managers that had interviewed Ms. Koutellos.  One hiring manager was very interested on Ms. Koutellos

experience and told Ms. Koutellos after four interviews that Ms. Koutellos was selected for the final interview with Executive Manager.

(b)   Ms. Koutellos' final interview with Operations Executive Manager required salary confirmation, approval by Human Resources and work references from Ms. Koutellos current Compliance Manager, Ms. Boorman. Ms. Coles was a Compliance Consultant and not a manager. Human Resources denied Ms. Koutellos final interview with Executive Operations Manager, without further explanation.

(c)   Couple weeks later, the hiring manager from Operations group, called Ms. Koutellos on her personal phone and told Ms. Koutellos how sorry she was about the Human Resources decision. Upon information and belief, Ms. Koutellos was denied the internal transfers because of Ms. Borman's negative references and/or HR's interference, in retaliation for having filed an internal discrimination complaint against Wells Fargo management.

(d)   Upon information and belief, non-Hispanic employees in the Wells Fargo Compliance group, and certainly all employees who had no prior EEOC activity, were either allowed to transfer internally or were promoted to new roles within Compliance. Ms. Koutellos was not allowed to do any of the above.

20.   Defendant Wells Fargo also discriminated against Koutellos' internal job transfer, when Human Resources allowed Ms. Coles and Ms. Boorman to internally transfer to other Wells Fargo groups, but in the case of Ms. Koutellos, Human Resources treated Ms. Koutellos different than Ms. Boorman and Ms. Coles. In addition, Koutellos' co-worker David D'Amico ("Mr. D'Amico"), who also reported to Ms. Boorman and who previously worked with Ms. Koutellos and Mr. Bing, Mr. D'Amico could transfer out of Compliance group to PMO group on February 2019.

21.   After Ms. Koutellos confronted Ms. Boorman and Ms. Coles regarding their discriminatory actions, egregious comments and false accusations they made against her, Ms. Koutellos became victim of significant retaliation:

11

(a)  By way of example only, Ms. Koutellos relied on Ms. Coles, her direct manager, for support in the various Compliance projects and activities that Ms. Coles and Ms. Boorman had assigned to Ms. Koutellos. However, Ms. Boorman and Ms. Coles became unresponsive to, ignored, and failed to act on Ms. Koutellos' requests for follow up emails, project status and management support.

(b)  Defendant, Wells Fargo manager Ms. Boorman and Ms. Coles did not assign Koutellos to new projects and after Koutellos complaint to Human Resources, Ms. Coles and Ms. Boorman severely reduced Ms. Koutellos' assignments and responsibilities;

(c)  Defendants Wells Fargo manager Ms. Boorman and Ms. Coles removed Ms. Koutellos from Compliance group planning, meetings and communications with other Risk Groups, who Ms. Koutellos had already built work relationship required for her job;

(d)  Defendant Wells Fargo Compliance Consultant, Ms. Coles intimidated Ms. Koutellos by telling Koutellos' co-worker David D'Amico ("Mr. D'Amico") that she was going to terminate Koutellos' employment at Wells Fargo before the end of the year 2018. At that time, Ms. Coles worked with Mr. D'Amico on projects (Compliance Plan) that were previously assigned to Ms. Koutellos by Mr. Bing (Koutellos' former manager), but in that case, Ms. Coles excluded Ms. Koutellos from respective projects and important group meetings;

(e)  Defendants Wells Fargo, Ms. Coles and Ms. Boorman harassed Ms. Koutellos by spreading demeaning, false and defamatory information about Ms. Koutellos' work ethics among her fellow employees (including Mr. D'Amico and Ms. Berman), using nicknames for Koutellos ("Troublemaker") which resulted in substantial damage to Ms. Koutellos' reputation;

(f)  Defendants Wells Fargo, Ms. Boorman and Ms. Coles attempted to undermine Ms. Koutellos' work by creating a false and negative "Informal Warning" about Koutellos' work and responsibilities, which could have resulted in her immediate termination;

(g)  Ms. Koutellos made it clear to Wells Fargo Human Resources that Ms. Boorman, Ms. Coles and Mr. Roemer had been targeting her because of her national origin and race (Brazilian,

12

Hispanic), but no meaningful corrective action was undertaken. Instead, defendants intensified their retaliatory actions against Ms. Koutellos.

22.   Consequently, matters worsened after June 13, 2018, Ms. Coles sent several emails to Ms. Koutellos accusing her, without basis, in a rather curt and harsh manner of missing deadlines and not diligently working on a project. Ms. Koutellos was disappointed with both content and tone of emails from Ms. Coles and Ms. Boorman emails, disparaging Ms. Koutellos ethics, responsibilities and management skills. When Ms. Koutellos created email rebuttals to defend herself and protect her employment at Wells Fargo, Ms. Koutellos told Ms. Coles that she was going to report those issues to Wells Fargo Head Human Resources, Ms. Hardison. Ms. Coles and Ms. Boorman had no comments.

23.   On June 13, 2018, Ms. Koutellos mentioned to Wells Fargo Human Resources, Mr. Thompson that Ms. Boorman and Ms. Coles had issued fourteen emails with false accusations, defamatory comments and discriminatory actions against Ms. Koutellos' professionalism, job qualifications, work conduct, job performance, among other employment violations.

(a)   Defendant Wells Fargo, Ms. Coles and Ms. Boorman wrote an extensive and fraudulent emails with false information to document that Ms. Koutellos was not doing the job according to their expectations. They often made negative remarks and baseless accusations about Ms. Koutellos' work performance and threatened Ms. Koutellos with a poor performance appraisal, which could result on termination of my employment at Wells Fargo

(b)   Defendant Wells Fargo discriminatory actions from Ms. Boorman and Ms. Coles about "meals period" consisted of prohibiting Ms. Koutellos to take lunch hour, coffee and bathroom breaks during business hours, which were in violation of NYS Labor Department. Ms. Boorman and Ms. Coles didn't enforce the same actions on other employees that reported to Ms. Boorman, instead Ms. Boorman treated Ms. Koutellos different that other employees in the Compliance group;

13

(c)   Based on Ms. Coles' email of May 7th, she stated: "if you (Ms. Koutellos) choose to work 9:00 – 5:00, _you do not have an available lunch_ hour for personal business". Ms. Boorman and Ms. Coles did NOT enforce the same group rule to other team members that worked for Ms. Boorman. Ms. Koutellos called NYS Labor Department and informed that employees that worked 9 hours can have 30 minutes break. Ms. Coles and Ms. Boorman actions against Ms. Koutellos were a critical violation of Wells Fargo policies and New York State Labor Standards, as described below:

-   **Wells Fargo Meals & Rest Periods Policy: New York**

"30-minute meal period for team members working more than 6 hours extending over "noon day meal period" (11:00 a.m. to 2:00 p.m.); additional 20-minute meal period, taken between 5:00 p.m. and 7:00 p.m., if shift begin before 11:00 a.m. and continues past 7:00 p.m."

-   **New York State Labor Standards: "Guidelines for Meal Periods"**

"Every person employed in or in connection with a mercantile or other establishment or occupation coming under the provisions of this chapter shall be allowed at least thirty minutes for the noonday meal, except as in this chapter otherwise provided. The noonday meal period is recognized as extending from eleven o'clock in the morning to two o'clock in the afternoon. An employee who works a shift of more than six hours, which extends over the noonday meal period, is entitled to at least thirty minutes off within that period for the meal period

(d)   Defendants Wells Fargo, Ms. Boorman and Ms. Coles used Wells Fargo Skype for Business application to harass Ms. Koutellos when she was taking time for lunch and out of my desk, threatened Ms. Koutellos with poor job performance. Defendants Wells Fargo, Ms. Coles told Ms. Koutellos that she was monitoring Ms. Koutellos work performance using Wells Fargo Skype for Business and it showed that Ms. Koutellos' Wells Fargo Skype was "inactive for a long period of time" and Ms. Coles said that it was unacceptable, because Ms. Boorman and Ms. Coles demanded for Ms. Koutellos to be at her desk at all times. Conversely, Ms. Boorman and Ms.

14

Coles didn't do the same to other employees or Ms. Koutellos' co-workers in the Compliance groups, only to Ms. Koutellos. However, when Ms. Koutellos use their approach to use Skype (Wells Fargo Skype application) and took screenshots of Ms. Boorman and Ms. Coles' Skype" to monitor their time spent in the office, it shows that Ms. Coles and Mr. Boorman's skype were inactive during business hours for a long period of time. During lunch time their "skype" were inactive for more 60 minutes. It proves that Ms. Boorman and Ms. Coles didn't comply with the same rules that they enforce only on Ms. Koutellos. Ms. Boorman and Ms. Coles harassment were in violation of Wells Fargo "Meals Policies" and New York State Labor Laws;

(e)   At one occasion when Ms. Boorman travelled from Charlotte, NC to Wells Fargo New York office for a meeting with Ms. Jillian Berman (Ms. Berman) and Mr. David D'Amico (Mr. D'Amico), Ms. Boorman went to Ms. Koutellos' desk and asked Ms. Koutellos to meet with Ms. Boorman in the New York office to go over project notes. However, when Ms. Koutellos went to the office to meet with Ms. Boorman, the subject of meeting wasn't project status, but instead, Ms. Boorman use the time to give Ms. Koutellos a verbal warning and threatened Ms. Koutellos with a poor job performance, because Ms. Koutellos had complained about Ms. Coles' harassment actions to Ms. Boorman. Ms. Boorman's verbal warning demanded for Ms. Koutellos 1) to schedule doctor's visit after work business hours; 2) to limit time out of Ms. Koutellos' desk for short bathroom breaks; 3) Koutellos to pick up lunch and eat at the office desk, among other violations. Again, Ms. Koutellos was harassed by Ms. Boorman and treated different than other employees that worked for Ms. Boorman.

(f)   Defendant Wells Fargo, Ms. Boorman and Ms. Coles also discriminated against Ms. Koutellos previous health condition. During the meeting in person with Ms. Koutellos in the New York office, Ms. Boorman told Ms. Koutellos that she was aware of Ms. Koutellos previous health condition related to DVT (Blood Clot disorder Ms. Koutellos had on December 2017, while working for Mr. Bing) and recommended that it would be better for Koutellos to look for another job outside Wells Fargo Company. Based on Wells Fargo Human Resources (Ms. Jo Bingham) employee's

personal health records are confidential and cannot be disclosed to Wells Fargo management. Ms. Boorman used Ms. Koutellos previous health condition to harass Ms. Koutellos and threatened Ms. Koutellos with poor job performance.

(g)   When Ms. Koutellos emailed Ms. Boorman and Ms. Coles to escalate project issues with another team (Reporting Analytics - who also report to Ms. Boorman) that was not providing Ms. Koutellos project information required for Ms. Koutellos to complete Ms. Coles' projects, Ms. Koutellos complaint to Ms. Boorman and Ms. Coles that other employees in Ms. Boorman's group were not providing project information or status to Ms. Koutellos, and was causing severe delays for Ms. Koutellos to complete respective activities assigned by Ms. Boorman. Instead of, helping Ms. Koutellos, Ms. Boorman and Ms. Coles heavily criticized Ms. Koutellos for escalating those critical issues and blamed Ms. Koutellos for other employees' delays in providing information for respective projects to Ms. Koutellos.

(h)   Defendant Wells Fargo, Ms. Coles was a Compliance Consultant (not a manager) and she was assigned by Ms. Boorman to manage Ms. Koutellos. Therefore, Ms. Koutellos relied on Ms. Coles for support of various projects that were related to reporting strategy and other internal processes. However, after Ms. Koutellos created an email rebuttal and confronted Ms. Coles to oppose her violations of Wells Fargo employment policies and New York State Labor Standards Law, which were described on Ms. Coles email of May 7, 2018, both Ms. Coles and Ms. Boorman have increased their harassment and retaliation against Ms. Koutellos, creating a hostile environment at Wells Fargo;

24.   Ms. Koutellos has been subjected to systemic retaliation, discrimination and continuous harassment by Ms. Boorman and Ms. Coles, which actions against Ms. Koutellos became utterly intolerable and has negatively impacted my work environment at Wells Fargo, creating a hostile work environment

16

25.   Defendant Wells Fargo Human Resources retaliated against Ms. Koutellos in the months that followed many of Koutellos' verbal and written complaints to Human Resources, from May 2018 to October 2018:

(a)   On May 2018, Wells Fargo Human Resources ("Ms. Hardison") assigned Stephen Thompson ("Mr. Thompson"), Wells Fargo Employee Relations Consultant to work with Ms. Koutellos on the investigation of Koutellos' complaint of discrimination submitted to Human Resources. In addition, Ms. Hardison assigned Human Resources manager Cynthia Menaker ("Ms. Menaker") to work with Ms. Boorman, Ms. Coles and Mr. Roemer.

(b)   Defendant Wells Fargo Human Resources (Mr. Thompson) investigation process had to be conducted via phone call, because Mr. Thompson was working from Wells Fargo in Minneapolis, MN, while Ms. Koutellos was working from Wells Fargo Headquarters in New York City, NY. During the investigation process by Human Resources, Ms. Koutellos complained repeatedly about Ms. Boorman, Ms. Coles and Mr. Roemer misconduct, harassment and retaliation to Human Resources and Mr. Thompson, which are described in the "Factual Background" section of this Complaint.

(c)   During Mr. Thompson (Wells Fargo Human Resources) first investigation phone call with Ms. Koutellos, <u>Mr. Thompson assured Ms. Koutellos that she wasn't going to lose her job or be terminated by Wells Fargo</u>, because Koutellos' employment records at Wells Fargo since September 2016 (to that date – May 2018) confirmed Koutellos had excellent employment records with positive comments from her former managers Mr. Bing and Ms. Satten. Koutellos' excellent work performance was documented by Mr. Bing on Koutellos' 2016 and 2017 "FYE Performance Appraisals". Mr. Thompson also confirmed that based on Wells Fargo employment policies, an employee with good performance cannot be terminated, because he or she made a complaint against manger's discrimination, retaliation and employment violations.

(d)   During Mr. Thompson's investigation process, Koutellos was permitted to amend her original complaint of discrimination and add detailed complaint information and supporting

17

documentation/ reference materials (300+ pages) of the severe discrimination, retaliation, harassment and hostile environment for Human Resources investigation.

(e)   On June 13, 2018, Ms. Koutellos mentioned to Wells Fargo Human Resources, Mr. Thompson that Ms. Boorman and Ms. Coles had issued 14 emails with false accusations and discriminatory actions against Ms. Koutellos. The discriminatory actions consisted of prohibiting Ms. Koutellos to take lunch hour, coffee and bathroom breaks during business hours. Ms. Boorman and Ms. Coles didn't enforce the same actions on other employees that work in the same Compliance group that reported to Ms. Boorman and treated Ms. Koutellos different that other employees. Furthermore, those discriminatory actions against Koutellos were in violation of NYS Labor Department.

(f)   Ms. Koutellos complained to Defendant Wells Fargo, Mr. Thompson about Ms. Boorman and Ms. Coles illegal harassment when they used Wells Fargo SKYPE online application from their desk located in Charlotte, NC to monitor Ms. Koutellos whereabouts (lunch, coffee, bathroom breaks) and time when Ms. Koutellos was not at her desk located in New York City, NY. Ms. Boorman and Ms. Coles had violated Wells Fargo policies and practices.

(g)   On June 2018, Ms. Koutellos' received a total of fourteen emails from Defendant Wells Fargo, Ms. Boorman, Ms. Coles and Mr. Roemer, which comprised of false accusations about Koutellos' work and professionalism, including retaliatory comments and discriminatory conduct against Ms. Koutellos. As a result, Ms. Koutellos created rebuttal emails and filed additional complaints of ongoing race discrimination, harassment and retaliatory conduct against Ms. Boorman, Ms. Coles and Mr. Roemer with Wells Fargo Human Resources and Mr. Thompson for investigations.

(h)   On June 13, 2018, in order to protect her job and reputation at Wells Fargo, Ms. Koutellos mentioned to Defendant Wells Fargo, Mr. Thompson (Human Resources) that she had created fourteen emails rebuttal on all false email accusations received from Ms. Boorman, Ms. Coles and Mr. Roemer. Ms. Koutellos' emails rebuttals demonstrated the racial discrimination that Ms.

18

Koutellos has been subjected by Wells Fargo managers, including an increase of ongoing retaliation and harassment after Ms. Koutellos filed initial complaint of discrimination with Wells Fargo Human Resources. Overall, Ms. Boorman, Ms. Coles and Mr. Roemer racial discrimination against Koutellos worsened when they kept treating Ms. Koutellos different than other (thirty) employees that reported to Ms. Boorman and Mr. Roemer in the same Compliance group.

(i)   On June 2018, Ms. Koutellos asked Defendant Wells Fargo, Human Resources (Mr., Thompson), if she could apply for an internal job transfer, while he was conducting investigation of Koutellos' complaint of discrimination. Mr. Thompson confirmed that based on Wells Fargo policies, Ms. Koutellos was entitled to apply and interview for internal jobs at Wells Fargo, because Ms. Koutellos had good performance employment records and Ms. Koutellos never had a negative complaint from her previous managers. However, as described in the "Factual Background" section of this Complaint Human Resources violated Wells Fargo employment policies and interfered with Ms. Koutellos internal job applications and interviews arranged by respective hiring managers.

(j)   On July 18, 2018, Defendant Wells Fargo, Mr. Thompson confirmed via email to Ms. Koutellos that he was going to proceed with "Fact Finding" and conduct meetings and interviews with those individuals listed on my complaint of discrimination and he would have a better idea when he would get it done with his investigation. Ms. Koutellos mentioned to him that the ongoing discrimination and retaliation from Ms. Boorman, Ms. Coles and Mr. Roemer had worsened creating a hostile environment for Ms. Koutellos.

(k)   On August 7, 2018, Defendant Wells Fargo, Mr. Thompson confirmed via email that he had additional witnesses to interview (3 to 4) and would reach out to Ms. Koutellos for additional questions.

(l)   On September 5, 2018, Ms. Koutellos requested for Defendant Wells Fargo, Mr. Thompson to provide an update on the status of Human Resources investigation and Mr. Thompson mentioned via email that he was waiting for feedback from the "Human Resources

19

Extra Review Process" team. The review team comprised of External Corporate Lawyers hired to

provide their review of Wells Fargo cases that might result on Federal litigation.

(m)   On September 21, 2018, Ms. Koutellos submitted a detailed email complaint to

Defendant Wells Fargo, Human Resources (Ms. Hardison & Mr. Thompson) and Wells Fargo

CEO ("Mr. Sloan") requesting to stop the ongoing retaliation and harassment that Ms. Koutellos

was subject for opposing discrimination in the workplace at Wells Fargo. To that date, no decision

was made by Wells Fargo Human Resources about Ms. Koutellos' complaint of employment

discrimination.

(n)   October 10, 2018, Defendant Wells Fargo, <u>Mr. Roemer told Human Resources not to</u>

<u>take any action against Ms. Boorman and Ms. Coles.</u> In addition, Mr. Roemer sent an email to Ms.

Koutellos to let her know that based on Human Resources investigation of Ms. Koutellos'

complaint of discrimination, Mr. Roemer had made a decision in not to take any actions against

Ms. Boorman and Ms. Coles, because in his opinion Ms. Koutellos complaint of discrimination

was "misunderstanding".

(o)   On October 25, 2018 – Defendant Wells Fargo, Human Resources Investigator, Mr.

Thompson published Human Resources Closure Memo. Since the time (May 29, 2018) that Ms.

Koutellos filed a complaint of discrimination with Human Resources, it took five months for Wells

Fargo Human Resources to issue a "Closure Memo" to end the investigation. Wells Fargo Human

Resources "Closure Memo" issued by Mr. <u>Thompson was emailed to Ms. Koutellos after the fact</u>

<u>that the Chief of Compliance, Mr. Roemer, made his decision (via email) in not to take any actions</u>

<u>against Ms. Boorman and Ms. Coles.</u>

26.   Although, Ms. Koutellos had the ability to vindicate her employment rights

immediately in Court and/or before various governmental agencies, such as EEOC, Ms. Koutellos

decided to address the egregious mistreatment of retaliation, harassment and racial discrimination

directly with Wells Fargo Human Resources Department. Therefore, Ms. Koutellos took actions

on the following dates:

(a)   **May 31, 2018** – <u>Wells Fargo Human Resources Acknowledgement</u>. – Defendant Wells Fargo, Human Resources (Ms. Hardison) forwarded my Complaint of Discrimination to Wells Fargo Employment Relations Allegations Dispute team for investigation. Steve Thompson (Mr. Thompson), Senior Consultant Employee Relations was assigned to my case. Contact info: Wells Fargo Corporate Human Resources, 550 S, 4th Street, 11th floor, Minneapolis, MN 55415. (Tel: 763.273.20.29 / Fax: 866.668.5460 – Email: Stephen.thompson2@wellsfargo.com

(b)   **June 7, 2018** – <u>Phone Interview with Human Resources</u> – Defendant Wells Fargo, Steve Thompson, Senior Consultant Employee Relations located in Minneapolis office of Human Resources set up a phone interview via conference call with me to discuss my complaint of discrimination, retaliation and harassment among other allegations against Ms. Boorman and Ms. Coles.

(c)   **June 13, 2018** – <u>Marcia Koutellos created/ responded a total of 14 email rebuttals</u> to Ms. Boorman and Ms. Coles' fraudulent accusations and discriminatory actions against Ms. Koutellos. Those emails rebuttals comprised of detail explanation and attachments to defend Ms. Koutellos from each discriminatory action and false accusation against me. Their discriminatory actions demonstrated that Ms. Boorman and Ms. Coles were treating Ms. Koutellos different than other Wells Fargo employers that reported to Ms. Boorman in the Compliance group.

(d)   **June 14, 2018** – <u>Ms. Koutellos sent an email to Defendant Wells Fargo, Chief of Compliance, Mr. Roemer</u> - After sending those emails rebuttals to Ms. Boorman and Ms. Coles, Ms. Koutellos reached out to Mr. Roemer via email to report the discrimination against me by Ms. Boorman and Ms. Coles. Mr. Roemer acknowledged receipt and copied Addy Gould ("Ms. Gould") manager from Wells Fargo Human Resources.

(e)   **June 27, 2018** – Ms. <u>Koutellos provided supporting documentation to Defendant Wells Fargo, Human Resources</u>. – As a result of phone interview with Mr. Thompson, Human Resources Senior Consultant Employee Relations, Ms. Koutellos submitted via email 300 pages of supporting documentation and reference materials for his investigation.

(f)     **June 28, 2018** – <u>Demotion of my BCBS Job Responsibilities by Ms. Coles and Ms. Boorman</u> – <u>Additional discriminatory actions by Defendant Wells Fargo, Ms. Boorman and Ms. Coles against Ms. Koutellos</u> were reported to Human Resources via email dated 6/28/2018 and copied was sent to Mr. Roemer (Ms. Boorman's manager). Those actions were reported to Wells Fargo Human Resources, Steve Thompson for investigation.

(g)     **June 28, 2018** – <u>Wells Fargo Human Resources update from Ms. Gould</u>. She confirmed via email that <u>Cynthia Menaker, Human Resources Employer Relations Manager was assigned to provide legal support to</u> Ms. Boorman and Ms. Coles, while Mr. Thompson was investigating Ms. Koutellos complaint of discrimination against Ms. Boorman and Ms. Coles. Nobody in the Human Resources Employer Relations was assigned to support Ms. Koutellos, as Human Resources assigned Cynthia Menaker to support Ms. Boorman and Ms. Coles.

(h)     **July 6, 2018** – <u>Ms Koutellos submitted an amended complaint to Defendant Wells Fargo, Human Resources</u>. - Based on discussion with Defendant Wells Fargo, Mr. Thompson, Ms. Koutellos could submit an amended complaint with details of each discriminatory action made on the original complaint. The amended complaint comprised of 49 pages, including 300+ pages of supporting documentation was emailed to the Head of Human Resources, Ms. Hardison and Ms. Thompson, Human Resources investigator.

(i)     **July 11, 2018** – <u>Mr. Thompson initiated Human Resources Investigation</u>. Defendant Wells Fargo, Mr. Thompson acknowledged receipt of Ms. Koutellos' amended complaint of discrimination and confirmed that he was going to begin the investigation of  amended complaint and supporting documentation previously provided by Ms. Koutellos.

(j)     **July 18, 2018** – Defendant Wells Fargo, Mr. Thompson confirmed via email that he was going to conduct meetings and interviews with individuals mentioned on Ms. Koutellos' complaint and he would have a better idea when he would get it done with his investigation.

(k)     **July 26, 2018** – Defendant Wells Fargo, <u>Mr. Thompson issued Confirmation Memo</u> – As a follow up to a call with Mr. Thompson on 7/6/2018, the next day, he confirmed the intent to

proceed with a "Fact Finding" to investigate Ms. Koutellos complaint of discrimination against Ms. Boorman and Ms. Coles.

(l)      **August 7, 2018** – Defendant Wells Fargo, <u>Wells Fargo investigation update</u> – Mr. Thompson from Human Resources sent an email to Ms. Koutellos confirming that he had additional witnesses to interview (3 to 4) and would reach out to Ms. Koutellos for additional questions.

(m)     **August 7 to September 10, 2018** – Ms. Koutellos Short Term Disability – Ms. Koutellos was put on mandatory Short-Term Disability by her doctor. At Wells Fargo, Liberty Mutual Insurance managed and reviewed Ms. Koutellos medical records on behalf of Wells Fargo Company.

(n)     **September 5, 2018** – <u>Human Resources "Extra Review Process"</u> – Defendant Wells Fargo, Mr. Thompson mentioned via email that he was waiting for feedback from the *"Human Resources Extra Review Process"* team. *The "Extra Review Team" comprised of External Corporate Lawyers hired by Wells Fargo to provide their review of Wells Fargo cases that will result on Federal litigation.*

(o)     **September 19, 2018** – Ms. Koutellos sent a follow up letter Defendant Wells Fargo, Ms. Hardison and Mr. Thompson in Human Resources, describing the ongoing discrimination and additional harassment and retaliation by Ms. Boorman and Ms. Coles

(p)     **September 21, 2018** – Ms. Koutellos sent out an email requesting for defendants to stop their discrimination and harassment. Ms. Koutellos sent out an email to Defendant Wells Fargo, Ms. Boorman and Ms. Coles describing the ongoing harassment activities and additional retaliation that Ms. Koutellos has been subjected for opposing discrimination in the workplace at Wells Fargo. The following manager were included / copied on the subject email: Head of Human Resources (Ms. Hardison), HR Investigator (Mr. Thompson) and Chief of Compliance (Mr. Roemer).

(q)   **September 21, 2018** – <u>Response from Mr. Roemer, Chief of Compliance.</u> – Defendant Wells Fargo, Chief of Compliance (Mr. Roemer) affirmed that Wells Fargo Employee Relations, (Mr. Thompson) is the group responsible to investigate Ms. Koutellos' complaint of discrimination at Wells Fargo.

(r)   **October 9, 2018** – Ms.<u> Koutellos emailed a new complaint letter to Defendant Wells Fargo, Head of Human Resources (Ms. Hardison, and Mr. Thompson).</u> Ms. Koutellos highlighted the discriminatory actions and ongoing retaliation that she has been subjected for the past six months, which became utterly intolerable and negatively impacted Ms. Koutellos' health and work environment at Wells Fargo.  The following managers were included / copied on the subject email: Chief of Compliance (Mr. Roemer), Ms. Boorman and Ms. Coles.

(s)   **October 10, 2018** – <u>Defendant Wells Fargo, Chief of Compliance issued decision in favor of Ms. Boorman and Ms. Coles.</u> After receiving a new complaint from Ms. Koutellos (October 9, 2018) Mr. Roemer's sent an email to Ms. Koutellos confirming that based on Human Resources investigation, he made a decision not to take action against Ms. Boorman and Ms. Coles, because in his opinion Ms. Koutellos' complaint of discrimination to Human Resources was comprised of "misunderstandings" and not employment violations or discrimination. Furthermore, Ms. Roemer instructed Ms. Koutellos that she will need to work with Ms. Boorman and Ms. Coles, because they are Ms. Koutellos' managers. Michael Roemer copied Cathy Weihl and Steve Thompson from Wells Fargo Human Resources team. In addition, Defendant Wells Fargo, Mr. Roemer informed that Human Resources at Wells Fargo is responsible for investigating allegations of harassment, discrimination and retaliation, but at the end its his responsibility as the Executive Chief of Compliance at Wells Fargo to review the outcome and make a final decision about each case. – Eventually, Defendant Wells Fargo, Mr. Roemer ignored that Ms. Koutellos' complaint also included allegations of discrimination against Mr. Roemer, but as it seems Wells Fargo Human Resources allow Mr. Roemer to violate Ms. Koutellos employment and repeatedly discriminate against Ms. Koutellos.

24

(t)    **October 10, 2018** – <u>Ms. Koutellos' rebuttal</u> to Defendant Wells Fargo, Chief of Compliance decision in favor of Ms. Boorman and Ms. Coles. Ms. Koutellos wrote back to Mr. Roemer to acknowledged his decision and to let him know that she disagreed with his findings, because Ms. Koutellos' company's employment records reflected that based on her previous manager Robert Bing appraisals, she was an excellent hardworking employee, who consistently performed in exemplary fashion since the commencement of her employment at Wells Fargo and never had any misunderstandings or issues with her former manager, Mr. Bing. However, after Ms. Koutellos was assigned to Ms. Boorman and Ms. Coles, they have violated Ms. Koutellos employment rights and policies at Wells Fargo and discriminated against Ms. Koutellos, always treating Ms. Koutellos different than other employees in the Compliance group.

(u)    **October 16, 2018** – Ms. Koutellos sent a complaint letter to Defendant Wells Fargo, Human Resources (Ms. Hardison and Mr. Thompson) and **CEO** (Mr. Sloan) and Chief of Risk Management (Mandy Norton – Ms. Norton, who is also Mr. Roemer's manager). Ms. Koutellos described the ongoing discriminatory actions and fraudulent accusations which she has been subjected by Ms. Boorman, Ms. Coles and Mr. Roemer. In addition, Ms. Koutellos requested for Human Resources to explain:

I.    Defendant Wells Fargo, Mr. Roemer's decision in favor of Ms. Boorman and Ms. Coles on several complaints of discrimination that Ms. Koutellos filed with Human Resources for investigation and where Mr. Roemer was also being accused of discrimination against Ms. Koutellos.

II.    At Wells Fargo, Mr. Roemer, Chief of Compliance has a direct reporting line to the Mandy Norton, the Chief of Risk Management and not Human Resources.

III.    Defendant Wells Fargo, Mr. Roemer's decision was bias, because due to the fact that Ms. Boorman from Compliance Operations reports to him and he depends on Ms. Boorman and Ms. Coles to provide critical reporting deliverables mandatory by the US Regulators, it was easy for him to ignore Ms. Boorman and Ms. Coles' discriminatory actions against Ms. Koutellos.

(v)    **October 18, 2018** – <u>Ms. Koutellos sent a new complaint to Wells Fargo Head of Human Resources (Ms. Hardison and Mr. Thompson) and CEO (Mr. Sloan) and Chief of Risk Management (Mandy Norton – Ms. Norton)</u>. On the email, Ms. Koutellos provided an overview of flaws with Human Resources investigation process and the continuous retaliation and harassment from Ms. Boorman and Ms. Coles, including a new complaint against Mr. Roemer for his retaliatory conduct in protecting Ms. Boorman and Ms. Coles and violating Ms. Koutellos employment rights. Ms. Koutellos affirmed that after Mr. Roemer's decision in favor of Ms. Boorman and Ms. Coles, they have continued with their retaliation and discriminatory actions against Ms. Koutellos, which eventually will result on negative performance evaluation that will lead to termination of Ms. Koutellos employment at Wells Fargo.

(w)    **October 24, 2018** – Defendant Wells Fargo, CEO announced employment termination of  Hope Hardison (Head of Human Resources). As a result, Hope Hardison was replaced by David Galloreese, who became the New Head of Human Resources, reporting directly to Tim Sloan.

(x)    **October 25, 2018** – Defendant Wells Fargo, Human Resources (Mr. Thompson) decision – <u>Closure Memo to formally end Human Resources investigation</u>. It took five months (5/29/18 – 10/25/18) for Mr. Thompson to publish Human Resources decision about Ms. Koutellos' complaint of employment discrimination. *Mr. Thompson closure memo was provided after the fact that the Chief of Compliance, Mr. Roemer, made his decision in favor of Ms. Boorman and Ms. Coles and not to take any actions against Ms. Boorman and Ms. Coles.*

(y)    Before Mr. Roemer's announcement (October 10, 2018) about his decision in not to take any action against Ms. Boorman and Ms. Coles, Defendant Wells Fargo, Human Resources didn't provide any explanation about "investigation findings" to Ms. Koutellos. Instead, Defendant Wells Fargo, Human Resources allowed Mr. Roemer, Chief of Compliance to make a final decision about the Human Resources investigation. Mr. Roemer's decision in favor of Ms. Coles and Ms. Boorman was another violation of Wells Fargo employment policy. How Defendant Wells

26

Fargo, Mr. Roemer was allowed to make a final decision on behalf of Human Resources, due to the fact that 1) Ms. Koutellos had also complained about Mr. Roemer's actions on her complaint of discrimination filed with Human Resources and 2) Mr. Roemer has a direct reporting line to Ms. Norton, Head of Risk Management, which is unrelated to Wells Fargo Human Resources.

(z)   **November 2, 2018 – <u>Ms. Koutellos complaint to the new Wells Fargo Head of Human Resources</u>,** David Galloreese ("Mr. Galloreese") requesting for his review of my previous complaint of discrimination against Ms. Boorman, Ms. Coles and Mr. Roemer and the "bias decision" made by Mr. Roemer. David Galloreese instructed Ms. Koutellos to contact Wells Fargo Employer Relations manager Tanita Toliver.

27.   Upon information and belief, Defendant Wells Fargo, Human Resources did not conduct a fair and impartial investigation of Ms. Koutellos' allegations.  At no time did Human Resources intervene to stop the retaliatory harassment to which Ms. Koutellos was subjected by Mr. Roemer (Chief Compliance Officer), Ms. Boorman (Compliance Manager – reported to Mr. Roemer) and Ms. Coles (Compliance Consultant – reported to Ms Boorman). Wells Fargo Human Resources (Mr. Thompson) response to Koutellos' repeated complaints against all defendants were in favor of Mr. Roemer, Ms. Boorman and Ms. Coles.

28.   Ms. Koutellos was not informed of any corrective actions that were undertaken by Defendant Wells Fargo, in response to her complaints.  Instead, Defendants increased their retaliatory actions against Ms. Koutellos for having filed a formal complaint of racial discrimination against Ms. Boorman and Ms. Coles and additional retaliation by Mr. Roemer.

29.   November 6, 2018 – <u>Wells Fargo INFORMAL WARNING from Defendant Wells Fargo, Ms. Boorman, Ms. Coles and Mr. Roemer.</u> Ms. Coles set up a conference call with Ms. Koutellos to review project status, as described in the "subject line" of Ms. Coles meeting invite. However, at the beginning of the call Ms. Coles announced that Ms. Boorman had joined the call to discuss mandatory requirements of "Negative Informal Warning" that Mr. Roemer had created for Ms. Koutellos.

I.      The Negative Informal Warning" comprised of negative and false remarks of Koutellos' work performance review that would result in Koutellos' immediate employment termination.

II.     The manager's comments in the "Negative Informal Warning" created by Mr. Roemer, Ms. Boorman and Ms. Coles, materially contradicted all of Ms. Koutellos' previous performance reviews, from Mr. Bing (Koutellos' former manager) as well as the less formal positive feedback that Ms. Koutellos had regularly received from her coworkers and managers from BCBS Reporting Program and Enterprise Data group.

III.    During the review of Negative Informal Warning, with Defendant Wells Fargo, Ms. Boorman and Ms. Coles via conference call, they refused to explain to Ms. Koutellos the false negative commentary that they created about Ms. Koutellos performance.

IV.     When Ms. Koutellos told Defendant Wells Fargo, Ms. Boorman and Ms. Coles that she had already initiated a complaint of "Charge of Discrimination" with the United States Equal Employment Opportunity Commission ("EEOC") office in New York City, Ms. Boorman and Ms. Coles  stopped review of "Negative Informal Warning" and told Ms. Koutellos to reach out to Wells Fargo Human Resources for further information about the "Negative Informal Warning".

30.    November 15, 2018 - Ms. Koutellos has been subjected to systemic retaliation, discrimination and continuous harassment by Defendant Wells Fargo, Ms. Boorman, Ms. Coles and Mr. Roemer, which actions against Ms. Koutellos became utterly intolerable and has negatively impacted her work environment at Wells Fargo, creating a hostile work environment. As a result of ongoing discrimination, retaliation and hostile environment from all defendants and Human Resources, Koutellos' health declined, resulting on unexpected Short-Term Disability (STD) from November 15, 2018 to December 31, 2018

31.    On December 20, 2018 - Defendant Wells Fargo, Human Resources allowed Ms. Boorman to internally transfer out of Compliance Group to the PVSI group on December 2018, reporting directly to the Control Executive -Mani Sulur (Mr. Sulur"). Ms. Boorman's internal transfer was a job promotion. As a result of Ms. Boorman internal transfer to PVSI on December

28

2018, she was replaced by Chris Baker in the Compliance group and he became Ms. Koutellos new manager at Wells Fargo on January 2019

32.    On January 16, 2019 -  Defendant Wells Fargo, Legal Department led by General Counsel, Allen Parker ("Mr. Parker")  in an effort to eliminate Ms. Koutellos' employment at Wells Fargo, Mr. Parker offered Ms. Koutellos a "Proposed Settlement Agreement (*aka Departure Agreement and Release of Claims*)" offering a sum of USD$ 55,000.00 thousand dollars ($35K regular pay + $20K bonus) lump sum payments in exchange for Ms. Koutellos to withdraw her EEOC Charge of Discrimination and not to file any legal actions against Wells Fargo and Executives.

33.    On February 7, 2019 - After Ms. Koutellos refused to sign the "Proposed Settlement Agreement", defendants and Wells Fargo Human Resources  prohibited Ms. Koutellos to return to work in the office (Wells Fargo Corporate Headquarters in NYC) and cut off Koutellos' access to all Wells Fargo systems, Corporate emails and internal communication with Wells Fargo Team members. Wells Fargo managers demanded for Koutellos to stay home until further instructions. Wells Fargo terminated Ms. Koutellos employment on February 20, 2019.

34.    Defendant Wells Fargo, Human Resources and Chief Compliance Office, Ms. Roemer threatened Ms. Koutellos with employment termination, telling Ms. Koutellos to do what Coles and Boorman said, because they were Koutellos' managers at Wells Fargo;

35.    On October 16, 2018, Ms. Koutellos emailed a letter to Defendant Wells Fargo, Head of Human Resources (Ms. Hardison), Mr. Thompson, Wells Fargo CEO (Mr. Sloan) and Mandy Norton ("Ms. Norton" - also Mr. Roemer's manager at Wells Fargo"), requesting for an explanation from Human Resources on why the Chief of Compliance was responsible to make a final decision on the case that was investigated by Human Resources, since Ms. Koutellos had previously included Mr. Roemer on her complaint of discrimination submitted for investigation by Human Resources. To this date, Wells Fargo didn't provide any response to Ms. Koutellos email request.

36.   On October 25, 2018, after five months of investigation, Defendant Wells Fargo, Human Resources Investigator, Mr. Thompson published Human Resources "Closure Memo" to formally end the investigation. Steve Thompson closure memo was provided after the Chief of Compliance, Mr. Roemer, communicated his decision (via email) in not to take any actions against Cynthia Boorman and Nancy Cole

37.   Defendant Wells Fargo continued to discriminate and retaliate against Ms. Koutellos during the 2018 YE Performance process and didn't allow Ms. Koutellos to have a fair YE performance appraisal. After Mr. Roemer made a final decision on Human Resources investigation of Ms. Koutellos' complaint and he ruled in favor of Ms. Boorman and Ms. Coles, few days later, Mr. Roemer created and forced a false and "Negative Informal Warning" on Ms. Koutellos, which would result of immediate termination of Ms. Koutellos' employment at Wells Fargo.

38.   On November 6, 2018, Defendant Wells Fargo, Ms. Coles set up a conference call with Ms. Koutellos to review project status, as described in the "subject line" of Ms. Coles meeting invite. However, at the beginning of the call Ms. Coles announced that Ms. Boorman had joined the call to discuss mandatory requirements of "Negative Informal Warning" that Mr. Roemer had created for Ms. Koutellos. The Negative Informal Warning" comprised of negative and false remarks of Koutellos' work performance review that would result in Koutellos' immediate employment termination.

39.   During the review of Negative Informal Warning, with Defendant Wells Fargo, Ms. Boorman and Ms. Coles via conference call, they refused to explain to Ms. Koutellos the false negative commentary that they created about Ms. Koutellos performance. When Ms. Koutellos told Ms. Boorman and Ms. Coles that she had already initiated a complaint of "Charge of Discrimination" with the United States Equal Employment Opportunity Commission ("EEOC") office in New York City, Ms. Boorman and Ms. Coles  stopped review of "Negative Informal

30

Warning" and told Ms. Koutellos to reach out to Wells Fargo Human Resources for further information about the "Negative Informal Warning".

40.   On November 1, 2018, Ms. Koutellos called United States Equal Employment Opportunity Commission ("EEOC") office in New York City to file a complaint (EEOC Charge of Discrimination) with the EEOC Agency against Wells Fargo and was instructed by the EEOC Officer to initiate her complaint online - https://www.eeoc.gov/.

(a)   EEOC Charge of Discrimination Filing - On 11/08/2018, Koutellos went in person to the EEOC Office in NYC to file her EEOC Charge of Discrimination (EEOC No. 520-2019-00547) against Wells Fargo. At the EEOC office in Manhattan, EEOC Officer conducted an initial EEOC interview with Ms. Koutellos and review of EEOC Charge of Discrimination Complaint and 350 pages of supporting documents. At the end of the in-person interview, the EEOC Officer created a summary of Ms. Koutellos EEOC Charge Discrimination and informed that the "EEOC Complaint Summary" was going to be submitted to Wells Fargo Legal Department. In addition, the EEOC Officer, mentioned to Ms. Koutellos that her EEOC Charge of Discrimination was going to be submitted to the EEOC Investigation team for processing and an EEOC Investigator would reach out to Ms. Koutellos for further instructions and investigation.

(b)   Koutellos EEOC Charge of Discrimination assigned to EEOC Mediation Team - On 12/4/18, EEOC Staff Mediator – David Reinman ("Reinman") contacted Ms. Koutellos via email to let her know that Koutellos' Charge of Discrimination (EEOC No. 520-2019-00547) Complaint against Wells Fargo was assigned to him in the EEOC Mediation group. Mr. Reinman provided information about the EEOC mediation process – EEOC- http// www.eeoc.gov/eeoc/ mediation/. Based on Mr. Reinman's instructions, Ms. Koutellos agreed to have her EEOC Charge of Discrimination to be mediated by EEOC Mediation group. – The EEOC office was closed during the United States Federal Government shutdown of 2018–2019, which occurred from December 22, 2018 until January 25, 2019.

(c)   Koutellos EEOC Charge of Discrimination transferred from EEOC Mediation Team to EEOC Enforcement Unit for investigation - On 02/11/2019, during Ms. Koutellos follow up call with EEOC Staff Mediator, Mr. Reinman, for updates about the EEOC mediation status, she was informed by Mr. Reinman that to that day (2/11/19) Wells Fargo didn't respond to EEOC Mediation team request for EEOC mediation. As a result of Wells Fargo failure to respond to EEOC Mediation team, Mr. Reinman also informed Ms. Koutellos on the option to have her EEOC Charge of Discrimination No.520-2019-00547 transferred from EEOC ADR Unit to EEOC Enforcement Unit for investigation, which took on place February 11, 2019. In addition, Mr. Reinman provided a formal letter confirming EEOC internal transfer of Koutellos' EEOC Charge of Discrimination

(d)   Koutellos Request for name of EEOC Investigator assigned to Ms. Koutellos' EEOC Charge of Discrimination - On 3/04/19, Ms. Koutellos reached out to Mr. Reinman, EEOC Staff Mediator to report that she was never contacted by EEOC Investigation team and was seeking instructions about the next steps of EEOC investigation process. At that time, Mr. Reinman confirmed over the phone and via email that the EEOC Investigator assigned to Ms. Koutellos' EEOC Charge of Discrimination No 520-2019-00547 was EEOC Supervisory Investigator Alvin Mallette. Later, EEOC Supervisor Investigator, Mr. Mallette assigned Ms. Koutellos EEOC Charge of Discrimination to EEOC Investigator, Melita Fogle.

(e)   EEOC Investigator call with Ms. Koutellos for initial investigation of Koutellos' EEOC Charge of Discrimination against Wells Fargo – On 3/29/19, EEOC Investigator (Melita Fogle – "Ms. Fogle") called Ms. Koutellos for the first time (only time)  to review Koutellos EEOC Charge of Discrimination over the phone and also to request for additional documents from Ms. Koutellos that were not included in the original EEOC Charge of Discrimination, including 250 pages of supporting documentation that Koutellos filed with EEOC office on 11/8/2018. Koutellos explained to EEOC Investigator, Ms. Fogle that after Ms. Koutellos filed the EEOC Charge of Discrimination on 11/8/2018, Wells Fargo continued with race discrimination, retaliation and harassment to the

date that Wells Fargo terminated Koutellos' employment without providing a reason for Koutellos

employment termination. Koutellos emailed the following documents to EEOC Investigator, Ms.

Fogle: 1) Wells Fargo Legal Department Agreement "Proposed Settlement Agreement (*aka*

*Departure Agreement and Release of Claims*)"; 2) Wells Fargo paystubs and other email

exchanges that Human Resources had with Ms. Koutellos.

(f)   EEOC Investigator  denied Koutellos request to amend EEOC Charge of Discrimination

– On 3/29/19, since it was the first time and only time that Ms. Koutellos spoke to EEOC

Investigator assigned to her EEOC Charge of Discrimination against Wells Fargo, Ms. Koutellos

requested for EEOC Investigator, Ms. Fogle to allow Ms. Koutellos to amend EEOC Charge of

Discrimination,  because   after Ms. Koutellos filed the EEOC Charge of Discrimination

(11/8/2018), Wells Fargo continued with race discrimination, retaliation and harassment against

Koutellos, therefore it was very important for Ms. Koutellos to amend the EEOC Charge of

Discrimination and proper document the critical information and supporting documentation

against Wells Fargo. Ms. Fogle, EEOC Investigator denied Ms. Koutellos request for amendment

of EEOC Charge of Discrimination and instructed Ms. Koutellos to open another EEOC Charge

against Wells Fargo, while she was investigating Ms. Koutellos original EEOC Charge of

Discrimination (filed on 11/8/2018) against Wells Fargo.

(g)   On 4/29/2019, EEOC Investigator, Ms. Fogle issued EEOC Notice of Suit Rights.  Ms.

Koutellos has exhausted her administrative remedies and has complied with all statutory

prerequisites to this Title VII claim. Any and all other prerequisites to the filing of this complaint

have been met.

41.   After Koutellos filed an EEOC Charge of Discrimination against Defendant Wells

Fargo, on November 2018, Human Resources allowed Ms. Boorman to internally transfer out of

Compliance Group to the PVSI group on December 2018, reporting directly to the Control

Executive -Mani Sulur (Mr. Sulur"). Ms. Boorman's internal transfer was a job promotion. As a

result of Ms. Boorman internal transfer to PVSI on December 2018, she was replaced by Chris

Baker in the Compliance group and he became Ms. Koutellos new manager at Wells Fargo on January 2019. In addition, back in 2016, Human Resources allowed Ms. Coles (a licensed Lawyer in North Carolina) to internally transfer from Ms. Satten's team to Ms. Boorman's team in the Compliance group. However, in case of Ms. Koutellos, she was treated different by Wells Fargo Human Resources.

42.    At Wells Fargo, after Ms. Koutellos filed a complaint (May 2018) of race discrimination, retaliation and harassment against Ms. Boorman, Ms. Coles and Mr. Roemer for Human Resources investigation and five months later (October 2018) a final decision was made in favor of defendants, Ms. Boorman, Ms. Coles and Mr. Roemer threatened Ms. Koutellos with a poor performance appraisal, and forced a "Negative Informal Warning" comprised of fraudulent comments, which strongly criticized Ms. Koutellos accomplishments and work, with the intent to prevented Koutellos to terminate Ms. Koutellos' employment at Wells Fargo.

43.    Defendant Wells Fargo discriminated and retaliated against Ms. Koutellos when she refused to sign a "*Wells Fargo Departure Agreement and Release of Claims*" that was provided by Wells Fargo Legal on January 16, 2019. After Ms. Koutellos proved that she was complying with the goals of "Negative Informal Warning" (enforced by management on 11/06/2019, defendants in efforts to eliminate Ms. Koutellos' employment, Wells Fargo Legal Department offered Ms. Koutellos a "Proposed Settlement Agreement (*aka Departure Agreement and Release of Claims*)" offering a sum of USD$ 55,000.00 thousand dollars ($35K regular pay + $20K bonus) lump sum payments in exchange for Ms. Koutellos to withdraw her EEOC Charge of Discrimination and not to file any legal actions against Wells Fargo and Executives.

44.    Defendant Wells Fargo retaliated against Ms. Koutellos when she refused to sign the "Proposed Settlement Agreement (*aka Departure Agreement and Release of Claims*)" and prohibited Ms. Koutellos to return to work in the office (Wells Fargo Corporate Headquarters in NYC). In addition, Wells Fargo cut off Koutellos' access to all Wells Fargo systems, Corporate

emails and internal communication with Wells Fargo Team members. Wells Fargo Human Resources demanded for Koutellos to stay home until further instructions.

45.   As a result of these unlawful employment practices, Ms. Koutellos was stripped of most, if not all, of significant job responsibilities at Wells Fargo, severely damaging her earnings capacity and career. Wells Fargo's campaign of retaliation and disparagement had caused Ms. Koutellos severe and lasting reputational damage, loss of earnings capacity and severe emotional distress.

46.   Having been stripped of most, if not all, of her essential responsibilities, marginalized and undermined, and having had her internal transfers blocked, Koutellos' earning capacity and career were damaged. In addition, Koutellos' health began to deteriorate to the point where she was compelled to mandatory Short-Term Disability (STD) again from November 15, 2018 to December 31, 2018. While on STD, Ms. Koutellos had financial losses, such as, Koutellos' salary was reduced from 100% to 60%, she lost seven days of salary for STD waiting period and also had to pay for  medical expenses and deductibles related to expense medical tests required by Koutellos' doctors.

47.   On February 20, 2019, Ms. Koutellos received an employment termination letter from Defendant Wells Fargo, Chris Baker ("Mr. Baker" – he replaced Ms. Boorman on January 2019) who had a reporting line to Mr. Roemer. Ms. Koutellos employment with Wells Fargo was terminated for retaliatory and discriminatory reasons.

## FIRST CAUSE OF ACTION

(Discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

48.   As a result of Defendant Wells Fargo actions described above, Ms. Koutellos has been deprived of her rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., including but not limited to her rights to be free from discrimination

based on her race and national origin, to be free from being subjected to a severely hostile work environment because she is Hispanic of Brazilian national origin.

49.   As a direct and proximate result of Defendant Wells Fargo and managers' actions (Mr. Roemer, Ms. Boorman and Ms. Coles), Ms. Koutellos suffered and continues to suffer actual damages, including monetary damages, damages to her reputation and career, mental anguish, pain and suffering.

## SECOND CAUSE OF ACTION

(Retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

50.   As a result of Defendant' Wells Fargo actions described above, Ms. Koutellos has been deprived of her rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., including but not limited to her rights to be free from retaliation for having opposed discriminatory practices and/or participated in proceedings to redress workplace discrimination.

51.   Defendant Wells Fargo and managers (Mr. Roemer, Ms. Boorman and Ms. Coles) have retaliated against Ms. Koutellos for the exercise of her rights under Title VII of the Civil Rights Act of 1964, as amended.

52.   As directed and proximate result of Defendant Wells Fargo and managers actions (Mr. Roemer, Ms. Boorman and Ms. Coles), Ms. Koutellos suffered and continues to suffer actual damages, including monetary damages, damages to her reputation and career, mental anguish, pain and suffering.

## THIRD CAUSE OF ACTION

(NYCHRL Discrimination against Defendant WELLS FARGO).

53.   As a result of Defendant Wells Fargo actions (Mr. Roemer, Ms. Boorman and Ms. Coles) described above, Ms. Koutellos was deprived of her rights as secured by New York City

Human Rights Law, N.Y.C Admin Code §8-107 et seq., including her rights to be free from discrimination based on her Hispanic race and Brazilian national origin and free from a hostile work environment.

54.   Ms. Koutellos was subjected to discrimination based on her race and national origin and to a severely hostile work environment.

55.   Defendant Wells Fargo Human Resources and managers (Mr. Roemer, Ms. Boorman and Ms. Coles) by their actions and comments, including the actions and comments of their managers and supervisors, Ms. Boorman and Mr. Roemer discriminated against Ms. Koutellos based on her race and national origin and subjected Ms. Koutellos to a hostile work environment because of her religion.

56.   Defendant Wells Fargo is liable to Ms. Koutellos because it knew of, disregarded and failed to take any corrective action in response to Ms. Boorman, Ms. Coles and Mr. Roemer's discriminatory conduct.

57.   As a direct and proximate result of Defendant Wells Fargo and managers (Mr. Roemer, Ms. Boorman and Ms. Coles) actions, Ms. Koutellos suffered and continues to suffer actual damages, including monetary damages, damages to her reputation and career, mental anguish, pain and suffering.

## FOURTH CAUSE OF ACTION

(NYCHRL Retaliation against Defendant WELLS FARGO)

58.   As a result of Defendant Wells Fargo and manager actions (Mr. Roemer, Ms. Boorman and Ms. Coles) described above, Ms. Koutellos was deprived of her rights as secured by New York City Human Rights Law, N.Y.C Admin Code §8-107 et seq., including but not limited to her rights to be free from retaliation for having opposed discriminatory practices and/or participated in proceedings to redress workplace discrimination.

59.   Defendant Wells Fargo and managers (Mr. Roemer, Ms. Boorman and Ms. Coles) retaliated against Ms. Koutellos for the exercise of her rights under the New York City Human Rights Law.

60.   As a direct and proximate result of Defendant Wells Fargo and managers actions (Mr. Roemer, Ms. Boorman and Ms. Coles), Ms. Koutellos suffered and continues to suffer actual damages, including monetary damages, damages to her reputation and career, mental anguish, pain and suffering.

## FIFTH CAUSE OF ACTION

### (NYSDHR Discrimination against Defendant WELLS FARGO)

61.   As a result of Defendant Wells Fargo and managers actions (Mr. Roemer, Ms. Boorman and Ms. Coles) described above, Ms. Koutellos was deprived of her rights as secured by New York State Human Rights Law, N.Y.C Exec. Law §290 et seq., including her rights to be free from discrimination based on her race and national origin and free from a hostile work environment.

62.   Ms. Koutellos was subjected to discrimination based on her religion and to a severely hostile work environment.

63.   Defendant Wells Fargo and managers by their actions and comments, including the actions and comments of their managers and supervisors, Ms. Boorman, Ms. Coles and Mr. Roemer discriminated against Plaintiff based on her race and national origin and subjected Ms. Koutellos to a hostile work environment because of her race and national origin.

64.   Defendant Wells Fargo is liable to Ms. Koutellos because it knew of, disregarded and failed to take any corrective action in response to Ms. Boorman, Ms. Coles and Mr. Roemer's discriminatory conduct.

65.   As a direct and proximate result of Defendant Wells Fargo and managers actions (Mr. Roemer, Ms. Boorman and Ms. Coles), Ms. Koutellos suffered and continues to suffer actual

damages, including monetary damages, damages to her reputation and career, mental anguish, pain and suffering.

## SIXTH CAUSE OF ACTION

### (NYSDHR Retaliation against Defendant WELLS FARGO)

66.   As a result of Defendant Wells Fargo and managers actions (Mr. Roemer, Ms. Boorman and Ms. Coles) described above, Ms. Koutellos was deprived of her rights as secured by New York State Human Rights Law, N.Y. Exec Law §290 et seq., including but not limited to her rights to be free from retaliation for having opposed discriminatory practices and/or participated in proceedings to redress workplace discrimination.

67.   Defendant Wells Fargo and managers (Mr. Roemer, Ms. Boorman and Ms. Coles) retaliated against Ms. Koutellos for the exercise of her rights under the New York State Human Rights Law,

68.   As a direct and proximate result of Defendant Wells Fargo and managers actions (Mr. Roemer, Ms. Boorman and Ms. Coles), Ms. Koutellos suffered and continues to suffer actual damages, including monetary damages, damages to her reputation and career, mental anguish, pain and suffering.

WHEREFORE, Ms. Koutellos prays for judgment against the Wells Fargo and Defendant's (Mr. Roemer, Ms. Boorman and Ms. Coles) as follows:

I.   Declaring Wells Fargo and Defendants' acts complained of herein violated Ms. Koutellos' right as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., the NYCHRL and NYSHRL;

II.   Awarding Ms. Koutellos, a money judgment for damages, including but not limited to, lost wages, lost benefits and other economic damages; and damaged for the shame, humiliation, embarrassment, mental anguish and pain suffered by Ms. Koutellos;

III.   Awarding Ms. Koutellos punitive damages for Wells Fargo and Defendant's willful and wanton disregard of her rights;

IV.   Awarding Ms. Koutellos costs and attorney's fees (if any) incurred in connection with this action and;

V.   Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Koutellos demand a trial by jury in this action.

I declare that the foregoing is true and correct.

Dated: New York, New York

July 19, 2019

Respectfully Submitted,

MARCIA KOUTELLOS

Plaintiff Pro-se

One Columbus Place, Apt N34C
New York, NY 10019
Phone: +1646.414.4800
Email: KOUTTMA@GMAIL.COM

CC: **PRO-SE INTAKE UNIT**

Daniel Patrick Moynihan U.S. Courthouse
United States District Court for SDNY
500 Pear Street, Room 200,
New York, NY 10007

40

# APPENDIX A - SUPPORTING DOCUMENTATION

**APPENDIX** section comprised of supporting documentation of Ms. Koutellos' complaint filed against Wells Fargo.

**Description**

**Exhibits**

**Exhibit A_** Letter to EEOC Director including EEOC Complaint Charge No. 520-2019-00547

**Exhibit B_** Chronological Events/Dates

**Exhibit C** Koutellos First Complaint Submitted to Wells Fargo Human Resources on May 29, 2018

**Exhibit D_** Koutellos AMENDED Complaint Submitted to Human Resources on July 6, 2018

**Exhibit E_Koutellos Complaint APPENDIX section** with support docs for Wells Fargo Amended Complaint.

**Exhibit F _** Koutellos additional issues of discrimination submitted to Human Resources on September 19, 2018

**Exhibit G_** Koutellos additional discrimination issues sent to Nancy Coles & Others on September 21, 2018

**Exhibit H_** Koutellos additional discrimination issues sent to Nancy Coles & Others on October 9, 2018

**Exhibit I_** Koutellos additional discrimination issues sent to Michael Roemer & Others on June 13, 2018

**Exhibit J_** Koutellos email rebuttal to Michael Roemer & Others on October 10, 2018

**Exhibit K_** Koutellos additional discrimination issues sent to Steve Thompson & Others on October 16, 2018

**Exhibit L_** Koutellos additional discrimination issues sent to Hope Hardison & Others on October 18, 2018

**Exhibit M_** Koutellos additional discrimination issues sent to Nancy Coles & Others on October 25, 2018

**Exhibit N_** Email response from NEW Human Resources Director (David Galloreese) on November 2, 2018

**Exhibit O_** Steve Thompson (HR Investigator) _Confirmation Memo dated as of July 26, 2018

**Exhibit P_** Steve Thompson (HR Investigator) _Notification of EXTRA-LEGAL STEPS as of August 31, 2018

**Exhibit Q_** Performance Improvement Plan_ INFORMAL WARNING_issued on November 6, 2018

**Exhibit R_** Koutellos additional discrimination issues sent to Michael Roemer & Others on June 28, 2018

**Exhibit S_** Addy Gould (HR Relations) _sharing name of HR Support for Nancy and Cynthia June 28, 2018

**Exhibit T_** Koutellos additional discrimination issues sent to Steve Thompson & Others on June 28, 2018

**Exhibit U_** Koutellos additional discrimination issues sent to Nancy Coles & Others on July 20, 2018

**Exhibit V_** Steve Thompson (HR Investigator) _Investigation Initiation as of July 3, 2018

APPENDIX B - Names of Wells Fargo individuals mentioned on my Ms. Koutellos Complaint of discrimination, Retaliation and Harassment by Wells Fargo Company:

**Robert Bing –**
Compliance Manager (My former manager from August 31, 2016 to April 2, 2018). Wells Fargo: San Diego, CA

**Sara Satten –**
Compliance Executive (My previous manager boss), Head of Compliance COO. Retired March 1, 2018. Wells Fargo San Francisco

**Mandy Norton –**
Chief of Risk Management. She is Michael Roemer's manager. Wells Fargo North Charlotte/NC

**Michael Roemer –**
Chief of Compliance joined Wells Fargo on January 2018. He is direct manager of Cynthia Boorman and Nancy Coles at Well Fargo Compliance group. Wells Fargo San Francisco

**Cynthia Boorman –**
Compliance Manager, Leas Compliance Operations and reports directly to Michael Roemer. Wells Fargo Charlotte/NC

**Nancy Coles –**
Compliance Consultant, reports to Cynthia Boorman and is also my manager. Wells Fargo Charlotte/NC

**Jim Eckenrode –**
Compliance Manager. I support his Metrics projects. He reports directly to Cynthia Boorman. Wells Fargo Maryland

**Mike Osmera –**
Compliance Manager. I support his reporting documentation projects. He reports directly to Cynthia Boorman.Wells Fargo South Carolina

**Leah Lenox –**
Compliance Manager. She reports directly to Cynthia Boorman. Wells Fargo Charlotte/NC

**Jillian Berman –**
Compliance Manager reports directly to Michael Roemer. Wells Fargo New York City

**Martha Cummings –**
Compliance Manager reports directly to Michael Roemer. Wells Fargo Charlotte/NC

**Timothy J. Sloan –**
Wells Fargo Chief Executive Officer – CEO. Wells Fargo San Francisco

**Hope Hardison –**
Wells Fargo Head of Human Resources Director. She was fired on October 25, 2018. Wells Fargo San Francisco

**David Galloreese –**
New Wells Fargo Head of Human Resources Director. Replaced Hope Hardison. Wells Fargo San Francisco

**Steve Thompson –**
Wells Fargo Employer Relations assigned to investigate my complaint. Wells Fargo Minneapolis

**Cindy Menaker –** Wells Fargo Human Resources member assigned to provide support to Ms. Boorman and Ms. Coles. Wells Fargo Charlotte /NC

## V.   ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

⌧   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   November 8, 2018 (In Person|NYC)

☐   No

Have you received a Notice of Right to Sue from the EEOC?

⌧   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   April 29, 2019

When did you receive the Notice?   May 1, 2019

☐   No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☐   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☐   direct the defendant to reasonably accommodate my disability

⌧   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)
DECLARE WELLS FARGO VIOLATED  PLAINTIFF'S RIGHT AS SECURED BY TITLE VII OF THE CIVIL RIGHTS OF 1964 as amended, 42 U.S.C  §2000e et seq., the NYCHRL and NYSHRL; AWARDING PLAINTIFF A MONEY JUDGMENT FOR DAMAGES , INCLUDING BUT NOT LIMITED TO, LOST WAGES,, LOST BENEFITS AND OTHER ECONOMIC DAMAGES; AND DAMAGED FOR HUMILIATION AND PAIN SUFFERED.
AWARDING PLAINTIFF PUNITIVE DAMAGES FOR WELLS FARGO AND DEFENDANT'S WILLFUL AND WANTON DISREGARD OF PLAINTIFF'S  RIGHTS.
AWARDING PLAINTIFF'S COSTS AND  FEES AND GRANT SUCH OTHER RELIEF AS THIS COURT

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| July 19, 2019 | _Plaintiff's Signature_ |
| Dated | |
| MARCIA | KOUTELLOS |
| First Name                Middle Initial | Last Name |
| One Columbus Place, Apt N34C | |
| Street Address | |
| New York | NY          10019 |
| County, City | State        Zip Code |
| 646-414-4800 | KOUTTMA@GMAIL.COM |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your
complaint. If you do not consent, please do not attach the form.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARCIA KOUTELLOS                                    Index_____ - CV-_____

                  Plaintiff,

      -against-                                   **AFFIDAVIT**

                                 **FOR EMPLOYMENT**

WELLS FARGO COMPANY                                 **DISCRIMINATION**

WELLS FARGO BANK, N.A.
                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff, Marcia Koutellos is Pro Se representation for her complaint against Defendants Wells
Fargo Company and Wells Fargo Bank ("Wells Fargo"), alleges:

I, MARCIA KOUTELLOS, being duly sworn, deposes and states the following:

    1.    I am Plaintiff (Pro-Se) in the above-entitled action

    2.    I declare under penalty of perjury that all facts and information written on the
statements made in the Plaintiff's "Complaint for Employment Discrimination" are true and correct
to the best of my knowledge, information, and belief.

    3.    I am the author of "Complaint for Employment Discrimination" and know the
contents thereof.

Dated: New York, New York

      July 19, 2019                                Respectfully Submitted,

                                                MARCIA KOUTELLOS

      Sworn to before me this             Plaintiff Pro-se

 23ʳᵈ__day of JULY, 2019                One Columbus Place, Apt N34C
                                               New York, NY 10019
                                               Phone: +1646.414.4800
                                               Email: KOUTTMA@GMAIL.COM

Notary Public

BRIAN THOMAS FRASER
Notary Public - State of New York
NO. 01FR6386987
Qualified in Queens County
My Commission Expires Feb 4, 2023

                                        1



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### New York District Office

33 Whitehall Street, 5ᵗʰ Floor
New York, NY  10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
Kevin J. Berry
District Director

Marcia Koutellos
One Columbus Place
Apt N34C
New York, NY 10019

Re:      Marcia Koutellos v. Wells Fargo Bank, N.A.
         EEOC Charge No.  520-2019-00547

Dear Ms. Koutellos:

The U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC" or "Commission") has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures apply to all open charges in our inventory and call for the Commission to focus its limited resources on those cases that are most likely to result in findings of violations of the laws that we enforce.

You allege that you were discriminated against by the above-referenced Respondent on the basis of race, national origin and retaliation in violation of Title VII, as amended. In accordance with the Commission's procedures, your Charge has been evaluated and, based upon the evidence submitted, the Commission has decided not to further pursue its investigation of your Charge. This determination is final.

Enclosed is your Dismissal and Notice of Rights. If you wish to pursue this matter further in federal court, you must file a lawsuit against Respondent within **90 days** of receipt of your Notice, otherwise your right to sue will be lost.

If you have any questions, please contact Federal Investigator Melita Fogle at melita.fogle@eeoc.gov.

On Behalf of the Commission,

_____ for

Kevin J. Berry, District Director

Date   4/29/19

EEOC Form 161 (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Marcia Koutellos
One Columbus Place
Apt N34C
New York, NY 10019

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | Telephone No. |
|---|---|---|

| EEOC Charge No. | EEOC Representative | |
|---|---|---|
| 520-2019-00547 | Melita R. Fogle, Investigator | (212) 336-3771 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,
District Director

4/29/19
(Date Mailed)

Enclosures(s)

cc: Elaine McClellion
Corporate Employee Relations
WELLS FARGO AND COMPANY
Gotham Center
42-09 28th Street, Room 1629
Long Island City, NY 11101

Javonda Lewis
WELLS FARGO LEGAL DEPARTMENT
301 South College Street
30th Floor - MAC: D1053-300
Charlotte, NC 28202

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

1001988232 0075

Maria Koutellos
1 Columbus Place
Apt N34C
New York, NY 10019

FIRST CLASS



U.S. POSTAGE PITNEY BOWES

ZIP 10004
02 4W
000360941 APR 29 2019

$ 000.50°



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

February 11, 2019

BY EMAIL ONLY TO:          Ms. Marcia Koutellos   kouttma@gmail.com

Re:   *Marcia Koutellos v. Wells Fargo*
      EEOC Charge No. 520-2019-00547

Dear Charging Party:

This charge is being transferred from the EEOC's ADR Unit to its Enforcement Unit for investigation.
The ADR Unit will no longer have access to this file.

Due to the agency's increased workload, the charge may not be assigned to an investigator for 90 days or
more.  You should not expect to receive further communication from this office during this period.

The Enforcement Unit will contact you if it needs any additional information from you.

If you want to provide the EEOC any additional information or documents about the charge, please **email**
it to Supervisory Investigator Alvin Mallette at alvin.mallette@eeoc.gov. No faxes please.  Make sure to
include the EEOC Charge Number with anything you send to us.

Supervisory Investigator Alvin Mallette
U.S. EEOC
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3675

If you have not heard from the EEOC after 90 days have passed from the date of this letter, you may
contact the office for status information by leaving a message on our charge status phone line at (212)
336-3665.  Please do not leave a telephone message before 90 days has passed, as the EEOC is not likely
to have any information for you before then, and there may not yet be an investigator assigned to your
charge.

Thank you for your cooperation in this matter.

Sincerely,

ADR Unit

koutelmac@gmail.com

**From:**            K M <kouttma@gmail.com>
**Sent:**            Tuesday, July 23, 2019 10:51 AM
**To:**              Koutelmac
**Subject:**         Fwd: EEOC Mediation - Marcia Koutellos v Wells Fargo Company and Wells Fargo Bank
                     NA; EEOC Charge No 520-2019-00547

Regards,

Begin forwarded message:

**From:** DAVID REINMAN <DAVID.REINMAN@EEOC.GOV>
**Date:** December 4, 2018 at 17:28:51 EST
**To:** "kouttma@gmail.com" <kouttma@gmail.com>
**Subject: EEOC Mediation - Marcia Koutellos v Wells Fargo Company and Wells Fargo Bank NA; EEOC
Charge No 520-2019-00547**

Good Afternoon Ms. Koutellos,

I am writing to provide you with an update on your charge. Your charge is currently assigned to the
EEOC's Mediation Unit. Mediation is an informal process in which a trained mediator assists the parties
to reach a negotiated resolution of a charge of discrimination. Participation in mediation is strictly
voluntary. Neither you nor the Respondent are required to participate. Both parties must agree to
mediate before a mediation session is scheduled. If either party declines to participate, or if a mediation
takes place and is unsuccessful, your charge file is transferred to the EEOC's Enforcement Unit for
investigation.

Please visit the following website to get more information on mediation here at the EEOC:
http://www.eeoc.gov/eeoc/mediation/

While the EEOC does not provide an attorney to the parties, I do want to direct you to these
websites: http://www.nycbar.org/get-legal-help/ and www.nelany.com.  These organizations may be
helpful to you in finding an attorney to represent you in this matter. Please note, you are not required to
have an attorney to participate in mediation here at the EEOC.

Please review the information provided and let me know if you are interested in participating in
mediation here at the EEOC.
I look forward to hearing from you. Please contact me if you have any questions.

Respectfully,

David

**David L. Reinman, Esq.**
*Staff Mediator*
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall St., 11th Fl.

1

New York, NY 10004
Ph. 212-336-3645
Fax. 212-336-3625

This e-mail message contains privileged and confidential information intended only for the use of the individual or entity named above. If the reader of the e-mail message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail message is strictly prohibited.  If you have received this e-mail message in error, please notify me by email at David.Reinman@eeoc.gov or by phone at 212-336-3645. Thank you.

koutelmac@gmail.com

**From:**       K M <kouttma@gmail.com>
**Sent:**       Monday, April 29, 2019 11:39 AM
**To:**         MELITA FOGLE
**Cc:**         DAVID REINMAN; ALVIN MALLETTE
**Subject:**    Follow Up on VM Request of 4.29.19 - Mail Returned to EEOC   ( EEOC
                520-2019-00547)

Dear Mrs. Fogle
As a follow up to your voicemail, I am confirming that my current address is the same address listed on my original
complaint filed with EEOC on November 13, 2018

Current Address:
One Columbus Place, Apt N34C
New York, NY 10019

Phone: 646-577-5600

I am not sure why your mail has been returned to EEOC office.

Kind regards,

Marcia Koutellos
646-577-5600

On Apr 4, 2019, at 08:53, MELITA FOGLE <MELITA.FOGLE@eeoc.gov> wrote:

Dear Ms. Koutellos,
Thank you for your message.
- No Position Statement was requested of you. Position Statements are requested of
  Respondents in a charge of discrimination.
- Your charge will not be amended. You can file a new charge with the Commission with a
  different basis for discrimination if you choose to do so.
- If you wish to file a new charge, you can start by submitting an inquiry through the EEOC
  public portal, or by mailing in your statement, or you can come in to the Commission at
  33 Whitehall Street. Any details you feel are pertinent to your new charge can be
  included.

My best,

Melita R. Fogle
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street
New York, NY 10004
Phone: (212) 336-3771
Fax: (212) 336-3790                                    1

**From:** K M <<u>kouttma@gmail.com</u>>
**Sent:** Wednesday, April 03, 2019 10:03 AM
**To:** MELITA FOGLE <<u>MELITA.FOGLE@EEOC.GOV</u>>; ALVIN MALLETTE
**Cc:** <u>kouttma@gmail.com</u>; DAVID REINMAN <<u>DAVID.REINMAN@EEOC.GOV</u>>; ALVIN MALLETTE
<<u>ALVIN.MALLETTE@EEOC.GOV</u>>
**Subject:** Fwd: Follow Up Call & Additional Support Docs for EEOC Investigation - EEOC 520-2019-00547

Good morning Mrs. Fogle,

I am reaching out to you, requesting for your assistance to please confirm if you have received my
previous email below.
I didn't receive an email confirmation that my previous email below was delivered to your inbox.
Kindly, may I please have your assistance to confirm your receipt and also to let me know if you need
additional information for your review.

**EEOC REQUEST FOR POSITION STATEMENT - In addition, I received an email from EEOC on Marchc 28th**
requesting a "**Position Statement Requested for Your Charge 520-2019-00547. (see email
request below - email also attached)**
"*We have asked WELLS FARGO COMPANY to submit a Position Statement on your charge, 520-2019-
00547. To request it, please go to the <u>EEOC Public Portal</u>, choose the "My EEOC Cases" option, and log-in
to view your charge and submit your request to EEOC. Once we have received the Position Statement and
reviewed it, we will post it to the Public Portal where you can view or download it.*"

Please let me know **what is the Position Statement that EEOC is requesting from me**. <u>Is position
statement form of EEOC complaint that I have previously filed with EEOC on 11.13.2018 against Wells
Fargo.</u> (See complaint attached)

**ON GOING WELLS FARGO  RACE DISCRIMINATION  & HARASSMENT AFTER EEOC COMPLAINT WAS
FILED -** On Friday, during our call, I mentioned that after the time I had filed my complaint with EEOC on
11.13.2018, Wells Fargo continued to harassed, retaliated and discriminate against me, because they
knew that I had filed my complaint against Wells Fargo with EEOC.
Eventually, as the only Hispanic women (from Brazil) in the Wells Fargo Compliance Operations group,
who after <u>I  filed a complaint with CFO and Human Resources on critical violations of my employment
issues involving race discrimination by Nancy Coles, Cynthia Boorman and Mike Roemer,  I became a
target of Wells Fargo senior management and Legal Department, who together terminated my
employment on February 20, 2019.</u>

**REQUEST TO AMEND EEOC COMPLAINT -** As a result of Wells FArgo ongoing race discrimination and
harassment actions against me after 11.13.2018 (date EEOC complaint was filed) , **I am requesting for
EEOC  permission  to amend my previous  EEOC complaint date 11.13.2018.**
<u>Please let me know when I can amend my EEOC complaint to include facts and suporting
documentation about the ongoing race discrimination  and retaliation actions from Wells Fargo against
me from 11.13.2018 till February 20.2019, time when management decided to terminated my
employment and didn't provide a specific reason for such decision.</u>

**UNEMPLOYMENT BENEFITS - Wells Fargo False Allegation to Department of Labor -** In fact, after my
employment termination on February 20, 2019,  I filed a claim with Department of Labor on February
28, 2019 in order  to receive Unemployment benefits and I was informed by Department of Labor that
Wells Fargo mentioned to them that I had accepted a severance package and was receiving lump sum
payments. - WELLS FARGO IS LYING TO DEPARTMENT OF LABOR, and  I have proof that I never signed
the Wells Fargo Proposed Legal Agreement, which included a severance package and conditions for

accepting the subject agreement. **(see attached Wells Fargo Proposed Separation Agreement - 01.16.19_ HR 01.16.19_ Legal Dept Agr doc_WFLS)**

Thank you in advance for your assistance with investigation of my EEOC complaint against Wells Fargo Company.

Best regards,
Marcia Koutellos
P: 646-577-5600
kouttma@gmail.com


---------- Forwarded message ---------
From: K M <kouttma@gmail.com>
Date: Fri, Mar 29, 2019 at 12:30 PM
Subject: Follow Up Call & Additional Support Docs for EEOC Investigation - EEOC 520-2019-00547
To: <melita.fogle@eeoc.gov>


Dear Mrs. Fogle,

Thank you for taking time to talk to me about my EEOC Charge 520-2019-00547 outstanding information required for completion of your investigation process at EEOC.

Unfortunately, our call got disconnected, because I lost my cellular signal. My apologies for the inconvenience this may caused.  I called you at 212-336-3645 and left you a voicemail.

Kindly, please let me know if you need to met with me in person to provide additional details of my complaint against Wells Fargo, which events took place after the time I had already filed my complaint with EEOC on November 6, 2018.
I am making reference to those Wells Fargo actions related to ongoing racial discrimination, harassment and retaliation took place from November 7, 2018 to February 20, 2019 , time my employment was terminated via letter sent by Wells Fargo Manager Chris Baker. .

Please find enclosed the following attachments for your review:

1. Well Fargo Termination Letter from Chris Baker (Wells Fargo Manager that replace Cindy Boorman on December 29018) -
**WF Paystub_ March 08 2019.pdf**

-

2. Wells Fargo Proposed Settlement Agreement that I refused to sign. -
**01.16.19_ HR 01.16.19_ Legal Dept Agr doc_WF**

3. Email from Heather Hodge from Wells Fargo Human Resources Employment Relations (assigned to negotiated a settlement agreement.) requesting for a meeting with me to review the Wells Fargo Legal Agreement with me-
**01.16.19_ E HR HH_ MK WF LDA Mtg.pdf**

**(248K)**

3

4. Labor Department Electronic "Secure Email" requesting for pay information about the payroll amount $6,012.13 dollars, which Wells Fargo affirmed was a "Severance Payment" paid to me on March 8, 2019. I never signed or agreed to received any severance payment from Wells Fargo. Wells Fargo is lying to Department of Labor, because I never signed for any severance and it will result on suspension of my Unemployment Benefits with NYS Department of Labor.  - See Labor letter attached -

**3.28.19  Labor LTR  Request for information req**

5. Wells Fargo Paystub payment in the amount of $6,012.13 was not a severance payment or lump sum payment . -

**WF Paystub   March 08 2019.pdf**

(

The payment breakdown description shows:
  a. USD$5,881.00 dollars for "Regular Pay period from 002/17/19 to 03/02/19, which was related to current Short Term Disability payment by Lincoln Financial Insurance
  b. USD$ 5,390.00 dollars related to "Annual Bonus for FYE 2018 - Incentive Award Discretionary"
  c. Including deductions (see paystub attached) net check amount was USD$6,012.13 dollars

  Kindly, please let me know is you have additional questions.
  Thank you again for your time.
  Have a nice day.

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 520-2019-00547 |
| | and EEOC |

New York State Division Of Human Rights
*State or local Agency, if any*

| | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| | (646) 414-4800 | 4/10/1969 |

Name (indicate Mr., Ms., Mrs.)
**Mrs. Marcia Koutellos**

Street Address — City, State and ZIP Code
**One Columbus Place, Apt#N34C, New York, NY 10019**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Wells Fargo Company & Wells Fargo Bank, N.A.** | 100+ | (415) 396-0376 |

Street Address — City, State and ZIP Code
**150 East 42ⁿᵈ Street,  New York, NY 10017**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

NOV 13 2018

DATE RECEIVED

| Name | | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|---|

Street Address — City, State and ZIP Code

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest **11/6/2018**

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began working for the above named employer on or about September 1, 2016 in the position of Vice President of Compliance. I continued in this position until present day.

Since the beginning of my employment at Wells Fargo, I have always conformed with all Wells Fargo employment policies to report employment violations, but after I filed my complaint with Human Resources for investigation of race discrimination, retaliation and ongoing harassment against me by Nancy Coles and Cindy Boorman at Wells Fargo. Human Resources never told me about final investigation, decisions or actions that would be taken to remediate the ongoing harassment, race discrimination and retaliation against me by Nancy Coles and Cynthia Boorman including Chief of compliance, Michael Roemer at Wells Fargo.

During my time with the employer I have been subjected to numerous comments that were racial and harassing in nature from my manager, Nancy Coles and Cynthia Boorman, Group Head.

On November 6, 2018, my request of internal transfer was suspended due to informal warning received and was placed on formal Performance Improvement Plan or Corrective Action, which will result on termination of my employment.

**Based on this information, I believe that I was discriminated in violation of Title VII of the Civil Rights Act of 1964, as amended.**

***See Attached Supporting Facts***

| | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Nov 13, 2018
Date — Charging Party Signature

# Marcia Koutellos
One Columbus Place, Apt N34C
New York, NY, 10019
Phone: 646-414-4800
Email: KOUTTMA@GMAIL.COM

**HAND DELIVERY**

Mr. Kevin J. Berry
Director
U.S. Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, New York 10004

Re: Marcia Machado v. Wells Fargo Company and Wells Fargo Bank NA
Charge of Discrimination EEOC No. **520-2019-00547**

Dear Mr. Berry:

My name is Marcia Koutellos, a current employee of the Wells Fargo Company and Wells Fargo Bank NA ("WFC" or the "Company") since August 31, 2016.

I am the Complainant in the enclosed complaint against Wells Fargo Company ("WFC") and Wells Fargo Bank NA.

Please note that my EEOC complaint comprise of 27 pages and also supporting documentation, reference documents, exhibits included in a red binder. I am willing to provide additional information and supporting documentation as it will be required for EEOC investigation.

I also respectfully request that you forward to my attention a copy of Wells Fargo Company response(s) so that I may have an opportunity to respond, if necessary.

Please note that a Charge of Employment Discrimination against Wells Fargo Company ("WFC") and Wells Fargo Bank NA was filed with EEOC "via online" on November 7th and in person with U.S. Equal Employment Opportunity Commission ("EEOC") New York District Office on November 13, 2018.

Thank you very much for your attention to this matter

Respectfully submitted,

Marcia Koutellos

1



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Thank you for using the EEOC Assessment System. The information you gave us indicates that your situation may be covered by the laws we enforce. If you want to file a charge, you can start the process by filling out the Intake Questionnaire, signing it, and either bringing it or mailing it to the EEOC office listed below right away.   If you live within 50 miles of the EEOC office listed below, we recommend that you bring the completed questionnaire with you to this office to discuss your situation.

Please visit the EEOC website
to obtain a mailing address.

If you would like to bring the questionnaire to us in person instead of mailing it to us, please click http://www.eeoc.gov/field/index.cfm to find out the office hours of the EEOC office closest to you. If you would like to fax the questionnaire to us, please click http://www.eeoc.gov/field/index.cfm to find out the fax number of the office nearest to you.

You should be aware that filing a charge can take up to two hours. If you find that you are having difficulty completing the questionnaire on your own, you may call the number below for assistance.

Please be sure to:

Answer all questions as completely as possible.
Include the location where you work(ed) or applied.
Complete all pages and sign the last page.
Attach additional pages if you need more space to complete your responses.

You can find out more information about the laws we enforce and our charge-filing procedures on our website at www.eeoc.gov.

If you want to file a charge about job discrimination, there are time limits to file the charge. In many States that limit is 300 days from the date you knew about the harm or negative job action, but in other States it is 180 days. To protect your rights, it is important that you fill out the questionnaire, sign it, and bring it or send it to us right away.

**Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge.** This questionnaire will help us look at your situation and figure out if you are covered by the laws we enforce. If you live within 50 miles of the office listed above, we recommend that you bring the completed questionnaire to us to discuss your situation. If you mail the completed questionnaire to us, someone from the EEOC should contact you by mail or by phone within 30 days.  If you don't hear from us in 30 days, please call us at **1-800-669-4000.**

Sincerely,

U.S. Equal Employment Opportunity Commission

Phone: 1-800-669-4000        TTY: 1-800-669-6820        Internet: www.eeoc.gov        Email: info@eeoc.gov



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER,** a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known."** If a question is not applicable, write "n/a." Please Print.

1.   **Personal Information**

Last Name: KOUTELLOS        First Name: MARCIA        MI: _____   Apt Or Unit #: N34C

Street or Mailing Address: ONE COLUMBUS PLACE

City: NEW YORK        County: NEW YORK        State: NY        ZIP: 10019

Phone Numbers: Home: ( 646 ) 414-4800        Work: ( 917 ) 592-8295

Cell: ( _____ )        Email Address: KOUTTMA@GMAIL.COM        Do You Have a Disability?  ☐ Yes  ☒ No

Date of Birth: 04/10/1969        Sex: Male ☐  Female ☒        i. Are you Hispanic or Latino?  ☒ Yes  ☐ No

Please answer each of the next three questions.

ii. What is your Race? Please choose all that apply.
☐ American Indian or Alaska Native   ☐ Asian   ☒ White
☐ Native Hawaiian or Other Pacific Islander
☐ Black or African American

iii. What is your National Origin (country of origin or ancestry)?   Hispanic / Latin America (Born in BRAZIL)

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: MARCIA KOUTELLOS        Relationship: SELF

Address: N/A        City: N/A        State: N/A   Zip Code: N/A

Home Phone: ( _____ )        Other Phone: ( _____ )

2. **I believe that I was discriminated against by the following organization(s): (Check those that apply)**
☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach** additional sheets.

Organization Name: WELLS FARGO COMPANY / WELLS FARGO BANK N.A        County: Manhattan

Address: 150 East 42nd Street, 18th floor

City: New York        State: NY   Zip: 10017        Phone: ( 415 ) 396-0376

Job Location if different from Org. Address: New York.City Headquartes

Type of Business: Global Banking        Phone: 415-222-3030

Human Resources Director or Owner Name: Timothy J Sloan

**Number of Employees in the Organization at All Locations: Please Check (√) One**        Are you a Federal Employee? ☐ Yes ☒ No
☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☐ 201 - 500   ☒ More than 500

3. **Your Employment Data** (Complete as many items as you can)

Date Hired: September 1, 2016        Job Title At Hire: Vice President, Compliance Conslt BCBS Gov't Oversight

Pay Rate When Hired: USD$150,000.00        Last or Current Pay Rate: USD$152,000.00

Job Title at Time of Alleged Discrimination: VP, Compliance Conslt        Date Quit/Discharged: Still Employed (11.13.1

Name and Title of Immediate Supervisor: Ms. Cynthia Boorman (Compliance Operations Manager ) )

2

Job Title Applied For _____

If Job Applicant, Date You Applied for Job _____

**4. What is the reason (basis) for your claim of employment discrimination?**
FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.

[x] Race  [ ] Sex  [ ] Age  [ ] Disability  [x] National Origin  [ ] Religion  [x] Retaliation  [ ] Pregnancy  [ ] Color (typically a difference in skin shade within the same race)  [ ] Genetic Information: choose which type(s) of genetic information is involved:

[ ] i. genetic testing  [ ] ii. family medical history  [ ] iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: I am Hispanic, borne in BRAZIL, (49 years of age)

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). My complaint is also based on RACE Discrimination (see Complaint attached

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)

A) Date: May 07, 2018   Action: Harassment email from Nancy Coles treating me different than other people in our group, such as creating group rules "only for me"

Name and Title of Person(s) Responsible: Nancy Coles, , Compliance  Consultant - Wells Fargo Compliance

B) Date: May 07, 2018   Action: Retaliatory actions transferring my previous BCBS work to another person in the group and assigning me to administrative activities, which was less managerial.

Name and Title of Person(s) Responsible: Cynthia Boorman, Compliance Manager - Wells Fargo Compliance

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
Since May 2018 to this date (11.13.18), I have been subject to retaliation and harassment, because I have opposed race discrimination in the work place and filed several complaints of discriminatory actions with Human Resources  against Cynthia Boorman, Nancy Coles and Michael Roemer and requested for investigation. - I am a  women from "Latin America", who has been  treated different than other employees in the Wells Fargo Compliance group. PLEASE REFER TO DETAILED EEOC COMPLAINT ATTACHED.

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
On October 10, 2018, while Wells Fargo Human Resources was still conducting its investigation process, the Chief of Compliance, Mike Roemer told me via email that he made a decision in not to take any actions against Cynthia Boorman and Nancy Coles, because he affirmed that my previous 49 pages complaint of detailed race discrimination, harassment and retaliation were misunderstandings and he ordered for me to work with Ms. Boorman and Ms. Coles to resolve any issues. - Michael Roemer

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination, provide the sex of each person; if it alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide example, if your complaint alleges race discrimination, provide the race of each person; and so on.  Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
| --- | --- | --- |
| Leah Lenox | White - Middle Age | Compliance Manager |
| Description of Treatment Leah reports to Cynthia Boorman and manages Issue Management activites, previously led by Mathew Prue. Leah does not suffer the same retaliation and harassment from Cynthia Boorman | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
| --- | --- | --- |
| Mike Osmera | White - Middle age | Compliance Manager |
| Description of Treatment Mike reports directly to Cynthia Boorman and she has not treating him different than others in the group | | |

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|

Description of Treatment

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Matthew Prue | Indian Native | Compliance Consultant |

Description of Treatment  Matthew reported directed to Cynthia on Issue Management projects, however around June /18, Matt decided to transferred to Wholesale team, because of employment issue between him and Cynthia Boorman

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|

Description of Treatment

Answer questions 9-12 only if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.

9.  Please check all that apply:

☐ Yes. I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

I DON'T HAVE A DISABILITY

11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☐   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

12.  Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐   No ☐

If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)

Describe the changes or assistance that you asked for:

How did your employer respond to your request?

4

13. Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A.  Full Name | Job Title | Address & Phone Number |
|---|---|---|

What do you believe this person will tell us?

| B.  Full Name | Job Title | Address & Phone Number |
|---|---|---|

What do you believe this person will tell us?

14.  Have you filed a charge previously in this matter with EEOC or another agency?        Yes ☐   No ☒

15.  If you have filed a complaint with another agency, provide name of agency and date of filing:

16.  Have you sought help about this situation from a union, an attorney, or any other source?     Yes ☐   No ☒
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

Box 1  ☐  I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. **I also understand that I could lose my rights if I do not file a charge in time.**

Box 2  ☒  I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the **EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.** I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

NOVEMBER 13, 2018

_____          _____
Signature                                                    Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof
1. FORM NUMBER/TITLE/DATE.  EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY.  42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE.  The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES.  EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.
Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

# Marcia Koutellos

One Columbus Place, Apt N34C
New York, NY, 10019
Phone: 646-414-4800
Email: KOUTTMA@GMAIL.COM

Re: **Marcia Machado v. Wells Fargo Company and Wells Fargo Bank NA**
Charge of Discrimination EEOC No. **520-2019-00547**

My name is Marcia Koutellos, a current employee of the Wells Fargo Company and Wells Fargo Bank NA ("WFC" or the "Company") since August 31, 2016.

I am the Complainant in the enclosed complaint against Wells Fargo Company ("WFC") and Wells Fargo Bank NA.

Please note that my EEOC complaint comprise of ____pages and also supporting documentation, reference documents, exhibits included in a red binder. I am willing to provide additional information and supporting documentation as it will be required for EEOC investigation.

I also respectfully request that you forward to my attention a copy of Wells Fargo Company response(s) so that I may have an opportunity to respond, if necessary.

Please note that a Charge of Employment Discrimination against Wells Fargo Company ("WFC") and Wells Fargo Bank NA was filed with EEOC "via online" on November 7th and in person with U.S. Equal Employment Opportunity Commission ("EEOC") New York District Office on November 13, 2018.

## A.  COMPLAINT BACKGROUND

On August 31, 2016, I was hired at Wells Fargo by my previous manager, Robert Bing and his manager, Sara Satten. For the past 2 ½ years, I have been an exemplary employee of Wells Fargo Compliance group for the past 2 ½ years. However, as the result of my original complaint to Wells Fargo Human Resources on May 29, 2018 against my direct manager (Ms. Nancy Coles) and her manager (Ms. Cynthia Boorman) for harassment, retaliation and race discrimination, including other complaints that were also filed with Human Resources against Wells Fargo Chief of Compliance (Michael Roemer), which were fully ignored by Human Resources, I had no other recourse than to filed a complaint with Equal Opportunity Employment Commission ("EEOC") in the New York District.

On **August 31, 2016** -- Initiation of employment at Wells Fargo Company. Offer of employment for the Compliance Consultant 4 -- BCBS Governance Oversight position with Wells Fargo Bank, NA reporting directly to Robert Bing, Senior Vice President (SVP) Compliance Manager.

Office location:150 East 42nd Street, NY, NY 10017

Based salary: USD$150,000.00 dollars

Corporate Title: Vice President

On **April 13, 2018** -- Transition from Compliance Reporting Governance team to Compliance Operations team, within Wells Fargo Compliance. As a result, of resignation of my former manager Mr. Bing on 4/2/2018, his Governance & Reporting team (team of 4 people, including myself) were officially moved to Cynthia Boorman

5

Compliance Operations group.  I was the only person from Robert Bing's Compliance group that was assigned to report to a person that didn't held a manger title or has a senior Compliance title as the same as my former manager, Robert Bing.

At Wells Fargo, Cynthia Boorman holds the same Compliance Manager level as Robert Bing (my former manager, who I report directly from 08/31/2016 to 04/2/2018 – 18 months. However, instead of reporting directly to Cynthia Boorman, Cynthia assigned to report to Nancy Coles, Compliance Consultant. They are both located in Wells Fargo office in Charlotte, North Carolina.

On May 29, 2018 – <u>Filed Complaint with Wells Fargo Human Resources and CEO</u>. – I filed a seven pages complaint of Discrimination, Harassment and Retaliation against Wells Fargo managers in the Compliance Operations (Cynthia Boorman and Nancy Coles) with Wells Fargo Human Resources via email for internal investigation of discrimination and other employment violations at Wells Fargo.

My Complaint of discrimination was emailed to Tim Sloan - Wells Fargo CEO and Hope Hardison - Head of Human Resources (<u>Hardison was fired on October 24, 2018 by Tim Sloan</u>).
At that time, I requested for Wells Fargo investigation of my full complaint of discrimination, harassment and retaliation against Cynthia Boorman and Nancy Coles.

- Cynthia Boorman, Compliance Operation manager reported directly to the Chief of Compliance, Michael Roemer. Mr. Roemer joined Wells Fargo on January 2018 as the new Wells Fargo Chief of Compliance.
- Nancy Coles, Compliance Consultant, reports directly to Cynthia Boorman. Nancy Coles has a degree in Law.

May 30, 2018 to October 30, 2018 – <u>Seeking Internal Job Transfer at Wells Fargo</u>. – I start to apply for internal jobs that match my skills and career experience using Wells Fargo career site. Successfully, interviewed for Senior jobs – Manager levels 3, 4 and 5. Many senior managers provided excellent reviews/comments about my career experience.

At that time, although I had the ability to vindicate my employment rights immediately in court and/or before various governmental agencies, such as EEOC, I choose to address the egregious mistreatment directly with Wells Fargo Human Resources Department.

To summarize below, I have listed the events that follow after I filed my complaint with Wells Fargo Human Resources (May 29, 2018).

- May 31, 2018 – <u>Wells Fargo Human Resources Acknowledgement</u>. –Human Resources forwarded my Complaint of Discrimination to Wells Fargo Employment Relations Allegations Dispute team for investigation. Steve Thompson, Senior Consultant Employee Relations was assigned to my case. Contact info: Wells Fargo Corporate Human Resources, 550 S, 4th Street, 11th floor, Minneapolis, MN 55415. (Tel: 763.273.20.29 / Fax: 866.668.5460 – Email: Stephen.thompson2@wellsfargo.com

- June 7, 2018 – <u>Phone Interview with Human Resources</u> – Steve Thompson, Senior Consultant Employee Relations located in Minneapolis office of Human Resources set up a phone interview via conference call with me to discuss my complaint of discrimination, retaliation and harassment among other allegations against Cynthia Boorman and Nancy Coles. I am located in the Wells Fargo Office New York City, 150 East 42nd Street, NY, NY 10017.

- **June 13, 2018 – Marcia Koutellos created/ responded a total of 14 email rebuttals to Nancy Coles and Cynthia Boorman false accusations and discriminatory actions against me.** Those emails rebuttals comprised of detail explanation and attachments to defend myself from each discriminatory action and false accusation against me by Cynthia and Nancy. *Their discriminatory actions shows that Cynthia and Nancy were treating me different that other Wells Fargo employers/team members that reported to Cynthia Boorman in the Compliance Operations team, because they created group rules for me (lunch, breaks, meals policies, others) that were not enforced on other employers that worked in the same Compliance Operations group, led by Cynthia* Cynthia. Total of 30 people employers worked in the Compliance Operations team, led by Cynthia Boorman.

- **June 14, 2018 – Sent an email to Chief of Compliance, Michael Roemer -** After sending those emails rebuttals to Cynthia Boorman and Nancy Coles, I also reached out to Chief of Compliance via email to report the discrimination against me by Cynthia Boorman and Nancy Coles. He acknowledged receipt and copied Addy Gould manager from Wells Fargo Human Resources.

- **June 27, 2018 – Provided Supporting Documentation to Human Resources.** -- As a result of phone interview with Steve Thompson, Senior Consultant Employee Relations, I submitted via email 300 pages of supporting documentation and reference materials for his investigation.

- **June 28, 2018 – Demotion of my BCBS Job Responsibilities by Nancy Coles and Cynthia Boorman** – Additional discriminatory actions by Cynthia Boorman and Nancy Coles against me were reported to Human Resources via email dated 6/28/2018. Those actions were reported to Wells Fargo Human Resources, Steve Thompson for investigation.

- **June 28, 2018 – Sent an email to Chief of Compliance, Michael Roemer on additional discrimination from Cynthia Boorman -**He didn't acknowledge receipt.

- **June 28, 2018 – Wells Fargo Human Resources update.** Addy Gould from Human Resources said via email that *Cynthia Boorman and Nancy Coles were working with Cynthia Menaker, Employer Relations to support them.* On my case, Steve Thompson was the Employer Relations manager to investigate my case. Nobody in the Human Resources Employer Relations was assigned to support me, as they had Cynthia Menaker to support Cynthia and Nancy.

- **July 6, 2018 – I submitted an AMENDED Complaint to Wells Fargo Human Resources. -** Based on discussion with Steve Thompson, I was allowed to submit an amended complaint with details of each discriminatory action made on the original complaint. The amended complaint comprised of 49 pages and was sent to the Head of Human Resources, Hope Hardison and Steve Thompson, assigned Human Resources investigatior.

- **July 11, 2018 – Start of Wells Fargo Human Resources Investigation.** Steve Thompson acknowledged receipt of amended complaint of discrimination and confirmed that he was going to begin the investigation of my amended complaint and supporting documentation previously provided.

- **July 18, 2018 –** Steve Thompson confirmed via email that he was going to conduct meetings and interview on my case and he would have a better idea when he would get it done with his investigation

- **July 26, 2018 – <u>Steve Thompson Wells Fargo Confirmation Memo</u>** – As a follow up to a call with Steve on 7/6/2018, the next day, he confirmed the intent to proceed with a Fact Finding to investigate my complaint of discrimination against Cynthia Boorman and Nancy Coles.

- **August 7, 2018 – <u>Steve Thompson Wells Fargo Investigation Update</u>** – Via email, Steve Thompson confirmed that he had additional witnesses to interview (3 to 4) and would reach out to me for additional questions.

- **August 7 – September 10, 2018 – Short Term Disability** – During this period, I was on Short Term Disability, which was managed by Liberty Mutual Insurance for Wells Fargo Company.

- **September 5, 2018 – <u>Human Resources Extra Review Process</u>** – Steve Thompson mentioned via email that he was waiting for feedback from the *"Human Resources Extra Review Process"* team. *The review team comprised of External Corporate Lawyers hired to provide their review of Wells Fargo cases that will result on Federal litigation.*

- **September 19, 2018 – <u>Follow up Letter and Email to Wells Fargo Head of Human Resources (Hope Hardison, and Steve Thompson)</u>.** Describing the ongoing discrimination and additional harassment and retaliation by Cynthia Boorman and Nancy Coles at Wells Fargo.

- **September 21, 2018 – <u>Marcia Koutellos Email Request to Stop Discrimination and Harassment.</u>** – Sent an email to Nancy Coles and Cynthia Boorman describing the ongoing harassment activities and additional retaliation that I have been subjected for opposing discrimination in the work place at Wells Fargo. The following manager were included / copied on the subject email: Head of Human Resources (Hope Hardison), Investigator (Steve Thompson) and Chief of Compliance (Michael Roemer)

- **September 21, 2018 – <u>Response from Chief of Compliance.</u>** – Chief of Compliance (Michael Roemer) affirmed that Wells Fargo Employee Relations, (Steve Thompson) is the group responsible to investigate my complaint of discrimination at Wells Fargo.

- **October 9, 2018 – <u>Follow up Letter and Email to Wells Fargo Head of Human Resources (Hope Hardison, and Steve Thompson)</u>.** On the email, highlighted the discriminatory actions and ongoing retaliation that I have been subject for the past six months, which became utterly intorelable and negatively impacted my health and work environment at Wells Fargo. - The following managers were included / copied on the subject email: Head of Human Resources (Hope Hardison), Investigator (Steve Thompson) and Chief of Compliance (Michael Roemer) and Nancy Coles (my direct manager)

- **October 10, 2018 – <u>Wells Fargo Chief of Compliance Decision Not to Take Actions against Cynthia Boorman and Nancy Coles.</u>** Michael Roemer's email conveyed his final decision that based on Human Resources investigation, he made a decision not to take action against Cynthia Boorman and Nancy Coles, because he categorized my complaint of discrimination as "misunderstandings. Furthermore, he told me that I need to work with Cynthia Boorman and Nancy Coles and give them a chance to work with me, because they are my managers. Michael Roemer copied Cathy Weihl and Steve Thompson.

- According to Michael Roemer, Human Resources at Wells Fargo is incharge for investigating allegations of harassment, discrimination and retaliation and id his responsibility as the Chief o

Compliance at Wells Fargo to review the outcome, make a final decision and take actions when necessary.

- **October 10, 2018 – My rebuttal to Wells Fargo Chief of Compliance Decision Not to Take Actions against Cynthia Boorman and Nancy Coles.** I wrote to Michael Roemer to acknowledged his decision and to let him know that I disagreed with his findings, because my company's employment records reflected that based on my previous manager Robert Bing appraisals, I am an excellent hardworking employee, who consistently performed in exemplary fashion since the commencement of my employment at Wells Fargo, but after assigned to Nancy Coles and Cynthia Boorman, they have violated my employment rights and policies at Wells Fargo and start to harass and retaliate against me, because I have opposed their discrimination against me in the work place and filed my detailed complaint against them for Human Resources Investigation.

- **October 16, 2018 – Follow up Letter and Email to Wells Fargo Head of Human Resources (Hope Hardison, and Steve Thompson) and CEO ( Tim Sloan)** and Chief of Risk Management (Mandy Norton). On the email, highlighted the discriminatory actions, which included false accusations. In addition, I requested explanation from Human Resources on why the Chief of Compliance was responsible to make a final decision on the case that was investigated by Human Resources. - Can the Chief of Compliance make decisions for Head of Human Resources? Obviously, it's' not the Chief of Compliance responsibility to act as the Head of Human Resources. - Michael Roemer, Chief of Compliance has a direct reporting line to the Mandy Norton, the Chief of Risk Management.

  - It's clear that Michael Roemer's decision was based on the fact that Cynthia Boorman and Nancy Coles from Compliance Operations reports to him and he depends on them to provide critical reporting deliverables mandatory by the US Regulators, who are monitoring Wells Fargo Compliance activities.
  - The following managers were included / copied on the subject email: Head of Human Resources (Hope Hardison), Investigator (Steve Thompson) and Chief of Compliance (Michael Roemer) and Chief of Risk Management (Mandy Norton), who is also Michael Roemer's manager at Wells Fargo.

- **October 18, 2018 – Follow up Letter and Email to Wells Fargo Head of Human Resources (Hope Hardison, and Steve Thompson) and CEO ( Tim Sloan)** and Chief of Risk Management (Mandy Norton). On the email, I provided an overview of flaws with Human Resources investigation process and the ongoing retaliation and harassment by Cynthia Boorman and Nancy Coles, including my complaint against Michael Roemer for protecting his managers and ignoring my complaint of discrimination and supporting documentation.

  - Furthermore, I mentioned that as a result of Chief of Compliance decision in not to take any action against Cynthia Boorman and Nancy Coles, they have continued with their retaliation and harassment against me, which was going to result on negative performance evaluation that will lead to termination of my employment at Wells Fargo.

- **October 18, 2018 – My Email Rebuttal to Nancy Coles and Cynthia Boorman False Accusations** On the email, I provided detailed explanation to defend myself against Cynthia Boorman and Nancy Coles new false allegations, after the time that Michael Roemer, Chief of Compliance made a fina decision about my complaint of discrimination and not take any actions against Cynthia Boorman and Nancy Coles. -- The following managers were included / copied on the subject email: Head of Huma Resources (Hope Hardison), David Galloreese (NEW Human Resources Director), Investigator (Stev Thompson) and Chief of Compliance (Michael Roemer).

- **October 24, 2018 – Wells Fargo CEO Announcement to Terminate. Hope Hardison (Head of Human Resources).** Tim Sloan, Wells Fargo CEO, announced an organizational and leadership changes via Wells Fargo Corporate Communications. As a result, Hope Hardison was replaced by David Galloreese, who became the New Head of Human Resources, reporting directly to Tim Sloan.

- **October 25, 2018 – Wells Fargo Human Resources Employer Relations Decision – Closure Memo.** Since the time (May 29, 2018) that I filed my complaint of discrimination with Human Resources, on 10/25/18, Steve Thompson issue a "Closure Memo" to end his investigation. *Steve Thompson closure memo was provided after the fact that the Chief of Compliance, Michael Roemer, communicated his decision (vis email) in not to take any actions against Cynthia Boorman and Nancy Cole.*

- **November 2, 2018 – Follow up Email to Wells Fargo NEW Head of Human Resources (David Galloreese)** requesting for his review of my previous complaint of discrimination and the "bias review and decision" made by Michael Roemer, Wells Fargo Chief of Compliance. - David Galloreese told me via email to contact Wells Fargo Employer Relations manager Tanita Toliver.

- **November 6, 2018 – Wells Fargo INFORMAL WARNING from Cynthia Boorman and Nancy Coles.** During the status call with Nancy Coles, she invited Cynthia Boorman to the call and presented me with an INFORMAL WARNING document. The document comprised of false accusations and action plan created by Cynthia Boorman and Nancy Coles.

- The INFORMAL WARNING Action by said individuals will prevent me from getting a bonus for YE 2918 and salary increase. Eventually, this INFORMAL WARNING will result on my Wells Fargo employment termination.

## B. COMPLAINT FACTS

I have prepared this letter concerning, among other things, the severe race discrimination, harassment, retaliation and other unlawful conduct to which I have been subjected by my direct manager (Nancy Coles – "Ms. Coles"), her manager (Cynthia Boorman - "Ms. Boorman") and Chief of Compliance (Michael Roemer – "Mr. Roemer") at Wells Fargo Compliance group.

Furthermore, the false allegations made by my immediate manager, Ms. Nancy Coles and her manager, Cynthia Boorman from May to November 2018 were reported to Wells Fargo Head of Human Resources and also Company CEO. In fact, on May 29th, I filed a first formal complaint of discrimination, retaliation and harassment against Cynthia Boorman and Nancy Coles with Wells Fargo Head of Human Resources, Ms. Hope Hardison.

Wells Fargo first complaint dated May 29, 2018, was created to address the egregious mistreatment at the hands of Ms. Boorman and Ms. Coles, to thwart any further mistreatment, and to advance my efforts to obtain an internal job transfer and other remedies directly with Wells Fargo's Human Resources Department.

As the Company's legitimate employment records reflect, I have been an excellent and hardworking employee, who has consistently performed in exemplary fashion since the commencement of my employment on August 31, 2016. Indeed, according to my Wells Fargo Year End Performance Review of 2016, I met my previous manager (Robert Bing – "Mr. Bing") expectation and was awarded by Mr. Bing an overall performance "meet expectations"; and was consequently awarded a $6,500.00 bonus for fiscal year 2016.

10

Based on the Wells Fargo job offer letter dated August 22, 2016, my Wells Fargo job title is *Compliance Consultant 4 – BCBS Governance Oversight Consultant with corporate title as "Vice President"*. From September 1, 2016 to April 2, 2018, I reported directly to my former manager, Mr. Robert Bing, (Compliance Manager 5) SVP/ Head of Governance & Reporting and to his manager, Ms. Sara Satten, SVP, Compliance Operations Officer. I have always been a dedicated Wells Fargo employee and received high praise and good performance appraisals from senior management (Mr. Bing and Ms. Satten).

At Wells Fargo, when Mr. Bing was my direct manager (from September 2016 to April 2018), I was responsible for the implementation of an effective risk data aggregation and reporting strategies associated to Regulatory BCBS 239 program (Wells Fargo G&O Framework), risk assessments, controls and credible challenge reviews for State of Compliance, among other responsibilities, working alongside of Corporate Risk, Enterprise Data Analytics, Enterprise Controls Oversight and RCRM Data Provider teams to support execution o regulatory program and COO (Ms. Satten) initiatives.

Regarding Wells Fargo fiscal year 2017, I was again reviewed by Mr. Robert Bing and in light of many project accomplishments (which Mr. Bing himself highlighted), on the 2017 Year End Performance Review again contained strong and positive feedback. including:

During the course of my Wells Fargo employment, reporting directly to my manager Mr. Bing from August 31, 2016 to April 2, 2018, as BCBS239 Oversight Compliance Consultant and executing my daily responsibilities as BCBS 239 Compliance Oversight, I exceled on projects assigned by Mr. Bing and received high accomplishments and positive feedback. As a result of my work dedication to BCBS239 project for Compliance, on September 2017, Mr. Bing expanded my responsibilities and assigned me on projects involving Compliance Implementation Plan (CIP), Compliance Reporting Strategy and Validation of Compliance reconciliation.

On April 13, 2018, as a result of the resignation of my former manager Mr. Bing (April 2, 2018) his Governance & Reporting team (team of 4 people, including myself) were officially moved to Ms. Boorman's Compliance Operations group. At that time, Ms. Boorman assigned me to work with Ms. Coles as my new manager.

After the resignation of my former manager, Mr. Robert Bing ("Mr. Bing"), Compliance Manager 5, on April 2, 2018, I have applied for internal job opportunities (manager levels 3 & 4) via Wells Fargo Careers and successfully interviewed with respective Human Resources recruiters and Wells Fargo hiring managers. Since April 2018, I have applied for more than 100 internal Wells Fargo jobs via Career site and was able to interviewed for Senior Roles (Records available upon request).. Ms. Boorman and Ms. Coles are aware that I have internally interviewed for the following management positions at Wells Fargo and since May 7, 2017, they have threatened me with a poor performance appraisal, which will prevent me from any future internal job transfers at Wells Fargo.

| Interview Date | Job ID | Wells Fargo Position | Interviewer(s) |
|---|---|---|
| April 6, 2018 (Recruiter) | 5394714 | Operational Risk Manager 4 – Reputational Risk Oversight | Jorie Thomas |
| April 27, 2018 | 5400147 | Operational Risk Manager 4 – Financial Crimes Operations | Michael Cho |
| April 30, 2018 | 5399612 | Financial Crimes Manager 3 – Product Risk Manager HRA | Michael Torregiano |
| May 15, 2018 | 5403585 | Operational Risk Manager 4 – Customer Due Diligence | Kat Claxton (Recruiter) |
| May 21, 2018 Ward | 5403585 | Operational Risk Manager 4 – Customer Due Diligence | Crystal Reilly /Mark |

At Wells Fargo, as the Company's legitimate employment records reflect, I am an excellent and hardworki employee, who has consistently performed in exemplary fashion since the commencement of my employment

11

Wells Fargo on September 1, 2016. According to Mr. Bing's assessment of my Wells Fargo 2016 and 2017 Year End Performance Reviews, I have exceeded Mr. Bing's expectations and as a result received "strong" ratings with positive comments about my overall performance from September 2016 to March 2018, and consequently was awarded a $21,000.00 bonus for fiscal year 2017. Overall, Mr. Bing's comments reflected my willingness and capability to take on all types of activities to support Mr. Bing and Ms. Satten Compliance initiatives and successfully met their objectives and expectations.

- Based on Mr. Bing's comments of my 2016 Year End performance, "*Marcia built a solid foundation to support RCRM risk data activities and was well positioned for success in 2017*".
- During the 2017 YE Performance, Mr. Bing wrote "*Marcia successfully met all 2017 objectives. In particular, Marcia brings a positive, can-do attitude to work, treats all team members with respect, readily adapts to organizational changes and takes pride in the work she produces. This position her for success in 2018*".

Based on the Wells Fargo job offer letter dated August 22, 2016, my Wells Fargo job tile is *Compliance Consultant 4 – BCBS Governance Oversight Consultant with corporate title as "Vice President"*. From September 1, 2016 to April 2, 2018, I reported directly to my former manager, Mr. Robert Bing, (Compliance Manager 5) SVP/ Head of Governance & Reporting and to his manager, Ms. Sara Satten, SVP, Compliance Operations Officer. I have always been a dedicated Wells Fargo employee and received high praise and good performance appraisals from senior management (Mr. Bing and Ms. Satten).

However, as described in greater detail below, I have been subjected to systemic retaliation, discrimination and continuous harassment by Ms. Boorman and Ms. Coles, which actions against me became utterly intolerable and has negatively impacted my work environment at Wells Fargo, creating a hostile work environment.

1. Ms. Boorman and Ms. Coles are harassing me for using the time that I have taken from my follow up doctor's visit, lunch and coffee breaks to threatened me with poor employment performance appraisals. I have always ensured to let them know via email when I have a doctor's appointment, the time I leave the office and time I return to the office from respective doctor's appointment. I addition, I also ensured to make up time for time spent at doctor's office, before doctor's visit and obtain their approvals. <u>They are not applying the same actions to other team members that reports to Ms. Boorman and her team. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.</u>

2. The severe discrimination, harassment and retaliation to which I have been subjected at Wells Fargo under Ms. Boorman management commenced on May 2, 2018. Unfortunately, after confronting Ms. Coles on May 7, 2018, I have become the victim of significant retaliation, which has worsened, resulting on hostile work environment and deterioration of my health. By way of example only, Ms. Coles was assigned as my manager by Ms. Boorman and I relied on Ms. Coles for support of various projects that were related to reporting strategy and internal processes, since I had just joined the team on April 13 2018. However, after I confronted Ms. Coles to oppose her violations of Wells Fargo employment policies and New York State Labor Standards Law, which was described on Ms. Coles email of May 8 2018 (listed below), both Ms. Coles and Ms. Boorman have increase this harassment and retaliatio creating a hostile environment at Wells Fargo.

    (a) *Ms. Coles Email* - "*if you choose to work 9:00 -- 5:00, <u>you do not have an available lunch h</u> for personal business. You may work 8:00 -- 5:00 or 7:00 -- 4:00 and take an hour lunch.*" - <u>Boorman and Ms. Coles are NOT using the same approach to other team members that w for Ms. Boorman. I have supporting evidence about this severe harassment against available for Wells Fargo Human Resources investigation</u>

(b) Ms. Coles Email – "*If you are ill or have a personal business to attend to, as an exempt team member, you must take PTO in a half-day or full day increment (our group does not provide the option of working from home when sick)*" - Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(c) Ms. Coles Email - "*Our group has been generous to allow us to take an hour or two here and there for personal appointments provided that the time away from the office is timely made up.*" Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(d) Ms. Coles Email - "*Before you can take any further time away for other personal appointments, you need to make up in full the hours* that were missed last week and the week before last or, alternatively, take a paid time off to account for that time.*" -  Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(e) Based on Ms. Coles' email of May 7th, she stated: " *if you choose to work 9:00 – 5:00, you do not have an available lunch* hour for personal business". This is a critical violation of Wells Fargo policies and New York State Labor Standards.

    a.  **Wells Fargo Meals & Rest Periods Policy: New York**
"30-minute meal period for team members working more than 6 hours extending over "noon day meal period" (11:00 a.m. to 2:00 p.m.); additional 20-minute meal period, taken between 5:00 p.m. and 7:00 p.m.; if shift begin before 11:00 a.m. and continues past 7:00 p.m."

    b.  **New York State Labor Standards: "Guidelines for Meal Periods"**
"Every person employed in or in connection with a mercantile or other establishment or occupation coming under the provisions of this chapter shall be allowed at least thirty minutes for the noonday meal, except as in this chapter otherwise provided. The noonday meal period is recognized as extending from eleven o'clock in the morning to two o'clock in the afternoon. An employee who works a shift of more than six hours, which extends over the noonday meal period, is entitled to at least thirty minutes off within that period for the meal period"

"Every person employed for a period or shift starting before eleven o'clock in the morning and continuing later than seven o'clock in the evening shall be allowed an additional meal period of at least twenty minutes between five and seven o'clock in the evening."

Ms. Coles mandatory instructions for me to comply were only applicable to me and NOT to other employees that works for Ms. Boorman or at Wells Fargo. Ms. Coles and Ms. Boorman discriminatory actions are unlawful and should NOT be acceptable by Wells Fargo. Ms. Boorman and Ms. Coles are not applying the same rules to other team members that reports to Ms. Boorman. I have supporting evidence about this severe harassment against me and Wells Fargo violations, available for Wells Fargo Human Resources investigation.

3.  On May 22, 2018, Ms. Boorman came to New York office for a meeting with Ms. Jillian Berman (Ms. Berman) and Mr. David D'Amico (Mr. D'Amico). At that time, Ms. Boorman asked me to meet with Ms. Berman) and Mr. David D'Amico (Mr. D'Amico). At that time, Ms. Boorman asked me to meet with me to go over project notes, but the main focused of her conversation was to give me a verbal warning about: (a) my time spent for ongoing doctor's follow up visits, (b) extensive time that I spent away from

13

my desk, which was told by another person in the New York office that she uses as an informant, (c) how she was monitoring my time away from my desk using Wells Fargo Instant Messaging (IM), (d) how my former manager (Mr. Bing) told her details about my DVT, health treatment and how it negative impacted my 2017 performance, (e) issues with activities and project assigned by Ms. Coles, who reports directly to Ms. Boorman and has a Law degree.

(a) <u>My time spent for ongoing doctor's follow up visits</u> - I have always ensured to let them know via email when I have a doctor's appointment, the time I leave the office and time I return to the office from respective doctor's appointment. I addition, I also ensured to make up time for time spent at doctor's office, before doctor's visit and obtain their approvals. They are not applying the same actions to other team members that reports to Ms. Boorman and her team. <u>I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.</u>

(b) <u>How another team member (manager in the New York office) told her that I have spent extensive time away from my desk in the New York office.</u> – Ms. Boorman implied that this team member was Ms. Jillian Berman, who has her office three feet away from my cubical desk in the New York office. Ms. Boorman blatant lies and accusations that I am not conforming with her orders, rules are despicable and a clear form of harassment and discrimination against me, because she doesn't enforce the same actions to other team members that reports to Ms. Boorman. <u>To have Mr. Berman (who is also Ms. Boorman's manager) to tell her false information about my work hours and whereabout at Wells Fargo are NOT acceptable and a clear for a severe harassment. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.</u>

(c) <u>How she was monitoring my time away from my desk using Wells Fargo Instant Messaging (IM)</u> – Ms. Boorman mentioned that very often and most occasions when she checks my Wells Fargo Instant Messaging (IM) status it shows that I am not on my desk and it was unacceptable for her. She affirmed that I should be on my desk at all times. Ms. Boorman and Ms. Coles are also using Wells Fargo Instant Messaging ("IM) to control the time that I am out of my desk. My desk is outside of Ms. Berman's office, who is also Ms. Boorman's manager. When a person doesn't type on the keyboard for some time, IM will show status "inactive", "away", "meeting", "busy", <u>Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence to provide for Wells Fargo Human Resources investigation.</u>

(d) <u>Mr. Boorman and Ms. Coles ongoing harassment</u> - The Wells Fargo IM, well known as "Skype for Business" is utilized for online meetings, presentation and quick chats with other team members. <u>Ms. Boorman is using Wells Fargo IM to harass me and impose actions that are not applicable to other team members that reports to Ms. Boorman. I have supporting evidence about this severe harassment and discrimination against me, available for Wells Fargo Human Resources investigation.</u>

(e) <u>Mr. Boorman also told me how my former manager (Mr. Bing) told her details about my DVT, health treatment and the negative impact to my 2017 performance.</u> – This was a blatant lie from Mr Boorman, because I received an outstanding 2017 Wells Fargo Performance appraisal from Mr Bing (my former manager). In fact, I told her that based on Wells Fargo policies, Mr. Bing would never disclose any information about my personal health, because it would be a violation of Well Fargo employment policies. In fact, on March 20, 2018, Mr. Bing arranged for a meeting with Well Fargo Employee Relations, Ms. Jo Bingham ("Ms. Bingham") to review questions about PTO, ST and other employment policies that protect my job at Wells Fargo. Mr. Bing would never menti anything to Ms. Boorman about my previous health issues. Furthermore, at that time, I was inform by Ms. Bingham, Employee Relations that my Wells Fargo profile was clean without any notes fr Mr. Bing about my previous DVT Health condition. <u>Ms. Boorman and Ms. Coles are NOT using</u>

14

same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment and discrimination against me, available for Wells Fargo Human Resources investigation.

(f) Ms. Boorman also made negative affirmations and accusations about issues with activities and projects assigned by Ms. Coles to me. – Another blatant lie. I have always conformed with Ms. Boorman and Ms. Coles project requests and ensure to complete them within timelines set by both. In addition, I have always provided status on respective activities via email, but for some reason, lately, Ms. Boorman and Ms. Coles always find an issue with my skills and project approach, even do I have always completed all activities. Consequently, they are keeping make threats that such "issues" will result in a poor performance appraisal. In one occasion, I escalated to them that another team member in her group was not providing project information or status, which was past due and at that time, they heavily criticized me for escalating those critical issues and blaming me for the team member delays in providing information for respective projects. Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

(g) Ms. Boorman also gave me a "verbal warning about issues with my work, attendance, doctor's visit, short breaks (to go to the bathroom, pick up lunch)", extensive time out of the office, which according to her were reported by another team member informant that has an office on the same floor in New York office. – Ms. Boorman and her informant approach and harassment against me are unacceptable and Wells Fargo should take immediate actions to stop Mr. Boorman's violations, harassment and discrimination against me I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

4. On June 13, 2018, after sending my rebuttal emails (total of 14 emails with attachments) to Ms.Coles and Ms. Boorman, I also forwarded an email to Ms. Boorman's manager, Mr. Mike Roemer ("Mr. Roemer"), Wells Fargo Chief Compliance Officer – *Appendix Exhibit 24*. At that time, I mentioned on the email to Mr. Roemer that the main purpose of that email was to escalate to him the unlawful harassment, discrimination and retaliatory actions that Ms. Boorman and Ms.Coles have taken against me at Wells Fargo for the past couple months. The retaliation and severe harassment from Ms. Boorman and Ms. Coles against me, which resulted on hostile work environment, including violations of Wells Fargo employment policies, State and Federal Laws were unacceptable. In addition, I mentioned to Mr. Roemer that I had already filed my formal complaint of retaliation, harassment and discrimination against Ms. Boorman and Ms. Coles with Wells Fargo Head of Human Resources for investigation. As a result, couple hours later, Mr. Roemer replied to my email: *"Thank you for sharing your concerns with me. It is important that these matters be checked into. Our Employee Relations team is best-equipped to do this and someone from that group will be following up with you. As you know Wells Fargo takes these concerns very seriously as do I.]"*

5. When I confronted Ms. Coles and Ms. Boorman's employment violations for enforcing group rules "created only for me" and treating me different than other employees in the Wells Fargo Compliance group, who didn't have to comply with those same rules;

6. When I confronted their false accusations (verbally and via email), which were intended to create a negative 2018 performance job review that could result on termination of my employment at Wells Fargo;

7. During the Wells Fargo Human Resources investigation (from July to October 2018), the ongoing retaliation, harassment and discriminatory actions from Ms. Boorman and Ms. Coles against m

15

become intensified and became utterly intolerable and negatively impacted my work environment. Therefore, I continued to report an filed a new complaints to Head of Wells Fargo Human Resources (Hope Hardison) requesting for Human Resources support and updates about investigation, all of which I understand can be verified through numerous emails.

8.  Also, during Wells Fargo Human Resources investigation by Steven Thompson, since Ms. Boorman and Ms. Coles didn't stop and increased the ongoing retaliation, harassment and discrimination against me and no corrective actions were taken against them by Human Resources, in order to protect my job, I created numerous "Email Rebuttals" responses to all Ms. Boorman and Ms. Coles emails of harassment, retaliation that implied, suggested many times that I was not complying with their email requests, instructions, project manager activities assigned to me by Ms. Boorman and Ms. Coles

9.  When I filed my first complaint (May 29th) with Wells Fargo Human Resources for investigation of Ms. Boorman and Ms. Coles' egregious and pervasive harassment and retaliation against me for opposing their discrimination against me at Wells Fargo Compliance group, throughout the Human Resources investigation conducted by Steve Thompson, I created / filed additional complaints that were submitted to the Head of Human Resources for further investigation.

10. **Those additional complaints that are outlined below by date of event that were reported to Human Resources, they were also included in the Exhibits of my EEOC Complaint.** Each complaint describes additional discrimination, retaliation and harassment suffered during the Human Resources investigation and should be part of my EEOC Complaint:

   • **September 19, 2018** – Follow up Letter and Email to Wells Fargo Head of Human Resources. Describing the ongoing discrimination and additional harassment and retaliation by Cynthia Boorman and Nancy Coles at Wells Fargo.

   • **September 21, 2018** – Marcia Koutellos Email Request to Stop Discrimination and Harassment. – Sent an email to Nancy Coles and Cynthia Boorman describing the ongoing harassment activities and additional retaliation that I have been subjected for opposing discrimination in the work place at Wells Fargo.

   • **October 9, 2018** – Follow up Letter and Email to Wells Fargo Head of Human Resources (Hope Hardison, and Steve Thompson).

   • **October 10, 2018** – My rebuttal to Wells Fargo Chief of Compliance Decision Not to Take Actions against Cynthia Boorman and Nancy Coles.

   • **October 16, 2018** – Follow up Letter and Email to Wells Fargo Head of Human Resources (Hope Hardison, and Steve Thompson) and CEO (Tim Sloan) and Chief of Risk Management (Mandy Norton)

   • **October 18, 2018** – Follow up Letter and Email to Wells Fargo Head of Human Resources (Hope Hardison, and Steve Thompson) and CEO (Tim Sloan) and Chief of Risk Management (Mandy Norton).

   • **October 18, 2018** – My Email Rebuttal to Nancy Coles and Cynthia Boorman False Accusations.

   • **October 24, 2018** – Wells Fargo CEO Announcement to Terminated Hope Hardison (Head of Human Resources). Tim Sloan, Wells Fargo CEO, announced an organizational and leadership changes via Wells Fargo Corporate Communications. As a result, Hope Hardison was replaced by David Galloreese, who became the New Head of Human Resources, reporting directly to Tim Sloan.

16

- **October 25, 2018** – Wells Fargo *Human Resources Employer Relations* Decision – Closure Memo. Steve *Thompson* closure memo was provided after the fact that the Chief of Compliance, Michael *Roemer*, communicated his decision (vis email) in not to take any actions against Cynthia Boorman and Nancy Cole.

- **November 2, 2018** – Follow up Email to Wells Fargo NEW Head of Human Resources (David Galloreese) requesting for his review of my previous complaint of discrimination and the "bias review and decision" made by Michael Roemer, Wells Fargo Chief of Compliance.

- **November 6, 2018** – Wells Fargo INFORMAL WARNING from Cynthia Boorman and Nancy Coles. During the status call with Nancy Coles, she invited Cynthia Boorman to the call and presented me with an INFORMAL WARNING document.

The retaliation and harassment and discrimination from Ms. Boorman and Ms. Coles, including their abusive actions and violations of Wells Fargo Employment policies can be verified from previous discussions, instant messages (IMs) and exchange emails that I had with them from May 2nd to this date. Details and supporting documentation are available for Human Resources investigation, upon request.

In many occasions, Ms. Boorman and Ms. Coles made baseless comments about my work performance, and when I asked for them to provide evidence of their affirmations they would change the subject and would respond "well it's in general". Their responses seemed to be unfounded.

The false allegations/ accusations made by Ms. Boorman and Ms. Coles on multiple occasions about my professionalism, job qualifications and work performance are baseless.  Furthermore, I believe I am also the victim of acute and egregious retaliation by the same individuals for my efforts to oppose this mistreatment and other violations that I am reporting to Wells Fargo Human Resources.

Wells Fargo Head of Human Resources (Hope Hardison) never replied to my "complaint emails" or formal complaints filed with Wells Fargo Human Resources and Wells Fargo Employer Relations team. In fact, Hope Hardison was terminated from Wells Fargo on October 24, 2018. David Galloreese took over Ms. Hardison's responsibilities and became the new Wells Fargo Head of Human Resources.

Although I had hopes that my complaint of discrimination, harassment and retaliation against Ms. Boorman and Ms. Coles was going to be fairly investigated by Wells Fargo Human Resources and Human Resources would than take actions to stop Ms. Boorman and Ms. Coles' ongoing discrimination, harassment and retaliation against me,  Human Resources or Employer Relations at Wells Fargo didn't make a decision to take actions against Ms. Boorman and Ms. Coles, but instead, relied on the Chief of Compliance final decision, which was communicated to me via email by the Chief of Compliance, Mr. Roemer.

Based on Chief of Compliance (Michael Roemer) opinion and final decision about my complaint against Ms. Boorman and Ms. Coles, which he sent to me via email, Mr. Roemer didn't find anything wrong with Ms. Boorman and Ms. Coles discriminatory actions, retaliation and harassment against me. In fact, Mr. Roemer categorized my complaint of discrimination, harassment and retaliation against Ms. Boorman and Ms. Coles "as misunderstandings" and NOT Wells Fargo employment violations.

At the time, Mr. Roemer, communicate his decision to protect Ms. Boorman and Ms. Coles, the Wells Fargo Human Resources and Employee Relations investigation were still conducting their investigation. In fact, a week later, after Mr. Roemer shared his decision not to take any actions to punish Ms. Boorman and Ms. Coles, Steve Thompson from Wells Fargo Human Resources Employee Relations shared a "Closure Memo" communicating that Human Resources didn't find anything wrong with Ms. Boorman and Ms. Coles actions against me.

Since Mr. Roemer, Chief of Compliance at Wells Fargo is Ms. Boorman's direct manager and Ms. Coles's manager and he depends on both of them to produce critical Compliance reporting information for Regulatory Agencies (FRB/OCC and CFPB), Mr. Roemer made a decision to protect Ms. Boorman and Ms. Coles. As a result, my work environment became hostile and Ms. Boorman and Ms. Coles employment violations against me grew more aggressive trying to document a negative work performance.

On October 10, 2018, I responded to Mr. Roemer's email and respectfully mentioned to him that I disagreed with his decision in not to take any actions against Ms. Boorman and Ms. Coles, because based on my Wells Fargo employment records (from August 2016 to Aril 2018) and job performance reviews by my previous manager, Mr. Bing, it proves and shows that I am a good employee at Wells Fargo. In addition, I affirmed that for the past six months, I have been subjected to systemic retaliation, discrimination and continuous harassment by Ms. Coles and Ms. Boorman, which actions against me became utterly intolerable and has negatively impacted my health and work environment at Wells Fargo

During Human Resources Employee Relations investigation sessions and interviews with me via conference calls, I mentioned to Steve Thompson – "The assigned Investigator" that I was internally interviewing for another job with other Wells Fargo groups, in order to secure an internal transfer into another position over which Ms. Boorman and Ms. Coles did not have supervisory responsibility. I always mentioned to Human Resources that I simply wished to have a work environment free from discrimination and hostile and aggressive behavior engaged in by a manager who controlled my terms and conditions of employment.

Unfortunately, after confronting Chief of Compliance, Mr. Roemer's decision to protect Ms. Boorman and Ms. Coles employment violation and misconduct, on November 7th, I became the victim of significant retaliation and discrimination by Mr. Roemer, who in fact ordered /told Ms. Boorman and Ms. Coles to put me on "Mandatory Informal Job Warning".

The Chief of Compliance (Mr. Roemer) retaliatory actions against me will 1) Prohibited me from getting 2018 bonus payment, which I was entitled to; 2) Prohibited from applying for internal job transfer to another Wells Fargo group; 3) Result on termination of my employment at Wells Fargo. In fact, I am the only woman form Latin America in the Wells Fargo Compliance group that has disagreed with the Chief of Compliance, Mr. Roemer's decision and affirmed to him that Ms. Boorman and Ms. Coles ongoing harassment, retaliation and discrimination against me are in contravention of Company's employment policies and violation of Federal/ State Laws. As a form of retaliation, he ordered a "Mandatory Informal Job Warning" on me in order to terminate my employment at Wells Fargo.

In addition, and most critically, Mr. Roemer issued an utterly false, derogatory "Mandatory Informal Job Warning" to me, which materially contradicts all of my previous formal 2016 & 2017 Performance Reviews issued by my previous general manager, Mr. Robert Bing, as well as the less formal positive feedback that I regularly received from my coworkers and managers. When Ms. Boorman and Ms. Coles reviewed details of the "Mandatory Formal Warning'" with me (over the phone), they confirmed that the Chief of Compliance, Mr. Roemer ordered them to serve the "Forman Job Warning" on me.

On November 7th, during the review of "Mandatory Informal Warning" with Ms. Boorman and Ms. Coles, that took place via conference call, I explained to both of them that despite evidence contradicting many of Mr. Roemer, Ms. Boorman and Ms. Coles issues and negative statements described in the "Informal Warning", in many instances they (all three of them) failed to take into account my achievements, skills, and business acumen; and, instead, focused on a purported bad "communication" style.

To make matters worse, Ms. Boorman and Ms. Coles repeatedly postponed presenting my 2018 job performance evaluation to me until the date (October 10, 2018) that the Chief of Compliance (Mr. Roemer)

communicated "his final decision" about Human Resources investigation of my complaint of discrimination, retaliation and harassment by Ms. Boorman and Ms. Coles.

The fact that when Mr. Roemer made his decision not to take any employment actions against Ms. Boorman and Ms. Coles, and ordered me to work with both of them, because in his opinion, my complaint of race discrimination, retaliation and harassment was all only misunderstandings, I knew that the worse was yet to come.

After I replied to Mr. Roemer's email (included Head of Human Resources and Wells Fargo CEO) and explained that I disagre with his opinion and decision, about a week later, he ordered Ms. Boorman and Ms. Coles to put me on a "Mandatory Informal Warning". I am the only women, Latina, over 40 years of age that has disagree with Chief of Compliance opinion and copied Wells Fargo CEO in the email communication.

The "Mandatory Informal Warning" approved by the Chief of Compliance also clearly harms me financially -- insofar as it appears that such unexpected "informal Warning" will deprive me of a bonus for the 2018 fiscal year and also will prohibited me from applying for an internal transfer at Wells Fargo, resulting on termination of my employment at Wells Fargo.

In sum, and quite understandably, I am extremely upset by the way I have been mistreated on a personal, emotional, and financial level by The Chief of Compliance (Mr. Roemer) and his direct managers - Compliance Operations manager (Ms. Boorman) and Compliance Consultant (Ms. Coles), who all have among other things:

1. Subjected me to retaliation and harassment, because I have opposed discrimination in the workplace and filed several complaints of discrimination, harassment and retaliation against Ms. Boorman and Ms. Coles;

2. Progressively stripped of my material responsibilities involving implementation of BCBS 239 for Compliance Group;

3. Subjected me to continuous email reprisals with false accusations about my professionalism and project management activities;

4. Falsely and negatively criticized my work with efforts to undermine my work and create a false and negative poor performance review for me, which could result in immediate termination of my employment;

5. Subjected me to a series of materially adverse employment actions (described in great detail on my complaint of 49 pages + supporting documentation), which significantly diminished my material job responsibilities by not assigning any work or tasks related to previous BCBS 239 work and CIP projects, which were previously assigned by my former manager, Mr. Robert Bing.

I reasonably and in good faith believe that Mr. Roemer, Ms. Boorman and Ms. Coles' deplorable actions are in contravention of the Company's policies and have violated, among other things, my rights under New York City, New York State, and Federal laws relating to race discrimination, harassment and employment discrimination. Such discrimination is on the basis of gender, as well as other potential criteria, such as national origin. I am also the victim of acute and egregious retaliation for her efforts to oppose my mistreatment. I cannot allow my personal and 20+ years professional career reputation to be tarnished and for her physical, financial and mental state to continue to deteriorate.

# c. <u>SUPPORTING DOCUMENTATION</u>

Please note that the supporting documentation corresponds to <u>Exhibits sections of EEOC complaint</u> and also an <u>APPENDIX section comprised of supporting documentation for the Wells Fargo complaint</u> previously filed with Wells Fargo Human Resources, which has been submitted to The Equal Opportunity Employment Commission (EEOC) for further investigation.

## Description

**Exhibits**

**Exhibit A_** Letter to EEOC Director including EEOC Complaint Charge No. 520-2019-00547

**Exhibit B_** Chronological Events/Dates

**Exhibit C_** Koutellos First Complaint Submitted to Wells Fargo Human Resources <u>on May 29, 2018</u>

**Exhibit D_** Koutellos AMENDED Complaint Submitted to Human Resources <u>on July 6, 2018</u>

**Exhibit E_** Koutellos Complaint **APPENDIX section** with support docs for Wells Fargo Amended Complaint.

**Exhibit F _** Koutellos additional issues of discrimination submitted to Human Resources <u>on September 19, 2018</u>

**Exhibit G_** Koutellos additional discrimination issues sent to Nancy Coles & Others <u>on September 21, 2018</u>

**Exhibit H_** Koutellos additional discrimination issues sent to Nancy Coles & Others <u>on October 9, 2018</u>

**Exhibit I_** Koutellos additional discrimination issues sent to Michael Roemer & Others <u>on June 13, 2018</u>

**Exhibit J_** Koutellos email rebuttal to Michael Roemer & Others <u>on October 10, 2018</u>

**Exhibit K_** Koutellos additional discrimination issues sent to Steve Thompson & Others <u>on October 16, 2018</u>

**Exhibit L_** Koutellos additional discrimination issues sent to Hope Hardison & Others <u>on October 18, 2018</u>

**Exhibit M_** Koutellos additional discrimination issues sent to Nancy Coles & Others <u>on October 25, 2018</u>

**Exhibit N_** Email response from NEW Human Resources Director (David Galloreese) on <u>November 2, 2018</u>

**Exhibit O_** Steve Thompson (HR Investigator)_Confirmation Memo dated as of <u>July 26, 2018</u>

**Exhibit P_** Steve Thompson (HR Investigator)_Notification of EXTRA LEGAL STEPS as of <u>August 31, 2018</u>

**Exhibit Q_** Performance Improvement Plan_ INFORMAL WARNING_issued on <u>November 6, 2018</u>

**Exhibit R_** Koutellos additional discrimination issues sent to Michael Roemer & Others <u>on June 28, 2018</u>

**Exhibit S_** Addy Gould (HR Relations)_sharing name of HR Support for Nancy and Cynthia <u>June 28, 2018</u>

**Exhibit T_** Koutellos additional discrimination issues sent to Steve Thompson & Others <u>on June 28, 2018</u>

**Exhibit U_** Koutellos additional discrimination issues sent to Nancy Coles & Others <u>on July 20, 2018</u>

**Exhibit V_** Steve Thompson (HR Investigator)_Investigation Initiation as of <u>July 3, 2018</u>

**Exhibit W**
- _Wells Fargo Offer of Employment dated <u>August 22, 2016</u>
- _Wells Fargo YE2016 Performance Review by Manager Robert Bing <u>February 24, 2017</u>
- _Wells Fargo YE2017 Performance Review by Manager Robert Bing <u>February 26, 2018</u>

**Exhibit XYZ**
- _Wells Fargo Policies – Speak Up and Nonretaliation Policy
- _Wells Fargo Policies – Anti Harassment
- _Wells Fargo Policies – Performance Management Policy
- _Wells Fargo Policies – Dispute Resolution
- _Wells Fargo Policies – Termination Policy

# Names of people mentioned on my EEOC Complaint of discrimination, Retaliation and Harassment by Wells Fargo Managers:

**Robert Bing** –
Compliance Manager (My former manager from August 31, 2016 to April 2, 2018). Wells Fargo: San Diego, CA

**Sara Satten** –
Compliance Executive (My previous manager boss), Head of Compliance COO. Retired March 1, 2018. Wells Fargo San Francisco

**Mandy Norton** –
Chief of Risk Management. She is Michael Roemer's manager. Wells Fargo North Charlotte/ NC

**Michael Roemer** –
Chief of Compliance, joined Wells Fargo on January 2018. He is direct manager of Cynthia Boorman and Nancy Coles at Well Fargo Compliance group. Wells Fargo San Francisco

**Cynthia Boorman** –
Compliance Manager, Leas Compliance Operations and reports directly to Michael Roemer. Wells Fargo Charlotte/NC

**Nancy Coles** –
Compliance Consultant, reports to Cynthia Boorman and is also my manager. Wells Fargo Charlotte/NC

**Jim Eckenrode** –
Compliance Manager. I support his Metrics projects. He reports directly to Cynthia Boorman. Wells Fargo Maryland

**Mike Osmera** –
Compliance Manager. I support his reporting documentation projects. He reports directly to Cynthia Boorman. Wells Fargo South Carolina

**Leah Lenox** –
Compliance Manager. She reports directly to Cynthia Boorman. Wells Fargo Charlotte/NC

**Jillian Berman** –
Compliance Manager, reports directly to Michael Roemer. Wells Fargo New York City

**Martha Cummings** –
Compliance Manager, reports directly to Michael Roemer. Wells Fargo Charlotte/NC

**Timothy J. Sloan** –
Wells Fargo Chief Executive Officer – CEO. Wells Fargo San Francisco

**Hope Hardison** –
Wells Fargo Head of Human Resources Director. She was fired on October 25, 2018. Wells Fargo San Francisco

**David Galloreese** –
New Wells Fargo Head of Human Resources Director. Replaced Hope Hardison. Wells Fargo San Francisco

**Steve Thornpson** –
Wells Fargo Employer Relations, assigned to investigate my complaint. Wells Fargo Minneapolis

**Cindy Menaker** –
Wells Fargo Human Resources member assigned to provide support to Ms. Boorman and Ms. Coles

**Addy Gould** –
Wells Fargo Human Resources member assigned to provide support to Michael Roemer



February 20, 2019

Marcia Koutellos
One Columbus Place
Apt N34C, New York, NY 10019

Re: Termination of Employment (Emp. ID 1669379)

Dear Marcia:

We have attempted to connect with you via telephone and email on a number of occasions over the last week. Due to the inability to connect with you verbally, we are sending you a letter to let you know about your employment status.

**Why You're Receiving this Notice**

This letter is to notify you that your employment with Wells Fargo has been terminated effective February 28, 2019. The cancellation of your employee benefits will take place on February 28, 2019. Your termination will be coded as "Other Voluntary" and you will not be eligible for rehire.

**What You Need to Do**

To verify your employment for future employment opportunities, you will need to ask prospective employers to go to **theworknumber.com** to verify basic employment information such as your employment status, dates of employment, and job title. The Wells Fargo company code for such inquiries is **14566**.

If your prospective employer requests to verify salary information, you must first log on to theworknumber.com and obtain a Salary Key to provide the verifier. Alternatively, you or your verifier may call The Work Number at 1-800-996-7566 for assistance. This additional step helps ensure that your salary information is released only at your request.

**Questions?**

If you have any questions about your **final pay**, contact the Team Member Care at 1-877-HRWELLS (1-877-479-3557), **option 2.**

For information about your **benefits**, refer to the Summary Plan Descriptions (SPDs) in the Benefits Book to review how various benefit plans and programs are affected when your employment with Wells Fargo ends. For questions or to request a copy of the SPDs, contact the Team Member Care at 1-877-HRWELLS (1-877-479-3557), **option 2.**

Remember that our Employee Assistance Consulting is available 24 hours a day, 7 days a week, at 1-888-327-0027 or 1-877-HRWELLS (1-877-479-3557), **option 4.**

For other concerns about your termination, contact ER Solutions at 1-877-HRWELLS (1-877-479-3557), **option 3.**

We wish you the best in your future endeavors.

Sincerely,

Chris Baker
Wells Fargo Compliance Manager
Risk Division

Wells Fargo HR Policy
Letter 20-D Rev. 4.0 3/2017
HRSI370NY

* N D 0 4 0 0 0 2 *

Wells Fargo
401 S Tryon St, 10th Fl
MAC: D1050-102
Charlotte, NC 28202

CHARLOTTE NC 282
20 FEB 2019 PM 2 L

Marcia Kutellis
One Columbus Place, Apt N34C
New York, NY 10019

10019-823243



# DEPARTURE AGREEMENT AND RELEASE OF CLAIMS

This Departure Agreement and Release of Claims ("Agreement") is made between Marcia Koutelios (hereinafter "you" or "your") and Wells Fargo Bank, N.A. ("Wells Fargo").

**WHEREAS,** you filed a Charge of Discrimination with the EEOC (Charge No. 520-2019-00547), co-filed with the New York State Division of Human Rights, alleging discrimination and harassment; and

**WHEREAS,** you and Wells Fargo have agreed to resolve the allegations in your Charge without any admission of liability and end your employment relationship with the Company as set forth herein; and

**WHEREAS,** as a part of this resolution you have agreed to resign from your position with Wells Fargo, upon your execution of this Agreement and the completion of the consideration period (the "Separation Date") and withdraw your Charge of Discrimination; and

**WHEREAS,** from today's date through the Separation Date, you will be relieved from your daily work activities in order to consider this Agreement, but will continue to receive your regular pay and benefits; and

**WHEREAS,** by signing this Agreement, you have elected to receive separation pay and other benefits to which you are not otherwise entitled;

**NOW, THEREFORE,** in consideration of the provisions of this Agreement, you and Wells Fargo do mutually agree as follows:

## 1) Release of All Claims

In consideration for the receipt of the separation pay and other terms and benefits described in this Agreement, to which you are not otherwise entitled, you hereby release, Wells Fargo Bank, N.A., its parent companies, predecessors, successors, affiliates, subsidiaries, employees, officers, agents, and directors (the "Company") from all claims, liabilities, demands and causes of action, known or unknown, likely or unlikely, which you may have or claim to have against the Company, as a result of your employment with or separation from employment. This includes, but is not limited to, claims for wrongful termination, constructive discharge, termination in violation of public policy, claims for compensation or any other monies allegedly due to you from Company, claims for severance pay or benefits pursuant to the Wells Fargo & Company Salary Continuation Pay Plan, claims for breach of express or implied contract, any tort of any nature, claims for retaliation, discrimination or harassment based on age, sex, race, religion, pregnancy, marital status, national origin, sexual orientation, and/or disability arising under federal, state, local, or common law, including but not limited to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Civil Rights Act of 1991, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act ("WARN"), the

Americans with Disabilities Act, the Family and Medical Leave Act, the Equal Pay Act, the Genetic Information Nondiscrimination Act of 2008, the related amendments to each of these statutes, and/or all state and local human or civil rights statutes.

You confirm that you have received from the Company all leave (paid or unpaid), wages, bonuses, commissions, and/or employee benefits to which you are entitled through the date of your signature, except as provided by this Agreement. You further confirm that you have no known work-related injuries or occupational diseases. Additionally, you have been provided and/or have not been denied any leave requested under the Family and Medical Leave Act or any similar state leave law or local ordinance, and you have not been discouraged from using any such leave.

You agree that you have received fair economic value for any and all potential claims or causes of action you may have against the Company and that you are not entitled to any other damages or relief from the Company. Accordingly, you agree that you will not file suit seeking to recover any further relief from the Company based upon any matter or event existing as of the date of this Agreement. Provided, however, that nothing in this Agreement precludes you from filing any claim or charge which, as a matter of law, cannot be waived or released by private agreement. As such, this release does not extend to claims which as a matter of law cannot be waived, including, but not limited to (a) pending unemployment insurance claims, (b) pending workers compensation claims, (c) claims for your vested interest in any employee benefit plan maintained by the Company, (d) challenging the knowing and voluntary nature of his release of claims under the Age Discrimination in Employment Act of 1967, and/or (e) pursuing a monetary award from the SEC or other government agency under applicable federal or state whistleblower statutes. This release also does not waive rights or claims which may arise after the date this Agreement is signed.

As a part of this Release, you shall timely execute a withdrawal of pending Charge No. 520-2019-00547 and take all other necessary actions to encourage the EEOC or State or Local agency to effectuate the full and complete resolution of all matters raised in the Charge.

2)   **OWBPA Notice**

The parties acknowledge that, in accordance with the provisions of the Older Workers Benefit Protection Act (OWBPA), you have twenty-one (21) days to consider the terms of this Agreement before signing. You agree that any modifications, material or otherwise, made to this Agreement do not restart or affect in any manner the original twenty-one day consideration period.

3)   **Right of Revocation**

You may revoke the above Release within seven (7) days of the date on which you sign this Agreement. If you exercise this right of revocation, you will be ineligible for the paid leave and other benefits described herein. To be effective, the revocation must be in writing and must be mailed, certified mail, return receipt requested to: Kelty McRae, Senior HRBP Leader, 11625 N. Community House Rd, Floor 03, Charlotte, NC 28277-1581.

**4)   Separation Payments and Outplacement**

a)   Your active employment with Wells Fargo will end upon your execution of this Agreement and the completion of the twenty-one day consideration period identified in paragraph 2 above ("Separation Date"). Provided you do not timely rescind the Agreement, you will then be placed on a paid separation leave for the period beginning February 5, 2019 through May 4, 2019, during which time you will receive your regular pay and benefits. On or before the next regular payroll pay date following your separation leave end date, you will also receive a lump sum payment, in the gross amount of $20,000.00, less applicable taxes and withholding in lieu of any payment under the Wells Fargo & Company Bonus Plan. These payments will be reflected in a W2 issued to you by Wells Fargo in accordance with standard payroll practices. You agree that, but for this Agreement, you would not be entitled to the separation leave and payments described in this paragraph. At the end of the twelve week paid leave period, your employment with Wells Fargo will end. Your separation will be recorded as a resignation.

b)   The available accrued but unused Paid Time Off (PTO) balance in Time Tracker, accrued prior to the start of your paid separation leave will be paid to you in a lump sum, less taxes, on the next regularly scheduled payday following your Separation Date.

**5)   Benefits Coverage after Departure Date**

You will receive additional information regarding continuation or conversion of certain benefits in which you participate, shortly after your termination of employment. You agree to contact the HR Service Center at 1-877-HRWELLS  (1-877-479-3557) with questions regarding benefits. You understand and agree that the separation payment shall not be cause for any recomputation of the benefits that may have been or will be provided to you by Wells Fargo.

**6)   Equity Awards**

All outstanding equity awards will be treated as stated in the applicable award agreements. If you have questions about equity awards, you should refer to the award term sheet(s) and prospectus(es) covering such awards. If you continue to have questions about your equity awards, you agree to call Wells Fargo Stock Plan Administration at 1-877-574-1039.

**7)   Confidentiality, Non-Disparagement and Non-Disclosure**

a)   You agree to treat the fact and terms of this Agreement as strictly confidential. This means that you will not, unless required by law to do so, reveal any of the terms of the Agreement, the amounts referred to in this Agreement, or the fact of the payment of said amounts, to any person except your spouse, if applicable, attorney or tax preparer or other professional advisors to whom the disclosure is necessary for the purposes for which you have consulted such professional advisors.

b)   You agree not to express any derogatory or damaging statements about Wells Fargo, the management of Wells Fargo, or the business condition of Wells Fargo in any public way or to anyone who could make these statements public.

c)   You agree that you shall not disclose to any person or entity at any time or in any manner, directly or indirectly, any information relating to the operations of Wells Fargo which has not already been disclosed to the general public. This includes but is not limited to the following information: all information about employees or former employees, all product information, all information relating to Wells Fargo's strategic business or marketing plans, proprietary information and/or trade secrets; customer lists and/or names; product and service prices; customer charges; contracts; contract negotiations; and employee relations matters.

d)   Nothing contained in this Agreement prohibits or restricts you (or your attorney) from initiating communications directly with, or responding to any inquiry from, or providing testimony before, the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA), the National Labor Relations Board (NLRB), the Equal Employment Opportunity Commission (EEOC), or any self-regulatory organization or governmental authority charged with the enforcement of any laws.

8)   **Return of Equipment and Resignation of Officer Status**

Unless otherwise noted in this Agreement, you shall return all Wells Fargo property and information within your possession on or before your Separation Date. Such property includes, but is not limited to credit cards, computers, copy machines, facsimile machines, lap top computers, cellular telephones, pagers, entry cards, keys, building passes, computer software, manuals, journals, diaries, files, lists, codes, documents, correspondence, and methodologies particular to Wells Fargo and any and all copies thereof. Upon request, you also agree to provide Wells Fargo with any and all passwords for any and all company devices including any Company issued cellular telephone. Moreover, you are strictly prohibited from making or downloading copies, or directing copies to yourself through e-mail or other transmission, of any Wells Fargo property covered by this paragraph.

9)   **Reasonable Requests**

As part of this Agreement, you will be expected to respond to all reasonable requests by the Company regarding business matters on which you have knowledge or information arising from your employment with Wells Fargo. In addition, you agree to provide information of which you are aware about Wells Fargo business and/or workplace matters, and to cooperate in in any internal or external investigation and/or litigation in which Wells Fargo is a named party by providing information relevant to the circumstances surrounding such internal or external investigation, litigation and/or testifying as a witness, as requested by Wells Fargo or its legal counsel

**10)    Employment Verification**

In the event the Company receives a request concerning your employment with the Company, the Company will verify only dates of employment and job titles unless required by law to provide any additional information or unless you authorize the Company or the approved verification of employment vendor to provide certain additional information. For additional information on employment verifications, you agree to direct anyone seeking to verify your employment with Wells Fargo to contact Wells Fargo's approved verification of employment vendor directly at 1-800-996-7566 or access www.theworknumber.com using employer code 14566. Wells Fargo will communicate your departure from active service as a retirement.

**11)    Unemployment Insurance Benefits**

The Company agrees to provide information consistent with company records in response to any inquiry from a state unemployment agency asking for the reason for your separation from employment. In the event the unemployment agency determines you are eligible for unemployment benefits, the Company agrees not to contest that finding. You agree that Wells Fargo is neither responsible nor liable for any decision by the agency for any claims for unemployment insurance benefits, including any decision to deny benefits.

**12)    Medicare**

You represent and agree that you are not a Medicare beneficiary and that you are not currently receiving, have not received in the past, will not receive as of the time of payment under this Agreement, are not entitled to, are not eligible for, and have not applied for or sought Social Security Disability or Medicare benefits. In the event any statement in the preceding sentence is incorrect, the following sentences (i.e., the remaining sentences of this paragraph) apply. You represent and agree that you have made no claim for illness or injury against (nor are you aware of any facts supporting any claim against) the Company under which the Company could be liable for medical expenses incurred by you before or after the execution of this Agreement. Further, you are aware of no medical expenses paid by Medicare and for which the Company is or could be liable now or in the future. You represent and agree that, to the best of your knowledge, no liens exist from any governmental entities, including those for Medicare conditional payments. You will indemnify, defend, and hold the Company harmless from Medicare claims, liens, damages, conditional payments, and rights to payment, if any, including attorneys' fees, and you further agree to waive any and all private causes of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) et seq.

**13)    Entire Agreement**

Unless otherwise stated expressly herein, this Agreement contains the entire agreement between you and Wells Fargo. Any modification to the provisions in this Agreement must be in writing and be signed by both you and Wells Fargo, provided however, that the payment date described in this Agreement may not be accelerated for any reason. To the extent you are subject to any agreement containing confidentiality, non-solicitation or non-competition covenants for the benefit of the Company (collectively "restrictive covenants"), and such restrictive covenants shall

operate concurrent with and in addition to any and all similar covenants made by you in this Agreement.

## 14) Compliance with Internal Revenue Code Section 409A

This Agreement is intended to comply with Section 409A of the Internal Revenue Code (the "Code"), or an exemption. Severance benefits under the Agreement are intended to be exempt from Section 409A of the Code under the "short-term deferral" exception, to the maximum extent applicable, and then under the "separation pay" exception, to the maximum extent applicable. All payments to be made upon a termination of employment under this Agreement may only be made upon a "separation from service" under Section 409A of the Code. All reimbursements and in-kind benefits provided under this Agreement shall be made or provided in accordance with the requirements of Section 409A of the Code.

## 15) Responsibility for Tax Obligations

You understand and agree that you are solely responsible for your share of all tax obligations, including all reporting and payment obligations that may arise as a consequence of this Agreement and payment of the separation payment. You agree to indemnify and hold the Company harmless from any tax liability or penalties that may arise from this payment. You further acknowledge that neither the Company nor any of its respresentatives or attorneys has made any promise, representation or warranty, express or implied, regarding the tax consequences of any consideration paid to you pursuant to this Agreement. You further acknowledge that the Company has no obligation to indemnify or defend you in any tax proceedings or from any tax consequences that could result from payments made in accordance with this Agreement.

## 16) Governing Law

New York law shall govern the validity and interpretation of this Agreement. The Parties stipulate that jurisdiction shall be exclusively in the State of New York for any action involving the validity, interpretation, or enforcement of this Agreement, for damages, or for any other relief brought under this Agreement.

## 17) No Interference with Rights

You understand and agree that nothing contained in this Agreement is intended to or will prevent you from filing a charge or complaint with, reporting possible violations of any law or regulation, making disclosures to, and/or participating in any investigation or proceeding conducted by, the SEC, FINRA, the NLRB, the EEOC, or any self-regulatory organization or governmental authority charged with the enforcement of any laws.

## 18) Enforcement

With the exception of any challenges under the OWBPA, if you violate any portion of this Agreement or later challenge the validity of the terms of this Agreement, Wells Fargo will be entitled to pursue its legal and equitable remedies, including without limitation the right to

withhold payment of any unpaid amounts due hereunder, to recover damages and to seek injunctive relief.

## 19)   Severability

If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions shall remain in full force and effect and the invalid or unenforceable provision shall be modified only to the extent necessary to render that provision valid and enforceable to the fullest extent permitted by law.  If the invalid or unenforceable provision cannot be modified, that provision shall be severed from the Agreement and all other provisions shall remain valid and enforceable.

## 20)   Successor in Interest

This Agreement shall be binding upon the Parties hereto and upon their heirs, administrators, representatives, executors, successors, and shall inure to the benefit of said Parties and each of them and their heirs, administrators or representatives, executors, and successors.

## 21)   Time For Review

You state that prior to signing this Agreement, you have been given sufficient time to review it with legal counsel, should you elect to do so.

## 22)   Signatures and Photocopies

This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original.  Photographic copies of any such counterparts may be used in lieu of the originals for any purpose.


Date: _____          Marcia Koutellos


                               Wells Fargo Bank, N.A.

Date: _____

                               By: _____
                               Title: _____

# MARCIA KOUTELLOS
Wells Fargo Compliance
150 East 42nd Street, New York, NY
Office: 1917.260.12.18.| Mobile: 1646.577.5600

July 6, 2018

PRIVATE AND CONFIDENTIAL

**Ms. Hope A. Hardison**
Senior EVP Chief Administrator Office
Wells Fargo Human Resources
420 Montgomery St, 12 fl
SAN FRANCISCO, CA 94104-1207 – USA

**Mr. Stephen Thompson**
Employee Relations Sr. Consultant - *Allegations & Dispute team*
Wells Fargo Human Resources
550 S 4TH ST, Floor 11th
MINNEAPOLIS, MN 55415-1529 - USA

Re:  Marcia Koutellos AMENDED Complaint of Discrimination, Harassment and Retaliation at Wells Fargo Company

**NOTE:** [Amended sections included in the original complaint are listed in brackets "[  ]" and  comprise of supporting documentation and detailed information of harassment, retaliation and discriminatory actions against me by Cindy Boorman and Nancy Coles, which was  described in the original complaint submitted to Wells Fargo Head of Human Resources on May 25, 2018.

_____

[**COMPLAINT UPDATE:**

[On May 29, 2018, I submitted a summarized complaint of harassment, retaliation, discrimination, violation o
Wells Fargo employment policies and State Labor Laws and Federal Employment Laws  against Cindy Boorman an
Nancy Coles to Wells Fargo Head of Human Resources, Hope Hardison and CEO, Tim Sloan - *Appendix Exhibit 0]*

[On May 30, 2018, Mina Gill from Conduct Management Office at Wells Fargo reached out to me via email
let me know that my original complaint previously sent to Wells Fargo Head of Human Resources and CEO on w
escalated to Conduct Management Office - *Appendix Exhibit 32]*

**On June 7th, during an initial call with Stephen Thompson (Employee Relations Sr. Consultant at W**
**Fargo Human Resources) we agreed that I was going to amend my original complaint and provide suppor**
documentation for Wells Fargo Human Resources investigation. As of July 6th, this amended complaint (tot
49 pages) and supporting documentation has been submitted to Steve Thompson for Wells Fargo Human Resou
investigation]

Stephen Thompson is an Employee Relations Sr. Consultant from Allegations & Dispute team at Wells Fargo was assigned on May 31st to investigate my complaint of harassment, retaliation, discrimination, including violations of Wells Fargo policies by Cindy Boorman and Nancy Coles- *Appendix Exhibit 33]*,

---

[On May 31, 2018, Stephen Thompson (Employee Relations Sr. Consultant) from Allegations & Dispute team at Wells Fargo was assigned to investigate my complaint of harassment, retaliation, discrimination, including violations of Wells Fargo policies by Cindy Boorman and Nancy Coles- *Appendix Exhibit 33]*. As a result, Stephen set up an initial investigation call for June 7, 2018. Stephen Thompson is located in Minneapolis. During the call, we agreed that I was going to amend my original complaint and provide supporting documentation for Wells Fargo Human Resources investigation. As of July 6th, this amended complaint (total of 49 pages) and supporting documentation was submitted to Steve Thompson for Wells Fargo Human Resources investigation]

[On June 6, 2018, Nancy Coles created a new job description (*Appendix Exhibits 13*) and title for me, which was not related with my current title and position - **BCBS239 Governance Consultant/Compliance Consultant 4** (*Appendix Exhibits 10*) - approved by Human Resources at the start of my employment at Wells Fargo August 2016, time when I reported directly to Bob Bing, Compliance Manager 6, Head of Governance and Reporting.

1. The new job description - *Compliance Consultant 4 – Reporting and CAO Team Compliance Consultant* - that Nancy Coles and Cindy Boorman are imposing on me is a demotion to my current role and responsibilities - **BCBS 239 Governance Consultant - Compliance Consultant** (see attachment) and the new job requirements has nothing to do with my previous responsibilities related to Compliance BCBS 239 (Appendix 25A).

2. Although, on April 13, 2018 four people (including myself) from Bob Bing's team were transferred to Cindy Boorman's Compliance Operations group, I am the only person that previous job responsibilities were taken away and the only person who has been enforced a new job description.

3. After the transfer to Cindy's group, those individuals (Rita Bagchi, Sam Salinas and Michelle Green) kept the same job title and job description working for in the Compliance Operations, managed by Cindy Boorman. I am the only person that had previous responsibilities related to Compliance BCBS 239 taken away from me and I am the only person that had a job description imposed on me.

4. On June 28, 2018, Cindy Boorman confirmed that my title in People Soft is "Compliance Consultant 4, (Appendix Exhibit 25B) however she couldn't explain why I am the only person in the Compliance Operations group that has been forced to accept a new job description and title. Why I am NOT treated the same as other employees at Wells Fargo that works for Cindy Boorman in the Compliance Operation group (Appendix Exhibit 25C) at Wells Fargo]

[On June 7, 2018, I had my first call with Mr. Stephen Thompson ("Mr. Thompson"), Wells Fargo Employ Relations Consultant, to review my complaint of severe discrimination, harassment and retaliation, including oth employment issues against Ms. Boorman and Ms. Coles.

[Eventually, after my call with Mr. Thompson, Nancy Coles and Cindy Boorman harassment and retalia actions against me got worse creating a hostile work environment, which resulted on my decision to provide my e

2

rebuttal to all harassment, retaliatory and discriminatory actions described on previous emails received from Ms. Boorman and Ms. Coles and stop their harassment, discrimination and retaliation against me. *Appendix Exhibits 14 to 27*].

[Most recent, on June 26th, Nancy Coles and Cindy Boorman are forcing me to do responsibilities of Project Manager Britanny Moore (Business Initiatives Consultant), who recently left for maternity leave. They have other Project Managers/ Business Initiatives Consultant that can do Brittany's job, but instead they are retaliating against me and not giving/assigning work related to previous reporting activities that I was working on with Mr. Bing's team (my former manager), which were transferred to Cindy Boorman's team. Prior to Mr. Bing's resignation, I was working on many reporting strategies and Compliance implementation milestones with Mr. Bing, including other responsibilities related to BCBS 239 / G&O Framework. All that work was taken away from me and instead I am forced to do the work of Project Manager? ]

[This is unacceptable, because the other three individuals from Bob's team (Rita Bagchi, Sam Salinas and Michelle Green) that were also transferred to Cindy's group in the Compliance Operations are NOT treated the same as I have been mistreated by Ms. Coles and Ms. Boorman. After the transfer to Cindy's group, those individuals kept the same job tile and job description working for Cindy Boorman. I am the only person that had previous responsibilities related to Compliance BCBS 239 taken away from me and I am the only person that had a job description imposed on me.]

[On June 13, 2018, after sending my rebuttal emails (total of 14 emails with attachments - *Appendix Exhibits 14 to 27*) to Ms.Coles and Ms. Boorman, I also forwarded an email to Ms. Boorman's manager, Mr. Mike Roemer ("Mr. Roemer"), Wells Fargo Chief Compliance Officer – *Appendix Exhibit 24A*, to let him know that the main purpose of my email was to escalate the unlawful and severe harassment, discrimination and retaliatory actions that Ms. Boorman and Ms. Coles have taken against me at Wells Fargo for the past couple months, including their violation of Wells Fargo employment policies and State & Federal Laws, which resulted on hostile work environment at Wells Fargo. In addition, I mentioned to Mr. Roemer that I had already filed my formal complaint of retaliation, harassment and discrimination against Ms. Boorman and Ms. Coles with Wells Fargo Head of Human Resources for investigation. As a result, couple hours later, when Mr. Roemer replied to my email he also CC Ms. Addy Gould from Wells Fargo Human Resources team: "Thank you for sharing your concerns with me. It is important that these matters be checked into. Our Employee Relations team is best-equipped to do this and someone from that group will be following up with you. As you know Wells Fargo takes these concerns very seriously as do I.

[Since Mr. Roemer copied Ms. Addy Gould ("Ms Gould"), Wells Fargo Human Resources Professional Assignment Manager on his email response (*Appendix Exhibit 24B*) to me and she didn't reach out to me, on June 28th I followed up with Ms. Gould via email. Ms. Gould replied to me: "The individual working with your managers is not an Employee Relations Manager. Her name is Cynthia Menaker and she is an Employee Relations Consultant who works on the team that supports managers. Steve Thompson is an ER Senior Consultant who works on the team that supports team members and their concerns."]. Therefore, on June 28th I was informed that Nancy Coles and Cindy Boorman were previously working with Wells Fargo Human Resources to defend themselves against my allegations.

[As a result Ms. Boorman and Ms. Coles continued their retaliation, harassment and hostile environment against me. By example, they forced me to do the job of Project Manager, instead of work related to Compliance implementation, reporting strategy and BCBS 239 that I was previous working on for Mr. Bing and at that time of resignation it was transferred to Cindy Boorman's group in the Compliance Operations.]

3

[On June 13th, Nancy and I had a status call (1:1 meeting status) scheduled on that day, but after she received my rebuttal emails  (14 rebuttal emails) she canceled our meeting stating that she had other priorities and was no longer available for our call.  -  On June 21st, when I asked her for feedback about my rebuttal emails, Ms. Coles told me that she working with Wells Fargo Human Resources and was instructed by Human Resources not to discuss the information with me.]

## EMAIL REBUTTALS SENT TO NANCY COLES, CINDY BOORMAN AND MIKE ROEMER showing harassment, retaliation, discrimination and violations of Wells Fargo policies and Federal State employment laws.

[Appendix Exhibit 14 - Nancy Coles email (Monday, May 7, 2018 10:15 PM) to Marcia Koutellos
Subject: RE: Business Group Reporting SME Working Group (Follow Up)
"I want to ensure that we're on the same page regarding your work hours and time out of the office.  Your below email indicates that you had scheduled a doctor's appointment during your lunch hour.  As we discussed before, if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business.  You may work 8:00 – 5:00 or 7:00 – 4:00 and take a lunch hour.
If you are ill or have personal business to attend to, as an exempt team member, you must take PTO in a half-day or full-day increment (our group does not provide the option of working from home when sick).  Our group has been generous to allow us to take an hour or two here and there for other personal appointments provided that the time away from the office is timely made up.  Before you can take any further time away for other personal appointments, you need to make up in full the hours that were missed last week and the week before last or, alternatively, take paid time off to account for that time."]

⇨ MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:40 PM) –

[Hi  Nancy,
As per your email below, on May 7th when you wrote in your email On May 7th when you wrote in your email (see attachment) "I want to ensure that we're on the same page regarding your work hours and time out of the office.  Your below email indicates that you had scheduled a doctor's appointment during your lunch hour.  As we discussed before, if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business.
You may work 8:00 – 5:00 or 7:00 – 4:00 and take a lunch hour"……. "Our group has been generous to allow us to take an hour or two here and there for personal appointments provided that the time away from the office is timely made up".

Those group rules" that you have described on your May 7th email, which made reference to my working hours and meals period at Wells Fargo, it shows that they are only applicable to me and not to you and other team members that works in Cindy's group (our manager) at Wells Fargo.

You are asking to start my work day at 8AM, but you and others in Cindy's group (Compliance Operations at Wells Fargo) are not doing the same.
If I work from 9AM to 5PM, you are not allowing me to take lunch or short breaks, and again you and other team members that works for Cindy are not treated the same.
Why are you treating me different than other individuals that work in our group and also report to Cindy Boorman
What have I done to you?

4

Many times when I checked yours and other team members availability using "Wells Fargo Skype for Business" it shows that you were more than"60 minutes inactive" and other times that you don't log the computer until 9AM. Therefore, why you and other team members can spent time away from your desk and I am the only one being targeted and heavily criticized by both you and Cindy when it relates to time spent out of Wells Fargo desk.

In fact, few weeks ago when I told you via Wells Fargo IM (see attachment) that I had to step away to go to the pharmacy and later to pick up some lunch, you didn't reply to my IM, but instead you told me "verbally" that I had to use the previous time/hours that I have made up for my previous doctor's appointment for the time I spent to pick up lunch and go to the pharmacy. No other team members or individuals that work for Cindy in her group at Wells Fargo has encountered such misconduct.



Conversation with
Coles, Nancy...

Overall, you and others individuals that works for Cindy Boorman in the Compliance Operations at Wells Fargo are allowed to take time off from work to go to their doctor's appointment or to be away from their desk for an extensive period of time, take lunch, short breaks, including starting work at 9AM.
When it comes to me, using Wells Fargo Skype or Business",  you are not allowing me take short breaks, lunch (if I work 9AM – 5PM), always reprimanding me about the time I spent out of my Wells Fargo desk, among other things.
Why are you treating me different than other individuals that works for Cindy Boorman at Wells Fargo?

**Please be advised that your "group rules that you have created for me, which makes restrictions to my working hours and meals period at Wells Fargo" (May 7th email) are in violation of New York State Labor Standards and Wells Fargo Meals policies for the State of New York.**
I work for Wells Fargo and conform Wells Fargo policies.

When I first joined Wells Fargo reporting directly to Bob Bing (Compliance Manager 5) for over 18 months, Bob and I never had issues with my working hours, meal periods or violation of Wells Fargo policies. I fact, I received two outstanding Wells Fargo YE Performance Appraisals from Bob Bing.
On April 13th, as a result of my previous manager (Bob Bing / Compliance Manager 5) resignation, four people from Bob's team were transferred to Cindy Boorman's Compliance Operations group, but I am the only person that has been mistreated by you and Cindy. The other three individuals from Bob's team that were also transferred to Cindy's group in the Compliance Operations are NOT treated the same as I have been treated by you and Cindy.
At Wells Fargo you hold a Compliance Consultant job title, which is the same title I have, but you have a degree in Law, which I don't have.

I still don't understand your severe misconduct and mistreatment against me, which are very different than your conduct with other team members that works in our group, Cindy Boorman's group at Wells Fargo.]

[Appendix Exhibit 15 - Nancy Coles email (Monday, June 18, 2018 12:00AM) to Marcia Koutellos
Subject: Out of the Office

5

"Oops – I forwarded you the wrong one.  I'll be out of the office on 6/18.  Please decline/delete that one and I'll try again".

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:40 PM) –**

Hi Nancy-
How did you use my Wells Fargo Time Tracker account to put an out of the office time for me on June 18th, as I did NOT created a PTO in the Time Tracker for June 18th  and I am NOT planning to take June 18th day off?
To my knowledge Wells Fargo managers are assigned to approve or decline employee's time out of the office in the Time Tracker  and NOT create an out of the office /PTO time without employee's consent for an employee that is not planning to take any time off from work.
Can you please advise how did you do that?
Your Wells Fargo Corporate title is Compliance Consultant and your group title (reporting directly to Cindy Boorman) is Chief Administrative Officer (CAO). As Cindy Boorman has assigned you as my manager, I believe it doesn't give you the rights <u>to create a day off for me in Time Tracker without my knowledge and consent.</u>

Do you take the same approach for other individuals that works in Cindy Boorman's group?
I am very concern about your actions and conduct against me, as you and Cindy Boorman are treating me different than other individuals that works for Cindy Boorman.]

**[Appendix Exhibit 16 - <u>Nancy Coles</u> email (Thursday, May 24, 2018 10:50 AM) to Marcia Koutellos**
**Subject:** RE: OR&C L2 Report Documentation Initiative – Phase 2 [SHRP BAU Tracking Notable Items Summary Report] - Escalation (Follow Up)
"Marcia -- your follow-up email (attached) was a better response than the below email but, to explain, this was a critical issue thought that you would have reached out to Diana because (1) you conveyed that, to you, I would have and (2) after your second email on the topic, Cindy also responded to you and instructed you to reach out to call Diana and, if possible, to offer any needed assistance. An improvement on the email would have been to state that you were following up on my original instructions to give Diana a few more days and to also explain why you had decided not to follow up on Cindy's instructions to reach out to Diana.

It is up to you but, based on Cindy's email from yesterday, I would highly recommend following up with Diana, by phone (when she looks to be available), sometime today.  That way, in case Cindy reaches out on this, you will be prepared to give an update on the topic and it won't appear to her as if you've disregarded her instructions.  Having a ready answer should she request a status update is going to be the result that will put you in the best position.

You have to understand that, from my perspective, when I receive an email like the below, expressing confusion with my request that you provide an update, it communicates to me that, after the emails on this topic yesterday, you are not making a good faith effort to understand the situation, regardless of whether this is the case."

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:39 PM) –**

Hi Nancy-
Please see my responses to your previous email below highlighted in blue [MK]

Marcia – your follow-up email (attached) was a better response than the below email but, to explain, I would have thought that you would have reached out to Diana because (1) you conveyed that, to you, this was a critical issue and (2) after your second email on the topic, Cindy also responded to you and instructed you to reach out to call Diana and, if possible, to offer any needed assistance. An improvement on the email would have been to state that you were following up on my original instructions to give Diana a few more days and to also explain why you had decided not to follow up on Cindy's instructions to reach out to Diana.

(1) [MK: My "follow-up email" was conforming to your previous instructions.]
[To your point, "this was a critical issue". I reached out to Diana and Aaron via email on 5/7 (see email attached) to confirm that based on Mike Osmera's instructions (during the kick-off call that you and I attended), Mike mentioned that Aaron and Diana were going to be responsible for the L2 report documentation initiative for SHRP BAU Tracking Notable Items Summary report and therefore as described on my email of 5/7, I was seeking their confirmation of proposed timelines and acknowledgement of my email. Seeking acknowledgment and confirmation from Report Preparers are standard process for all groups assigned to the Operational Risk initiative. Furthermore, since I didn't receive any email response from Aaron and Diana by 5/21, on 5/22, I reached out to them via email because two activities that they were supposed to be completed by 5/21 were already past due. The basis of program management, when a task is past due it reflect "critical status". ]

(2) [After my second email on the topic to Aaron and Diana on 5/22, I also included your name on the email distribution and at that time you didn't provide any instructions or support. On 5/23, when I escalated critical issues to Cindy via email and also included your name on the same email, you provided a negative feedback about my actions in getting response from Aaron and Diana and didn't provide any support. Per Cindy's email response on 5/23 (see attachment) "we are all on the same team", so could you please provide a bit support to me on activities that you have assigned to me involving people that you worked with, instead of writing emails with negative feedback and criticism about my actions and approach. ]
    - [Note: The reason that I have escalated to Cindy via email on 5/23 was due to the fact that I wasn't getting any response or instructions from you, as I had included your name on all my emails to Aaron and Diana. In the past, you told me that you work with Aaron and Diana, so you know them longer than I do and they are also part of Cindy's team. As you know, I only joined the team about 4 weeks ago (April 13th) and Aaron and Diana were not familiar with me or my project requests. My email records shows that you only provided your response to my email on this subject at time that I had already escalated to Cindy via email. Off course, I didn't tell Cindy about that. I have been very professional and taken hit for things that are not just my responsibility. ]

(3) [In regards to Cindy's email, I have conformed to her instructions for all 4 paragraphs that was outlined in her email. I have not ignored Cindy's instructions or violated policies or committed any insubordination.]
    - [I am confused with your statement "An improvement on the email would have been to state that you were following up on my original instructions". – Well, it shows that you didn't see the very first paragraph of my follow up email to Aaron and Diana on 5/22 (your name was added), which shows that I wrote "As a follow up to my previous email, please provide status on the first draft of report documentation template for "SHRP BAU Tracking Notable Items Summary Report"]
    Your statement implies that I didn't do what you have suggested, which is not the case. In fact, your ema suggestion was only provided yesterday (5/23), which was after the time I had already sent a follow up ema to Aaron and Diana on 5/22 and also after the time I had escalated to Cindy Boorman on 5/23.

7

[Yesterday (5/23) your provided the following email instructions (a)"Marcia – please give Diana another day or two to respond as the final due date is still two weeks away " and (b) "If you feel you can't wait another few days for a response, please just give her a call". As a result, today (5/24), I reached out to Diana Himes via IM (see attachment) to follow up on my previous email requests of 5/7 and 5/22. I have followed up on your previous instructions (a) and (b) and conformed to all of them. Why you making affirmations that I didn't do what you told me to do?]

(4) Furthermore, your statement "explain why you had decided not to follow up on Cindy's instructions to reach out to Diana" is not true, because Cindy's email instructions of 5/23 (yesterday) – third paragraph shows" Please just pick up the phone and ask when they can get it done" and I have done it. Today, 5/24 (less than 24 hours after Cindy's email, I reached out to Diana via IM and kindly ask for Diana to provide an update on the task assigned to them. I have always conformed to Cindy's instructions. Why have you made affirmation that "I had decided not to follow up on Cindy's instructions? It's a very strong statement and very disheartening.

Overall, all those issues could have been avoided if you had provided me with your management support.

It is up to you but, based on Cindy's email from yesterday, I would highly recommend following up with Diana, by phone (when she looks to be available), sometime today. That way, in case Cindy reaches out on this, you will be prepared to give an update on the topic and it won't appear to her as if you've disregarded her instructions. Having a ready answer should she request a status update is going to be the result that will put you in the best position.

[MK: I have conformed with all your and Cindy's instructions]

(5) Yesterday (5/23) your provided the following email instructions (a)"Marcia – please give Diana another day or two to respond as the final due date is still two weeks away " and (b) "If you feel you can't wait another few days for a response, please just give her a call". As a result, today (5/24), I reached out to Diana Himes via IM (see attachment) to follow up on my previous email requests of 5/7 and 5/22. I have followed up on your previous instructions (a) and (b) and conformed with all of them

(6) Again, I have not disregarded Cindy's instructions – Cindy provided email instruction on 5/23 at 1:12pm and today 5/24 at 11am (less than 24hrs) , I reached out to Diana Himes via IM (see attachment) to follow up on my previous email requests of 5/7 and 5/22 and obtained status.

You have to understand that, from my perspective, when I receive an email like the below, expressing confusion with my request that you provide an update, it communicates to me that, after the emails on this topic yesterday, you are not making a good faith effort to understand the situation, regardless of whether this is the case.

[MK: What I don't understand is why you didn't provide any support to me, knowing that I wasn't getting any response from Aaron and Diana. After all, your name was included on my emails to Aaron/ Diana and you have worked with them for a while. I only joined Cindy's team for the past 4 weeks.

(1) Per Cindy's email "We are all on the same team", but you didn't provide any help or support to me.

(2) Your affirmation that "I am not making good faith effort to understand the situation, regardless of whether this the case" is a great concern to me.

(3) Please note, that the reason I have escalated critical issue to Cindy via email on 5/23 was due to the fact that I wasn't getting any response or instructions from you, as I had included your name on all my emails to Aaron and Diana and you have worked with them longer than me. I understand that perhaps Aaron and Diana were not familiar with my project request, because they don't know me, but you are my manager and you know them.

(4) I kept you posted via email and you were aware of those deadlines, because you and I presented them during the OR&C Report initiative. You were also aware of those deadlines, because you and I presented them during the kick-off meeting of 5/7. Based on my email records, it shows that you only provided your response to my email on this subject after the time that I had already escalated to Cindy on 5/23. Off course, I didn't tell Cindy about that. I have been very professional and taken hit for things/activities that are not only my responsibility.

[**Appendix Exhibit 17** – <u>Cindy Boorman</u> email (Wed 6/13/2018 12:40 PM) to Marcia Koutellos
**Subject:** OR&C L2 Report Documentation Initiative – Phase 2 [SHRP BAU Tracking Notable Items Summary Report] - Escalation (Follow Up)

"I am confused by these emails.

We are all on the same team. I just saw your other email and things are being considered past due? This seems like an over engineered process for 2 pages of a report that will take you no longer than 1 hour to review, provide your feedback and Nancy/Mike/Ronda to finalize. Why you need 2 weeks to review a 2 page document?

You provided an extension for Jamal independently and CC'd Dianna but yet you are escalating to myself and Nancy on something that Dianna hasn't responded back to you on. You have just sent the email to Dianna that Jamal can have until May 29th, what do you think she will think?

Please just pick up the phone and ask when they can get it done. Therefore, for next time please escalate closer to the due date to the Ops Risk team and reach out prior to that.

I realize that this may be how Bob wanted this structured but this is now your team and we help and partner with each other. If there anything you could help them with as well then I suggest you offer to assist. Normally if they are not giving you the information they are swamped with something else and since they have 2 weeks to complete this and you should find out why they haven't responded….most likely busy working on month-end and committee reporting right now".

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:40 PM)** –

Cindy / Nancy
Please see my responses to your previous email below highlighted in blue [MK]

I am confused by these emails.
_MK:_ (1) Perhaps the confusion is that I have escalated issue related to <u>OR&C L2 Report Documentation initiativ</u> which requires documentation of "**SHRP BAU Tracking Notable Items Summary Report**" (assigned to Aaron/Dian and your email (second paragraph) is making reference to the other <u>OR&C L3 Report Documentation initiative th</u> requires documentation of "**Compliance Owned Issues Report**" (assigned to Jamal)

9

We are all on the same team. I just saw your other email and things are being considered past due? This seems like an over engineered process for 2 pages of a report that will take you no longer than 1 hour to review, provide your feedback and Nancy/Mike/Ronda to finalize. Why you need 2 weeks to review a 2 page document?

*[MK: (1) Agreed. We are on the same team, but for some reason I don't get any updates or status from respective individuals assigned as Report Preparer that are part of your team.]*

*[MK: (2) This is not an "over engineered process", instead is a high level project plan that was created to allow all individuals (including myself) enough time to review report documentation, make necessary changes and obtain respective approvals. We are not referring to a single report. Based on kick-off presentation for L2 and L3 report documentation, I have total of 7 reports that needs to follow the activities and timelines proposed in the L2 and L3 high level project plans. Please find attached for your review L2 and L3 kick-off presentations. During report documentation phase I utilized the same project plan approach and didn't have any issues. However, the fact that I didn't receive any email updates from Report Preparer since May 7th, (I have CC Nancy on all email communications) it was the main reason that I have escalated those issues via email to you and Nancy. Most important, I have to ensure that these outstanding issues won't impact my 2018 work performance. After Bob's (my manager from 09/16 to 4/18) resignation on April 2nd, and the fact that his team (including myself) was moved to your group and I want to ensure that I will always provide 110% on projects and activities that will be assigned to me by you and Nancy.]*

*[MK: (3) The high level project plan comprise of a total of 4 ½ weeks, which includes milestones for respective activities. Those milestones were created with the goal to allow Report Preparer enough time to work on other priorities. It's a very basic project plan. Each report has a different information and sometimes a template of 2 pages can become 5 or more pages. The goal is to ensure that we conform to Operational Risk team report documentation guidelines created for this initiative. If you tell me that less than 2 weeks would be sufficient to populate a report template, review contents and obtain respective approvals, I would ensure to conform to your instructions. However, it would not be applicable to this case, because Report Preparer has not provided response or confirmation since May 7th (more than 2 ½ weeks to this date).]*

You provided an extension for Jamal independently and CC'd Dianna but yet you are escalating to myself and Nancy on something that Dianna hasn't responded back to you on. You have just sent the email to Dianna that Jamal can have until May 29th, what do you think she will think?

*[MK: (1) To my knowledge and per Jamal's email, he is working on the L3 Report Documentation template for "Compliance Owned Issues Report" and I sent an email confirming an extension to May 29th.*

*[MK: (2) My escalation is not related to Jamal's report, but instead to the email sent to Aaron and Diana for completion of L2 Report Documentation template that for "SHRP BAU Tracking Notable Items Summary Report". To this date, I don't know who is working on the L2 report documentation, because I didn't receive any response.]*

Please just pick up the phone and ask when they can get it done. Therefore, for next time please escalate closer to the due date to the Ops Risk team and reach out prior to that.

*[MK: I will conform to your instructions.]*

I realize that this may be how Bob wanted this structured but this is now your team and we help and partner with each other. If there anything you could help them with as well then I suggest you offer to assist. Normally if they are no giving you the information they are swamped with something else and since they have 2 weeks to complete this and you should find out why they haven't responded....most likely busy working on month-end and committee reporting right now.

[MK: (1) I was always a team player and I am still a team player who has always provided supports to my peers and senior managers, which in fact it was reflected on my Wells Fargo Performance Appraisals done by Bob and approved by Sara Satten.]

[MK: (2) I agree with you that many times people are busy with other priorities, but it not an excuse for people not to provide status or not to respond to my emails. Responsibility and accountability for activities assigned to respective individual is key. As a team player, if my peers need help I am willing to work with them, as I did with Jamal.]

Please don't take me wrong. I want to build trust and good relationship with you and your team.

This email response was supposed to be short, but since the time Nancy Coles sent out her email on May 7th (see attachment) and on May 22nd when you and I meet in person in NYC office for the first time and you made remarks about my time spent on doctors or out of my Wells Fargo desk.

During the subject meeting (in person on May 22nd), among other things 1) you told me a person that sits on the same floor where I have my Wells Fargo desk in NYC told you that I have spent extensive time out of my desk, which was not true; 2)  You also mentioned that you were monitoring my time out of my desk using "Wells Fargo Skype for Business" and you saw many times my availability as "Inactive" or offline for XYZ minutes" and that I should stay at my desk at all times; 3)  In addition, you told me that my previous manager (Bob Bing) told you about my previous medical situation and that my ongoing doctor's visit/ follow up was interfering with my job performance. In addition, you also made reference to Nancy Coles's email of May 7th (see attachment). I was very concerned about your affirmations.

When I first joined Wells Fargo reporting directly to Bob Bing (Compliance Manager 5) for over 18 months, Bob and I never had issues with my working hours, doctor's visits, meal periods or violation of Wells Fargo policies. I fact, I received two outstanding Wells Fargo YE Performance Appraisals from Bob Bing.

On April 13th, as a result of my previous manager (Bob Bing / Compliance Manager 5) resignation, four people from Bob's team were transferred to your group in Compliance Operations, but I am the only person that has been mistreated by you and Nancy. The other three individuals from Bob's team that were also transferred to Cindy's group in the Compliance Operations are NOT treated the same as I have been treated by you and Cindy.

I still don't understand your severe misconduct and mistreatment against me, which are very different than your conduct with other team members that works in your Compliance Operations group at Wells Fargo.

Regards – Marcia Koutellos]


[Appendix Exhibit 18 - <u>Nancy Coles</u> email (Monday, June 11, 2018 9:21 AM) to Marcia Koutellos
Subject: Standard schedule (Follow Up)
"Hi Marcia – good morning – hope you had a nice weekend.  Just a reminder that while I don't need to know when you arrive/leave each day, please let me know if you'll be arriving significantly later than your standard schedule starting time of 8:00.  I understand there are extenuating circumstances some days and that's fine – just give me a heads up.

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:44 PM)** –

Hi Nancy-

When you are referring to **"my standard schedule starting time of 8AM"**, is that applicable only to me or is it applicable to you and other individuals that works in Cindy Boorman's group at Wells Fargo?

On May 7th when you wrote in your email (see attachment) *"I want to ensure that we're on the same page regarding your work hours and time out of the office. Your below email indicates that you had scheduled a doctor's appointment during your lunch hour.* **As we discussed before, if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business.** *You may work 8:00 – 5:00 or 7:00 – 4:00 and take a lunch hour"....... "Our group has been generous to allow us to take an hour or two here and there for personal appointments provided that the time away from the office is timely made up".*



Business Group
Reporting SME ...

It seems "those group rules" that you have described on your May 7th email, which made reference to my working hours and meals period at Wells Fargo, it shows that they are only applicable to me and not to you and other team members that works in Cindy's group (our manager) at Wells Fargo.

You are asking to start my work day at 8AM, but you and others in Cindy's group are not doing the same.
If I work from 9AM to 5PM, you are not allowing me to take lunch or short breaks, and again you and other team members that works for Cindy are not treated the same.
Why are you treating me different than other individuals?
What have I done to you?

Please be advised that your actions against me, which you wrote on May 7th email are in violation of New York State Labor Standards and Wells Fargo Meals policies for the State of New York. I work for Wells Fargo and conform to Wells Fargo policies.

You and Cindy are using "Wells Fargo Skype for Business" to monitor how much time I spent out of my Wells Fargo desk, monitoring my time spent for lunch, bathroom or coffee breaks and that is wrong, because you are not taking the same actions/conduct against other individuals in our group that works for Cindy.
As you know, if a team member is not typing in the keyboard using the computer, their Wells Fargo Skype for Business it will show "inactive" or "offline XX minutes".

Many times when I checked yours and other team members availability using "Wells Fargo Skype for Business" it shows that you were more than"60 minutes inactive" and other times that you don't log the computer until 9AM. Therefore, why you and other team members can spent time away from your desk and I am the only one being targeted and heavily criticized by both you and Cindy when it relates to time spent out of Wells Fargo desk.

In fact, few weeks ago when I told you via Wells Fargo IM (see attachment) that I had to step away to go to the pharmacy and later to pick up some lunch, you didn't reply to my IM, but instead you told me "verbally" that I had t use the previous time/hours that I have made up for my previous doctor's appointment for the time I spent u

12

lunch and go to the pharmacy. No other team members or individuals that work for Cindy in her group at Wells Fargo has encountered such misconduct. What have I done to you to deserve this misconduct at Wells Fargo?



Conversation with
Coles, Nancy...

When I first joined Wells Fargo reporting directly to Bob Bing (Compliance Manager 5) for over 18 months, Bob and I never had issues with my working hours, meal periods or violation of Wells Fargo policies. I fact, I received two outstanding Wells Fargo YE Performance Appraisals from Bob Bing.
On April 13th, as a result of my previous manager (Bob Bing / Compliance Manager 5) resignation, four people from Bob's team were transferred to Cindy Boorman's Compliance Operations group and as a result, Cindy Boorman assigned me to work for you. At Wells Fargo you hold a Compliance Consultant job title, which is the same title I have. You have a degree in Law, which I don't have.

In regards to daily email notification about time that I arrive/leave the office, about a month ago when you told me that you didn't trust me with time I spent in the New York office, you agreed for me to email you when I arrive and leave the office every day, in order to build your trust on me. You never said to me that you didn't want me to keep you posted on the time that I arrive and leave the office every day. Hence, I have sent out my daily emails to you to prove it when I arrive and leave the office.

For some reason, on June 11th you have stated on your email below that you don't need to know when I arrive /leave each day. What has changed?
Since you have changed your mind, I will conform to your instructions and stop sending email when I arrive/ leave the office.

I still don't understand your severe misconduct and mistreatment against me. You misconduct against me is NOT the same conduct you have with other team members that works for you and also works for Cindy Boorman at Wells Fargo?
What have I done to you and Cindy Boorman to deserve this sever mistreatment?]

[**Appendix Exhibit 19** - **Nancy Coles** email (**Thursday, June 7, 2018 2:28 PM**) to Marcia Koutellos
**Subject:** RE: Reporting Activities- Review/ Analysis of Consolidated Compliance Reports Inventory (slides 8 & 9)
[MK Status]
"Hi Marcia – just checking in to see how it's coming along with the listing of the monthly and quarterly business group report topics.".

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:37 PM)** –
Hi Nancy,
Based on your verbal feedback (during our 1:1 status meeting of June 8th), you have agreed with the approach that am taking for the analysis of 51 reports in scope Compliance reporting inventory that Cindy asked me to do for her.

13

Per Cindy's email of May 31ˢᵗ, *"if you have any questions feel free to find time on my calendar or ask Nancy too for direction"*, it shows that Cindy is also relying on your feedback.

Since you have agreed with my reporting analysis thus far, I will continue with the same approach and provide a final document for you review, prior to the final review with Cindy Boorman.

My approach is to avoid the ongoing negative comments/feedback from you and Cindy on work activities that both of you have assigned to me

**Appendix Exhibit 20 - Nancy Coles email (Friday, May 25, 2018 9:22 AM) to Marcia Koutellos**
**Subject:** RE: Training Complete_SHRP Access Request for Marcia Koutellos Requested [Follow Up] *As we discussed, the SHRP access ensures you have proper authority to access our reporting. I've asked that you review our reporting to familiarize yourself with it and let me know if you have any questions on it.*

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:38 PM) –**

Hi Nancy-
Based on your email of 5/8 (see attachment) – *"We are requiring that all users of our Ops reporting complete training for, and obtain access to, the four SHRP modules included on the chart below. We need to ensure that our team also has those same SHRP permissions"* – it demonstrated that completion and approvals of respective SHRP trainings (SHRP 4 modules) were mandatory and a requirement for all Users of Ops Reporting team to access Compliance Operations reporting.



SHRP Access
Needed

As you know, per my email of 5/17 (see attachment), I communicated to you that I had completed all (4) SHRP training prior to the deadline that you had stipulated for me, which was 5/18 (attached your email).
In addition, on the same day, I submitted an email to Jayna Eichholz (SHRP team) requesting for access and approvals to respective SHRP modules
I have confirmed with all your instructions and provided you with frequent updates on all activities that you have assigned to me, which were described on my email of 5/22(see attachment)



RE: SHRP Access          RE: 1:1 follow-up
Needed as of 5...          (Status as o...

As you have described on your previous email 5/25 (today) – *"the SHRP access ensures you have proper authority to access our reporting"* - , so why you wanted me to access Compliance Ops reporting without confirmation of my SHRP access and respective approvals from management? If I would have done that, it would be considered a violation of Compliance Operations team policies.
Furthermore, based on Jayna Eichholz email of 5/24 (see attachment), your name was included on her email distribution and you knew that all my (4) SHRP access requests were pending approval from you.



RE: Training
Complete_SHRP...

In fact, after I forwarded Jayna's email (yesterday) and asked you via email to provide your approval and status, this morning you provided your approval to respective SHRP access request. As a result I received confirmation via email from SHRP team that my access to respective SHP modules were approved by you. Therefore, now after getting your approvals, I am compliant with SHRP requirements to access respective modules and also compliant with Compliance Ops requirements to access reporting information, I will be happy to conform with your previous instructions to review Compliance Operations reporting (now that I have obtained all approvals) in order to familiarize myself with it.

Best regards,]

[Appendix Exhibit 21 - Nancy Coles email (Thursday, May 24, 2018 6:56 PM) to Marcia Koutellos

Subject: CRMC procedures (Follow Up)

"Marcia -- I am not at all offended, but I am frustrated that you did not reach out sooner for a copy of the referenced report (attached). It was my assumption that you already had a copy of the report as it is one of the Key Non-G&O Key Risk Reports that are included in your report inventory project (a copy is saved to your *SharePoint site here* as CRM report sample #21 and also available in the monthly CRMC materials). We discussed several times that this report was related to the non-G&O report inventory project (my email on 5/22, our discussion with Hollis yesterday where you sent him a copy of the related non-G&O report that Aaron had completed and walked him through it in the online meeting, and the section included in the desktop procedures that calls out the fact that this is a Key non-G&O Risk Report).

With regard to the timeline, I first asked for your review of the Procedures on 5/22 and requested a response by the morning of 5/23. That review wasn't completed. We discussed with Hollis yesterday and he said he would send out a revised version yesterday afternoon and, on that call, I asked for you to please complete the review of the procedures that afternoon once he sent the revised version over. That review wasn't completed either. My most recent request asked that you complete the review by 10:00 this morning to give a very definite due date since the review hadn't been completed per the prior two requests. I know this is a relatively short timeline for the review, but this is something we're trying to get over to Audit and sometimes we have tight deadlines. If, in the future, you foresee an issue with a deadline or impact to your other deliverables, please let me know so we can discuss. We have a lot of work, and I'm still trying to figure out what/how much of it I can move over to you.

I know that this may also relate to the compressed timeline but, on this task, I'm again looking for analysis. Rather than copying/pasting report requirements into the document, I'm looking for you to understand those report requirements and then, using your subject matter expertise, apply them. For example, instead of indicating there's a requirement for "review, approval, and distribution" of the report, I'm looking for you to read through the report and identify where we've already included that requirement (or note that we have not included that requirement) and, if what we've written is sufficient, then no need make a note of it. Or, if you identify that what what we've included in the respect is not sufficient, identify exactly what else we need to include and maybe suggest some draft wording if you are able to do so (I know the creation of the CRMC deck is a new process to you so you may not be able to suggest draft wording at this point). If you identify a typo, please just go ahead and fix it instead of pointing out there's a

15

typo. I understand you are not familiar with all the details of our reporting – that's okay! It's through exercises like this that you will become more familiar with it and gain a greater understanding.

Today I took a look at the following documents together: Enterprise Data Governance Policy, Non-G&O Key Risk Reporting Guidelines, and the Regulatory and Risk Reporting G&O Framework. Since these particular desktop procedures are related to a non-G&O Risk Report, I don't think we need to follow the stricter guidelines of the G&O Framework or BCBS 239. See my comments within the attached. I'll send Hollis a cleaned up version of the procedures.

Thank you for the review – I've included some updates based on your comments – for example, clarifying that the metrics portion is related only to the key indicators.

Let me know if you have any questions or want to discuss."

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:40 PM)** –

Hi Nancy-
As a follow up to our review of CRMC procedures, I just wanted to let you know that the quality of desktop procedures, including your feedback/comments made to the subject document were not in compliance with Wells Fargo G&O Framework / BCBS 239 related to the reporting processes, but instead you took it personal.
The purpose of my email was to prevent any future criticism by Wells Fargo Audit Services team.

Furthermore, your extensive explanation shows that you are trying to put the blame on me again and again. Most of your comments described in your email of May 24st are negative and reflects that I am not completing those tasks based on the deadline that you had initially stipulated. Furthermore, your comments/ feedback excludes the reason why the deadline had to be changed. How is that convenience for you!

Since May 7th, you have negatively and poorly criticized every project, activities and email communication that I have provided to you, including emails that I have exchanged with other team members in the Compliance Operations group – Cindy Boorman's group. Moreover, your ongoing threats to give me a poor job performance rating when you are trying to identify inconsistencies with activities that you have assigned to me are unacceptable and have created a hostile environment for me at Wells Fargo.

When I first joined Wells Fargo reporting directly to Bob Bing (Compliance Manager 5) for over 18 months, Bob and I never had issues with my work performance or work activities that he had assigned to me. I fact, I received two outstanding Wells Fargo YE Performance Appraisals from Bob Bing.

I still don't understand your severe misconduct and mistreatment against me, which are very different than your conduct with other team members that works in our group for Cindy Boorman, Compliance Operations group at Wells Fargo.
What have I done to you?]

**[Appendix Exhibit 22 -** Nancy Coles **email (Wednesday, May 23, 2018 5:07 PM) to Marcia Koutellos**

**Subject:** A message from Mike Roemer: Introducing the Compliance Skills Survey

Hi Marcia – I think you should now be able to access your Compliance Survey using the link below.  If not, please let me know.

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:37 PM) –**

Hi Nancy-

On May 23rd, you asked me to change my skills and other competencies results for items #s 20, 21 and 22 listed on my "Compliance Skills Survey" (see screenshot and attachment)

Compliance Skill # 20 – Integrating Compliance requirements into business process

Compliance Skill # 21 – Critical thinking and analytical skills

Compliance Skill # 22 – Leading broad initiatives across the organization and engaging key stakeholders from other departments

Basically, you requested for me to change those Compliance skills items to "limited" and "good", which is lower than the results "excellent" that I have initially applied to respective compliance skills.

At the time that I reviewed your request with Sylvia in the Compliance group, who is responsible for this Compliance Survey process for Mike Roemer (Chief Compliance Officer), I was informed that I was NOT required to apply your changes to those Compliance skills items, because:

1. Those Compliance skills that I have marked as "excellent" corresponds to my self-evaluation and should NOT reflect your assessment of my skills/qualifications.

2. In addition, Wells Fargo team members from other Compliance groups were allowed to keep their self-evaluation results and didn't have to change to the information that their managers had proposed. Same thing you were trying to do to me.

3. Your assessment of my Compliance skills only reflects the past two months that you and I are working together in Cindy's group (Compliance Operations) at Wells Fargo.

4. You have expressed doubts about my career experience listed on my resume, which reflects my 23 years in the Financial Services. Although you have the right to express your opinion about me, I found that it was a bit unprofessional.

Furthermore, when I was hired at Wells Fargo by Bob Bing (Compliance Manager 5) in 2016, Mr. Bing never had any doubts about my career experience and Compliance qualifications/ experience acquired from previous employers. In fact, I received excellent Wells Fargo YE Performance Appraisals from him for YE 2016 and YE 2017.

In regards to the Compliance Skills Survey, I tried to access the document Compliance Skills Survey SharePoint site to verify the status of Compliance skills items # 20, 21 and 22, but the status shows that you have completed this process (see screenshot below). Please let me know if you made any changes to my Compliance skills items # 20, 21 and 22.

As you know, if I would conform with your request to change my Compliance skills assessment to "limited" and "good", which you have proposed, it would reflect that I don't have enough Compliance skills / qualifications to do the job in Cindy's group or any other Compliance group and therefore resulting on possible termination of my job at Wells Fargo.

Your assessment about my Compliance skills/experience are incorrect, because it does NOT reflect the assessment from my previous manager, Bob Bing (Compliance Manager 5).

Since May 7th, you have negatively and poorly criticized every project, activities and email communication that I have provided to you, including emails that I have exchanged with other team members in the Compliance Operations group – Cindy Boorman's group.
Moreover, your ongoing threats to give me a poor job performance rating when you are trying to identify inconsistencies with activities that you have assigned to me are unacceptable and have created a hostile environment for me at Wells Fargo.]

[Appendix Exhibit 23 – Cindy Boorman email (Tuesday, May 22, 2018 9:54 AM) to Marcia Koutellos
Subject: FW: Meeting Follow Up (Status)
"I am in the guest office in the corner."

⇨ MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:37 PM) –
Hi Cindy,
On May 22nd, when we met in person in the New York office, you mentioned to me that when Jillian Berman requested via email for me to follow up on RMII's email related to "Connect the Dots (CTD) Potential Issues (Q1 2018) for Enterprise Compliance Dashboard" that I didn't take immediate action.
At that time, I explained to you that I took immediate action and reached out to respective RMII team to provide a clarification and update about their request that was sent to Jillian.
In fact, I mentioned that I took action and reached out to RMII team before our meeting and provided update to Jillian after my meeting with you.

To prove that I took immediate action, please see email attached, which shows Jillian Berman sent out her email request to me on Monday, May 21, 2018 5:40 PM and the next day, Tuesday morning , upon my office arrival I took immediate action [Tuesday, May 22, 2018 7:51 AM] and email Melissa Jacobson seeking clarification and updates. Melissa provided an initial response on Tuesday, May 22, 2018 11:00 AM and immediately I forwarded Melissa's update to you and Jillian on Tuesday, May 22, 2018 11:09 AM

Furthermore, during our meeting in person, among other things 1) you told me that a person that sits on the same floor where I have my Wells Fargo desk in NYC told you that I have spent extensive time out of my desk; 2) You also mentioned that you were monitoring my time out of my desk using "Wells Fargo Skype for Business" and you saw many times my availability as "Inactive" or offline for XYZ minutes" and that I should stay at my desk at all times; 3) In addition, you told me that my previous manager (Bob Bing) told you about my previous medical situation; 4) You said that my ongoing doctor's visit/ follow up was interfering with my job performance and 5) You emphasized the need for me to conform with Nancy Cole's email of May 7th (see attachment).

I was very concerned about your affirmations. Are you taking the same approach and conduct against other individuals that report to you or it's just against me?

1. First of all, in the New York office, my Wells Fargo desk is located about four feet away from Jillian Berman's glass office and you work for Jillian on few Compliance projects. I couldn't believe that a person who doesn'

18

know my whereabouts in the office would tell you information that was not true about me. I have serious concerns about this actions taken against me, which is not the same approach and conduct that you and Nancy are taking against other people that works for you.

2. In regards to Wells Fargo Skype for Business, as you know, if a team member is not typing in the keyboard using the computer, their Wells Fargo Skype for Business it will show "inactive" or "offline XX minutes".

   a) Many times when I checked yours and other team members availability using "Wells Fargo Skype for Business" it shows that you were more than"60 minutes inactive" and other times that you don't log the computer until 9AM. Therefore, why you and other team members can spent time away from your desk and I am the only one being targeted and heavily criticized by both you and Nancy when it relates to time spent out of Wells Fargo desk.

   b) In fact, few weeks ago when I told Nancy Coles via Wells Fargo IM (attached) that I had to step away to go to the pharmacy and later to pick up some lunch, she didn't reply to my IM, but instead she told me "verbally" that I had to use the previous time/hours that I have made up for my previous doctor's appointment for the time I spent to pick up lunch and go to the pharmacy. No other team members or individuals that work for you in your group (Compliance Operations) at Wells Fargo has encountered such misconduct. What have I don't to you to deserve this mistreatment and misconduct?

3. When you mentioned to me that my previous manager (Bob Bing) told you about my previous medical situation, I was very shocked, because based on Wells Fargo Human Resources policies, Wells Fargo managers are not allowed to disclose employee's medical information to another manager. Bob Bing was a great manager (Compliance Manager 5) to me and I don't believe that he would violate Wells Fargo policies and discuss my health information with other managers in the Compliance group.

4. Moreover, when you said that my ongoing doctor's visit/ follow up was interfering with my job performance, I explained to you that I was making up time before my doctor's visit and ensuring Nancy Coles ( the person that you assigned to be my new manager) was aware of my doctor's visit prior to the subject appointment.

   a) I have always conformed to your rules and I believe you are treating me different than other individuals in your group, people that reports directly to you.

   b) Overall, Nancy and others individuals that works for you in the Compliance Operations at Wells Fargo are allowed to take time off from work to go to their doctor's appointment or to be away from their desk for an extensive period of time, take lunch, short breaks, including starting work at 9AM.

   c) When it comes to me, using Wells Fargo Skype or Business", you are monitoring the time I spend on my desk. You are not using the same approach to other people that works in your group. Why are you treating me different than other individuals that works for you at Wells Fargo?

5. In regards to Nancy Coles' email dated May 7th, Nancy wrote" As we discussed before, _if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business. You may work 8:00 – 5:00 or 7:00 – 4:00 and take a lunch hour. If you are ill or have personal business to attend to, as an exempt team member, you must take PTO in a half-day or full-day increment_ (our group does not provide the option of working from home when sick). Our group has been generous to allow us to take an hour or two here and there for personal appointments provided that the time away from the office is timely made up. _Before you can take any further time away for other personal appointments, you need to make up in full the hours that were missed last week and the week before last or, alternatively, take paid time off to account for that time._

19

a) Those group rules that Nancy described on May 7th email, which made reference to working hours and meals period at Wells Fargo that she has imposed on me, it shows that they are only applicable to me and not to you and other team members that works for you in the Compliance Operations group at Wells Fargo.

b) Nancy is not allowing me to take short breaks, lunch (if I work 9AM – 5PM) and always reprimanding me about the time I spent out of my Wells Fargo desk and threatening me with poor job performance review. Other people in your group that reports to you are not getting the same mistreatment and misconduct by you or Nancy.

c) Nancy wrote that If I work from 9AM to 5PM, I am NOT allowed to take lunch or short breaks, and again you and other team members that works you are allow to take lunch, short breaks and therefore are not treated the same as I am. Furthermore, Nancy demanded for me to start work at 8AM every day, but Nancy and others team members in the Compliance Operations at Wells Fargo that reports to you are not doing the same.

Overall, Nancy Coles and others individuals that works for you in the Compliance Operations at Wells Fargo are allowed to take time off from work to go to their doctor's appointment or to be away from their desk for an extensive period of time, take lunch, short breaks, etc., WHY when it comes to me I am NOT allowed the too do the same. Why are you treating me different than others in your group?

Since Nancy's email of May 7th, you and Nancy always provide negative comments about work activities that both of you have assigned to me and as a result Nancy threats me with a poor job performance, which could lead to my job termination at Wells Fargo.

- As a result, I always have to provide specific details (emails response such as this) to prove to you and Nancy that I am NOT wrong and I have the skills for the job

- For the past two months, since I was moved to your group the ongoing threats about my job performance that I am getting from you and Nancy at Wells Fargo are getting worse and they are unacceptable, because I didn't do anything wrong.

- Furthermore, those restrictions about my working hours and meals period at Wells Fargo" (Nancy wrote May 7th email) are in violation of New York State Labor Standards and Wells Fargo Meals policies for the State of New York.

- The ongoing negative criticism of my work activities by you and Nancy and continuous reminders of given me a poor job performance are unacceptable and I want you to stop this harassment against me.

When I first joined Wells Fargo in 2016, reporting directly to Bob Bing (Compliance Manager 5), during those 18 months, Bob and I never had issues with my work activities, working hours, meal periods, doctor's visit and/or violation of Wells Fargo policies. In fact, I received two outstanding Wells Fargo YE Performance Appraisals from Bob Bing.

On April 13th, as a result of my previous manager (Bob Bing / Compliance Manager 5) resignation, four people from Bob's team were transferred to your group (Compliance Operations, but I am the only person that has been mistreated and targeted for a negative job performance and job termination.

Why you don't take the same approach/ conduct with other people that reports to you in the Compliance Operations group at Wells Fargo?

What have I done to you to deserve this misconduct, mistreatment and harassment at Wells Fargo?]

[Appendix Exhibit 24 – Marcia Koutellos email (Wed 6/13/2018 12:42 PM) to Mike Roemer

Subject: FW: Meeting Follow Up (Status)

"Mr. Roemer,

My name is Marcia Koutellos. I joined Wells Fargo Compliance group (former RCRM) in 2016, reporting directly to Bob Bing (Compliance Manager 5) and during 18 months working for Mr. Bing I never had issues with my work activities, working hours, meal periods, doctor's visit or was threatened with a poor job performance. In fact, during the first two years working for him at Wells Fargo, I received two outstanding Wells Fargo Year-end Performance Appraisals from Bob Bing and Sara Satten (Compliance COO).

Most recent, on April 13, 2018 as a result of my previous manager, Bob Bing (Compliance Manager 5) resignation on April 2, 2018, four people from Bob's team (including myself) were transferred to Cindy Boorman's group in the Compliance Operations, but I am the only person that has been mistreated and targeted for a negative job performance and job termination by Cindy Boorman and Nancy Coles.

The main reason that I have "BCC" you on my previous email sent to Cindy Boorman is to escalate to you the Wells Fargo violations, harassment, discrimination and retaliatory actions that Ms. Boorman and Ms. Coles have taken against me as an employee of Wells Fargo and also because you are Cindy Boorman's manager at Wells Fargo Compliance. You should know that both, Ms. Boorman and Ms. Coles are running the Compliance Operations department, as their own business, with their own policies and rules, which are a violation of Wells Fargo policies, Federal and New York State Laws. Cindy Boorman reports directly to you.

The retaliation and harassment from Ms. Boorman and Ms. Coles, including their abusive actions against me and violations of Wells Fargo Employment policies are unacceptable. The false allegations/ accusations made by Ms. Boorman and Ms. Coles on multiple occasions about my professionalism, job qualifications and work performance at Wells Fargo are baseless.

Furthermore, I am also the victim of acute and egregious retaliation by the same individuals for my efforts to oppose this mistreatment and other violations and therefore I have already filed my formal complaint with Head of Human Resources at Wells Fargo for their investigation.

In sum, it is in good faith, I believe Ms. Boorman and Ms. Cole's deplorable actions are in contravention of the Company's policies, violation of Federal and State Laws and they have violated, among other things, my employment rights at Wells Fargo.]

[Appendix Exhibit 25 – Nancy Coles email (Tuesday, May 22, 2018 9:54 AM) to Marcia Koutellos

Subject: RE: New Job Description (Follow UP)

"Hi Marcia –

As requested, see the attached job description. Let's discuss on our 1:1 tomorrow if you have any questions/ feedback.

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:39 PM)** –

Hi Nancy,

As a follow up to our review on June 8th (during 1:1 status call) of the new job description that you have create for me - **Compliance Consultant 4 – Reporting and CAO Team Compliance Consultant**, I have several concerns and questions about your misconduct approach against me at Wells Fargo


Compliance
Consultant 4 _ R...

When I first joined Wells Fargo in 2016, reporting directly to Bob Bing (Compliance Manager 5), during those 18 months I received two outstanding Wells Fargo YE Performance Appraisals from Bob Bing (Compliance Manager 5) and his manager, Sara Satten (SVP, Chief of Compliance Operations)

1. Since the time I was hired at Wells Fargo by Mr. Bing, **my current job tile is BCBS 239 Governance Consultant - Compliance Consultant 4**, which focus on management and compliance of BCBS 239 / Wells Fargo G&O Framework, reporting activities, data governance and change management requirements for in scope Compliance reports.

2. I was hired by Bob Bing to manage Compliance BCBS 239 regulatory deliverables related to Compliance Regulatory reporting and State of Compliance, which requires management skills to work on respective initiatives and deliverables with stakeholders, risk and compliance managers across Wells Fargo.

3. On April 13th, as a result of Mr. Bing's resignation, the job responsibilities involving BCBS 239 (previously assigned to me by Mr. Bing) were transferred to Cindy Boorman's group in the Compliance Operations and Cindy Boorman assigned those BCBS 239 responsibilities to other individuals in her group and NOT to me.

4. Although, on April 13th four people (including myself) from Bob's team were transferred to Cindy Boorman's Compliance Operations group, I am the only person that previous job responsibilities were taken away and the only person who has received a new job description.

The other three individuals from Bob's team (Rita Bagchi, Sam Salinas and Michelle Green) that were also transferred to Cindy's group in the Compliance Operations are NOT treated the same as I have been mistreated by you and Cindy.

1. After the transfer to Cindy's group, those individuals kept the same job tile and job description working for Cindy Boorman. I am the only person that had previous responsibilities related to Compliance BCBS 239 taken away from me and I am the only person that had a job description imposed on me.

2. Furthermore, the BCBS 239 role requires years of Regulatory Compliance experience, which I have demonstrated that I was capable to do the job working for my previous manager, Bob Bing. Why you and Cindy took away my responsibilities related to Compliance BCBS 239 and transferred to another person in Cindy's group?

3. The new job description - *Compliance Consultant 4 – Reporting and CAO Team Compliance Consultant -* that you are imposing on me is a demotion to my current role - **BCBS 239 Governance Consultant - Compliance Consultant** (see attachment) and your new job requirements has nothing to do with my previous responsibilities related to Compliance BCBS 239.



Compliance
Consultant 4 - B...

4.  Furthermore, since your new job description doesn't have anything to do with Compliance BCBS 239 and my previous BCBS 239 responsibilities were transferred to another person in Cindy's group, you are setting me up for failure.

Why do you want to enforce/ impose this new job description on me?
What has changed?

The other three people that were transferred to Cindy's group (at the same time I was moved to Cindy's group) were not given a new job description. Why are you treating me different than other individuals that also works for you and Cindy in the Compliance Operations group at Wells Fargo?

I still don't understand your severe ongoing misconduct and mistreatment against me, which is NOT the same conduct you have with other team members that works for Cindy in Compliance Operations at Wells Fargo?
What have I done to you?]

[Appendix Exhibit 26 -- **Marcia Koutellos' email (Tuesday, May 22, 2018 9:54 AM) to Nancy Coles**
**Subject:** Doctor's Appointment (Wednesday @ 10am)
Hi Nancy,
I just got confirmation from my doctor for an appointment scheduled for tomorrow at 10am.
Based on your previous instructions described in your May 7th email, as you required for me to make up the time out of the office (during my doctor's appointment) before my visit to my doctor, please note that I have conformed with your instructions.

As you know, on June 13th, I worked in the Wells Fargo office from 8:10AM to 8:44PM – total 12 hours and 30minutes.
Based on your previous instructions that I should work from 8AM to 5PM every day and since  yesterday (6/13) I made up extra time of 3 hours and 30 minutes, I would like to use the extra time to the time that I will need to spend for tomorrow's doctor's appointment.
Kindly, please provide your approval and let me know if you have any questions or concerns.]

[Appendix Exhibit 27– **Nancy Coles email (Friday, June 1, 2018 8:22 AM) to Marcia Koutellos**
**Subject:** RE: Work Prioritization (Follow Up)
"Hi Marcia –
I am going to take a PTO day today because I don't have any meetings which rarely happens!  I'm going to take advantage of that to get some things on my personal to-do list finished.

Per your request yesterday that we take a look at the deliverables on your to-do list, see my thoughts below:
- **Board Reporting.** Prioritize Cindy's request from yesterday regarding board reporting.

23

- **Migration of BCBS 239 from SharePoint to shared drive**. This was assigned on 5/7 and is due today. Based on our conversation on Wednesday, it sounds like this you are still working on this. Let's move the due date for this deliverable out to 6/15 to give you two more weeks.
- **DMS Migration.** Learning Center training class and population of DMS spreadsheet. Assigned 5/24 and due 6/8. It should be fine to leave this due date as is – the training class and spreadsheet population should take 2-3 hours at most to complete. As discussed, we'll review your spreadsheet population on our 1:1 call on 6/12.
- **Key Non-G&O Risk Reporting**. Continue to work towards the deadlines set by the Ops Risk team. As we discussed on Wednesday, the next steps are for you to email Ronda and Rita with any needed changes. I saw your email to Mike and team that you'll ask the Operational Risk team to remove this report from L2 Report Documentation phase 2 – that's great! That takes another thing off the list. I still need to review David D'Amico's four-blocker and get any comments back to you. Assigned 4/20. No due date for this, but let's plan for Friday, 6/29, to give you plenty of time to get into the reports and dig around. You sat through two sessions
- **Familiarize yourself with our team's reporting.** Assigned 4/20. No due date for this, but let's plan for each of the training for the Metrics Dashboard and Tableau reporting so may need to focus on just the supporting data and trending reports. Please let me know if you have any questions as you go through these reports.

Please remember to put in a PTO day for Tuesday, 5/29.

⇨ **MARCIA KOUTELLOS' EMAIL REBUTTAL (WED 6/13/2018 12:37 PM)** –

Hi Nancy,

On June 8th, during our 1:1 status call to review updates on respective activities that you have previously assigned (listed on your email dated June 1st), **you told me that you were going to provide a revised deadline for each activity, because you know that I am working alone on analysis of 51 Compliance reports for Cindy Boorman,** but to this date, I didn't receive any updates from you.

Most of your updates (listed on your email of June 1st) on activities that you have assigned to me are negative and reflects that I am not completing those deliverables based on the deadline that you had initially stipulated. Furthermore, your comments/ feedback excludes the reason why the deadline had to be changed. How is that convenience for you!

Since May 7th, you have negatively and poorly criticized every project, activities and email communication that I have provided to you, including emails that I have exchanged with other team members in the Compliance Operations group – Cindy Boorman's group. Moreover, your ongoing threats to give me a poor job performance rating when you are trying to identify inconsistencies with activities that you have assigned to me are unacceptable and have created a hostile environment for me at Wells Fargo.

When I first joined Wells Fargo reporting directly to Bob Bing (Compliance Manager 5) for over 18 months, Bob and I never had issues with my work performance or work activities that he had assigned to me. I fact, I received two outstanding Wells Fargo YE Performance Appraisals from Bob Bing.

On April 13th, as a result of my previous manager (Bob Bing / Compliance Manager 5) resignation, four people from Bob's team were transferred to Cindy Boorman's Compliance Operations group, but I am the only person that has been mistreated by you and Cindy. The other three individuals from Bob's team that were also transferred to Cindy's group in the Compliance Operations are NOT treated the same as I have been treated by you and Cindy. At Wells Fargo you hold a Compliance Consultant job title, which is the same title I have, but you have a degree in Law, which I don't have.

I still don't understand your severe misconduct and mistreatment against me, which are very different than your conduct with other team members that works in our group for Cindy Boorman, Compliance Operations group at Wells Fargo.

What have I done to you?]

_____

[On June 28, 2018, Nancy Coles and Cindy Boorman forced me to do responsibilities of a Project Manager (Appendix Exhibit 35A) Britanny Moore (Business Initiatives Consultant), who recently left for maternity leave. Those responsibilities are not related to my current work responsibilities of BCBS 239 reporting strategy that were transferred to Cindy's group from Bob Bing's (my previous manager) team.

1. Prior to my manager's resignation, I was working with Bob Bing on those reporting activities that were transferred to Cindy Boorman's group. However, they have decided to retaliate against me and assign work of "Business Initiatives Consultant related to project management.

2. Britanny Moore, Business Initiatives Consultant, who is now on maternity leave reports to Christine Carol Barker (Business Initiatives Manager, who in turn reports to Cindy Boorman in Compliance Operations. Carol has five people Business Initiatives Consultant that reports direct to her – Brooke Griddle, Jack Makossa, Jovonna Lucas, Kimberly Indresano and Patrick English. All those individuals are doing work related to project management. – Why Cindy Boorman and Nancy Coles are forcing me to do the project management work, when they have four people from Cristine's team to take on Brittany's responsibilities.

3. Furthermore, when I complained to Nancy Coles about the project manager responsibilities and asked her why she didn't assign work related to reporting, she replied that it was her decision and that I had to do the work as instructed.

4. On June 28th, during the 1:1 status call (over the phone) several times, Nancy Coles with a sarcastic tone told me "Why you are complaining about, your resume shows that you worked as a project manager prior to Wells Fargo" and she would laugh. This is unacceptable. Nancy Coles and Cindy Boorman are changing my responsibilities to a project manager with the intent for me to resign from my job at Wells Fargo. Their approach in retaliating and harassing me with work related to project management is despicable.

5. I cannot allow this type of harassment and retaliation from Cindy Boorman and Nancy Coles. After I filed my complaint with Well Fargo Human Resources the work environment situation has worsened. In fact, Nancy Coles told me that she was working with Employee Relations Manager on the allegations that I made on my "email rebuttals" that was sent to her, Cindy Boorman and Mike Roemer (_Appendix Exhibits 14 to 27_).

6. Furthermore, after Nancy Coles told me that she was working with Employee Relations Manager, it was the time that Nancy and Cindy Boorman forced me to do the responsibilities of project manager in her group. Why Human Resources would agree to have the manager (Nancy & Cindy) to change my work responsibilities to project manager, which in this case is a demotion?

25

7. On July 2, 2018, during a quick call with Cindy Boorman to provide an update on the reporting presentation activity that she had assigned to me, Cindy changed the subject and start to explain to me why Nancy and her assigned project manager responsibilities to me.

   • Overall, Cindy's explanation was not credible and didn't provide a reason for the change on my responsibilities of **Compliance Consultant 4** to project manager responsibilities of **Business Initiatives Consultant**.

   • Cindy didn't explain why she didn't ask <u>Christine Carol Barker</u> to assign another Business Initiative Consultant to cover for Britanny Moore (Business Initiatives Consultant), while she is on leave.

   • After our call, Cindy sent out an email (Appendix Exhibit 35B) justifying the need for me to conform with her instructions and do the work Nancy Coles was assigned to me related to project management responsibilities.]

The purpose of this letter is to bring to your attention in Human Resources my formal complaint of discrimination, harassment and retaliation, which I have been subjected at Wells Fargo by Ms. CINTHIA BOORMAN ("Ms. Boorman") Compliance Manager, Wells Fargo Compliance and Ms. NANCY R. COLES ("Ms. Coles") Compliance Consultant, Wells Fargo Compliance. In addition, my complaint will also describe the severe violations of Wells Fargo Employment Policies (Appendix Exhibits 1, 2, 3, 4, 5, 6, 7, 8), Federal and State Laws by both individuals (Ms. Boorman and Ms. Coles), which commenced on May 2, 2018 and has continued to this date.

On April 13, 2018, as a result of the resignation of my former manager Mr. Bing (April 2, 2018) his Governance & Reporting team (team of 4 people, including myself) were officially moved to Ms. Boorman's Compliance Operations group. At that time, Ms. Boorman assigned me to work with Ms. Coles as my new manager.

It is my sincere hope that this letter will facilitate my efforts to address the egregious mistreatment at the hands of Ms. Boorman and Ms. Coles, to thwart any further mistreatment, and to advance my efforts to obtain an internal job transfer directly with Wells Fargo Human Resources department.

After the resignation of my former manager, Mr. Robert Bing ("Mr. Bing"), Compliance Manager 5, since April 2, 2018, I have applied for internal job opportunities (manager levels 3 & 4) via Wells Fargo Careers and successfully interviewed with respective Human Resources recruiters and Wells Fargo hiring managers (Appendix Exhibits 28 A, B, C, D, E, F, G).

| Interview Date | Job ID \| Wells Fargo Position | Interviewer(s) |
|---|---|---|
| April 6, 2018 | 5394714 \| Operational Risk Manager 4 – Reputational Risk Oversight | Jorie Thomas (Recruiter) |
| April 27, 2018 | 5400147 \| Operational Risk Manager 4 – Financial Crimes Operations | Michael Cho |
| April 30, 2018 | 5399612 \| Financial Crimes Manager 3 – Product Risk Manager HRA | Michael Torregiano |
| May 15, 2018 | 5403585 \| Operational Risk Manager 4 – Customer Due Diligence | Kat Claxton (Recruiter) |
| May 21, 2018 | 5403585 \| Operational Risk Manager 4 – Customer Due Diligence | Crystal Reilly /Mark Ward |
| June 18, 2018 | 5411043 \| Business Initiatives Manager - Policy Lifecycle Management | Tracy Toland & Panel |
| June 15, 2018 | 5411837 \| Operational Risk Manager 3 position | Wendy Million /Recruiter Mike Eilers |
| July 3, 2018 | 5411837 \| Operational Risk Manager 3 position TPRM Policy Compliance | Emma Bokkon/Recruiter |
| June 22, 2018 | 5412346 \| Business Initiatives Manager – Consent Order Program Office | |

26

Ms. Boorman and Ms. Coles are aware that I have internally interviewed for the following management positions at Wells Fargo and since May 7, 2017, they have threatened me with a poor performance appraisal, which will prevent me from any future internal job transfers at Wells Fargo Company.

In light of the ongoing Wells Fargo Compliance reorganization and upon review of respective job requirements, I made a decision to submit my job application internally via Wells Fargo Career site. During my 23 plus years of career experience in the Financial Services in the USA and International regions, I have acquired diverse management experience in Global Compliance, Enterprise Risk Management, Operations, Change Management and Technology functions, including extensive experience on implementation of Regulatory Reforms, Risk Frameworks, Program Governance and other Corporate enhancement that drives today's business improvements and profitability.

Overall, prior to Wells Fargo, at HSBC I was responsible for providing business enterprise-level compliance, risk management and regulatory strategies across multiple HSBC regions. (USA, Canada, Latin America, Mena and ASP), partnering with regional compliance executives, risk leaders, business groups and support functions and technology teams to critically evaluate risks, controls, policies, procedures, data management, program governance, reporting and implementation of key business strategies and regulatory enhancements across multiple areas of the organization.

At Wells Fargo, as the Company's legitimate employment records reflect, I am an excellent and hardworking employee, who has consistently performed in exemplary fashion since the commencement of my employment at Wells Fargo on September 1, 2016 (Appendix Exhibit 9). According to Mr. Bing's assessment of my Wells Fargo 2016 and 2017 Year End Performance Reviews (Appendix Exhibits 11 & 12), I have exceeded Mr. Bing's expectations and as a result received "strong" ratings with positive comments about my overall performance from September 2016 to March 2018, and consequently was awarded a $21,000.00 bonus for fiscal year 2017. Overall, Mr. Bing's comments reflected my willingness and capability to take on all types of activities to support Mr. Bing and Ms. Satten Compliance initiatives and successfully met their objectives and expectations.

- Based on Mr. Bing's comments of my 2016 Year End performance, *"Marcia built a solid foundation to support RCRM risk data activities and was well positioned for success in 2017"*.
- During the 2017 YE Performance, Mr. Bing wrote *"Marcia successfully met all 2017 objectives. In particular, Marcia brings a positive, can-do attitude to work, treats all team members with respect, readily adapts to organizational changes and takes pride in the work she produces. This position her for success in 2018".*
- *In light of many project accomplishments highlighted by Mr. Bing on my Wells Fargo 2017 YE Performance, which contained strong and positive feedback, I received a large bonus compensation.*

Based on the Wells Fargo job offer letter dated August 22, 2016 (Appendix Exhibit 9), my Wells Fargo job tile is *Compliance Consultant 4 – BCBS Governance Oversight Consultant with corporate title as "Vice President"* (Appendix Exhibit 11),. From September 1, 2016 to April 2, 2018, I reported directly to my former manager, Mr. Robert Bing, (Compliance Manager 5) SVP/ Head of Governance & Reporting and to his manager, Ms. Sara Satten, SVP, Compliance Operations Officer. I have always been a dedicated Wells Fargo employee and received high praise and good performance appraisals from senior management (Mr. Bing and Ms. Satten).

27

At Wells Fargo, when Mr. Bing was my direct manager (from September 2016 to April 2018), I was responsible for the implementation of an effective risk data aggregation and reporting strategies associated to Regulatory BCBS 239 program (Wells Fargo G&O Framework), risk assessments, controls and credible challenge reviews for State of Compliance, among other responsibilities, working alongside of Corporate Risk, Enterprise Data Analytics, Enterprise Controls Oversight and RCRM Data Provider teams to support execution of regulatory program and COO (Ms. Satten) initiatives.

On November 16, 2017, while working for Mr. Bing and Ms. Satten at Wells Fargo, I was diagnosed with an unexpected DVT (Deep Vein Thrombosis), which was a life-threatening illness that has changed my life. Doctor told me that I was not allowed to walk around for two weeks, because it could cause the blood clot to move up to my lungs and heart, resulting in death. At that time, I didn't want to take short term disability, because it was important for me to continue to work at Wells Fargo and keep my mind out of the DVT painful period. Therefore, I explained my health situation to my manager, Ms. Bing and he obtained an approval from Ms. Satten for me to work from home for a period of two weeks. I am very grateful for their kindness in understanding the difficult health situation with DVT that I was dealing with at that time. From November 2017 to March 31, 2018, while working for Mr. Bing, he allowed me to go to my doctor's follow up appointments and make up time for hours spent in the doctor's office. He never asked for doctor's note. Other times, when people in his group had a cold or flu, Mr. Bing would allow his team to work from home. He never harassed or discriminate people who directly reported to him and required to see doctors for checkup and follow up. Although, I was recovering from a life-threatening illness (DVT), I have always given 110% as a Wells Fargo employee and Mr. Bing knew that.

The intent of this letter is to seek Wells Fargo Human Resources investigation of my full complaint of discrimination, harassment and retaliation against Ms. Boorman and Ms. Coles. Ms. Boorman is a Compliance Manager 5 and Head of Compliance Operations, reporting to Ms. Jillian Berman, Compliance Manager and Mr. Mike Roemer, Chief Compliance Officer. Ms. Coles is a Compliance Consultant and reports directly to Ms. Boorman. Ms. Coles has a degree in Law.

"[The false accusations/ allegations, discriminatory, harassment, derogatory and condescending comments against me made by Ms. Coles and Ms. Boorman over the phone and via emails about my professionalism, job qualifications, work conduct, job performance, doctor's visit and meal periods, including ongoing negative criticism on activities that they had assigned to me were in violation of Wells Fargo policies, State and Federal Laws. When I asked Nancy Coles and Cindy Boorman to provide evidence of their baseless affirmations and negative comments about my work, over the phone they would change the subject telling me: "well it is in general"].

[Overall, they couldn't prove that I had done something wrong, because it was nothing wrong with my work. It was outrageous that their actions taken against me were not the same actions taken against other employees that reports to Ms. Boorman and Ms. Coles. Therefore, in order to defend myself and protect my job at Wells Fargo, I made a decision to enforce "Wells Fargo Speak Up Non Retaliation Policy" *Appendix Exhibit 3*, and provide my rebuttal to all discriminatory actions and emails harassment from Ms. Coles and Ms. Boorman and stop their harassment, discrimination and retaliation against me. *Appendix Exhibit 14 to 27.*]"

'[During the 1:1 status call with Ms. Coles, over the phone Ms. Coles repeated said that I was not allowed to take lunch (working 9am to 5pm), unless I would work on Ms. Coles "Standard Schedule" - *Appendix Exhibit 18.* Ms. Coles also told me that she was monitoring my work performance using Wells Fargo Skype for Business and it shows

my Wells Fargo Skype as "inactive for a long period of time" and it was unacceptable to Ms. Coles and Ms. Boorman, because they demanded for me to be at my desk at all times. Those rules were only applicable to me and NOT to them or the Compliance Operations team.]

[I have been singled out and treated different from other Wells Fargo employees that works for Ms. Boorman and Ms. Coles in the Compliance group. Furthermore, since Ms. Boorman and Ms. Coles were using Wells Fargo Skype for Business to manage my time for lunch and out of my desk, I took the same approach and documented that Wells Fargo Skype for Business for Ms. Coles and Ms. Boorman were inactive during business hours for a long period of time and often during lunch time they were inactive for 60 minutes lunch hour and other times Ms. Coles would log in after 9am – *Appendix Exhibit 29 & 30*.]"

"[Other times, when Ms. Coles and Ms. Boorman wrote an extensive and negative emails to demonstrate that I was not doing the job according to their expectations, they also made negative remarks and baseless accusations about my work performance and often threatened me with a poor performance appraisal, which could result on termination of my employment at Wells Fargo – *Appendix Exhibits 16, 17 and 21*]"

However, as described in greater detail below, I have been subjected to systemic retaliation, discrimination and continuous harassment by Ms. Boorman and Ms. Coles, which actions against me became utterly intolerable and has negatively impacted my work environment at Wells Fargo, creating a hostile work environment.

1. Ms. Boorman and Ms. Coles are harassing me for using the time that I have taken from my follow up doctor's visit, lunch and coffee breaks to threatened me with poor employment performance appraisals. I have always ensured to let them know via email when I have a doctor's appointment, the time I leave the office and time I return to the office from respective doctor's appointment. I addition, I also ensured to make up time for time spent at doctor's office, before doctor's visit and obtain their approvals. They are not applying the same actions to other team members that reports to Ms. Boorman and her team. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation. (Appendix Exhibits 13 to 35),

2. The severe discrimination, harassment and retaliation to which I have been subjected at Wells Fargo under Ms. Boorman management commenced on May 2, 2018. Unfortunately, after confronting Ms. Coles on May 7, 2018, I have become the victim of significant retaliation, which has worsened, resulting on hostile work environment and deterioration of my health. By way of example only, Ms. Coles was assigned as my manager by Ms. Boorman and I relied on Ms. Coles for support of various projects that were related to reporting strategy and internal processes, since I had just joined the team on April 13, 2018. However, after I confronted Ms. Coles to oppose her violations of Wells Fargo employment policies and New York State Labor Standards Law, which was described on Ms. Coles email of May 7, 2018 (listed below), both Ms. Coles and Ms. Boorman have increase this harassment and retaliation, creating a hostile environment at Wells Fargo. (Appendix Exhibits 13 to 35),

   (a) *Ms. Coles Email* - *"if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business. You may work 8:00 – 5:00 or 7:00 – 4:00 and take an hour lunch."* - Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

29

(b) Ms. Coles Email – "*If you are ill or have a personal business to attend to, as an exempt team member, you must take PTO in a half-day or full day increment (our group does not provide the option of working from home when sick)*"- Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(c) Ms. Coles Email - "*Our group has been generous to allow us to take an hour or two here and there for personal appointments provided that the time away from the office is timely made up.*" Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(d) Ms. Coles Email - "*Before you can take any further time away for other personal appointments, you need to make up in full the hours that were missed last week and the week before last or, alternatively, take a paid time off to account for that time.*" - Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(e) Based on Ms. Coles' email of May 7th, she stated: "*if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business*". This is a critical violation of Wells Fargo policies and New York State Labor Standards.

    **a.  Wells Fargo Meals & Rest Periods Policy: New York**
"30-minute meal period for team members working more than 6 hours extending over "noon day meal period" (11:00 a.m. to 2:00 p.m.); additional 20-minute meal period, taken between 5:00 p.m. and 7:00 p.m., if shift begin before 11:00 a.m. and continues past 7:00 p.m."

    **b.  New York State Labor Standards: "Guidelines for Meal Periods"**
"Every person employed in or in connection with a mercantile or other establishment or occupation coming under the provisions of this chapter shall be allowed at least thirty minutes for the noonday meal, except as in this chapter otherwise provided. The noonday meal period is recognized as extending from eleven o'clock in the morning to two o'clock in the afternoon. An employee who works a shift of more than six hours, which extends over the noonday meal period, is entitled to at least thirty minutes off within that period for the meal period"

"Every person employed for a period or shift starting before eleven o'clock in the morning and continuing later than seven o'clock in the evening shall be allowed an additional meal period of at least twenty minutes between five and seven o'clock in the evening."

Ms. Cole's mandatory instructions for me to comply were only applicable to me and NOT to other employees that works for Ms. Boorman or at Wells Fargo. Ms. Coles and Ms. Boorman discriminatory actions are unlawful and should NOT be acceptable by Wells Fargo. Ms. Boorman and Ms. Coles are not applying the same rules to other team members that reports to Ms. Boorman. I have supporting evidence about this severe harassment against me and Wells Fargo violations, available for Wells Fargo Human Resources investigation. (Appendix Exhibits 13 to 35),

3.  On May 22, 2018, Ms. Boorman came to New York office for a meeting with Ms. Jillian Berman (Ms. Berman) and Mr. David D'Amico (Mr. D'Amico). At that time, Ms. Boorman asked me to meet with me to go over project notes, but the main focused of her conversation was to give me a verbal warning about: (a) my time spent for ongoing doctor's follow up visits, (b) extensive time that I spent away from my desk, which was told by another person in the New York office that she uses as an informant, (c) how she was monitoring my time away from my desk using Wells Fargo Instant Messaging (IM), (d) how my former manager (Mr. Bing) told her details about my DVT, health treatment and how it negative impacted my 2017 performance, (e) issues with activities and project assigned by Ms. Coles, who reports directly to Ms. Boorman and has a Law degree. (Appendix Exhibits 13 to 35).

   (a)  My time spent for ongoing doctor's follow up visits - I have always ensured to let them know via email when I have a doctor's appointment, the time I leave the office and time I return to the office from respective doctor's appointment. I addition, I also ensured to make up time for time spent at doctor's office, before doctor's visit and obtain their approvals. They are not applying the same actions to other team members that reports to Ms. Boorman and her team. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

   (b)  How another team member (manager in the New York office) told her that I have spent extensive time away from my desk in the New York office. – Ms. Boorman implied that this team member was Ms. Jillian Berman, who has her office three feet away from my cubical desk in the New York office. Ms. Boorman blatant lies and accusations that I am not conforming to her orders, rules are despicable and a clear form of harassment and discrimination against me, because she doesn't enforce the same actions to other team members that reports to Ms. Boorman. To have Mr. Berman (who is also Ms. Boorman's manager) to tell her false information about my work hours and whereabouts at Wells Fargo are NOT acceptable and a clear for a severe harassment. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

   (c)  How she was monitoring my time away from my desk using Wells Fargo Instant Messaging (IM) – Ms. Boorman mentioned that very often and most occasions when she checks my Wells Fargo Instant Messaging (IM) status it shows that I am not on my desk and it was unacceptable for her. She affirmed that I should be on my desk at all times. Ms. Boorman and Ms. Coles are also using Wells Fargo Instant Messaging ("IM") to control the time that I am out of my desk. My desk is outside of Ms. Berman's office, who is also Ms. Boorman's manager. When a person doesn't type on the keyboard for some time, IM will show status "inactive", "away", "meeting", "busy". Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence to provide for Wells Fargo Human Resources investigation.

   (d)  Mr. Boorman and Ms. Coles ongoing harassment - The Wells Fargo IM, well known as "Skype for Business" is utilized for online meetings, presentation and quick chats with other team members. Ms. Boorman is using Wells Fargo IM to harass me and impose actions that are not applicable to other team members that reports to Ms. Boorman. I have supporting evidence about this severe harassment and discrimination against me, available for Wells Fargo Human Resources investigation.

31

(e) Mr. Boorman also told me how my former manager (Mr. Bing) told her details about my DVT, health treatment and the negative impact to my 2017 performance. – This was a blatant lie from Mr. Boorman, because I received an outstanding 2017 Wells Fargo Performance appraisal from Mr. Bing (my former manager). In fact, I told her that based on Wells Fargo policies, Mr. Bing would never disclose any information about my personal health, because it would be a violation of Wells Fargo employment policies. In fact, on March 20, 2018, Mr. Bing arranged for a meeting with Wells Fargo Employee Relations, Ms. Jo Bingham ("Ms. Bingham") to review questions about PTO, STD and other employment policies that protect my job at Wells Fargo. Mr. Bing would never mention anything to Ms. Boorman about my previous health issues. Furthermore, at that time, I was informed by Ms. Bingham, Employee Relations that my Wells Fargo profile was clean without any notes from Mr. Bing about my previous DVT Health condition. Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment and discrimination against me, available for Wells Fargo Human Resources investigation.

(f) Ms. Boorman also made negative affirmations and accusations about issues with activities and projects assigned by Ms. Coles to me. – Another blatant lie. I have always conformed to Ms. Boorman and Ms. Coles project requests and ensure to complete them within timelines set by both. In addition, I have always provided status on respective activities via email, but for some reason, lately, Ms. Boorman and Ms. Coles always find an issue with my skills and project approach, even do I have always completed all activities. Consequently, they are keeping make threats that such "issues" will result in a poor performance appraisal. In one occasion, I escalated to them that another team member in her group was not providing project information or status, which was past due and at that time, they heavily criticized me for escalating those critical issues and blaming me for the team member delays in providing information for respective projects. Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

(g) Ms. Boorman also gave me a "verbal warning about issues with my work, attendance, doctor's visit, short breaks (to go to the bathroom, pick up lunch)", extensive time out of the office, which according to her were reported by another team member informant that has an office on the same floor in New York office. - Ms. Boorman and her informant approach and harassment against me are unacceptable and Wells Fargo should take immediate actions to stop Mr. Boorman's violations, harassment and discrimination against me I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

(h) Ms. Boorman also made a negative criticism and unprofessional comment to me about Mr. Mike Roemer, which was related to the Reporting Strategy project that she was putting together for Mr. Roemer. Her negative and unprofessional criticism about Mr. Roemer included:

- Ms. Boorman said: "Mike (Mr. Roemer) can't figure it out what kind information he needs to report to the Wells Fargo Board". She affirmed that is hard to work with him, because she must do everything for him.

- When I asked Ms. Boorman about "High Level Requirements" for the Reporting Enhancement project, Ms. Boorman said: "Mike (Mr. Roemer) doesn't understand what

*Wells Fargo Board/ Committee needs and has difficulties in providing reporting requirements for her project.*

Ms. Boorman's comments were unprofessional, because I don't need to know her opinion about the Chief Compliance Officer, Mr. Mike Roemer. If she told me that about Mr. Roemer, she is telling other people too. It's very unprofessional.

"[Unfortunately, on June 13, 2018, after I provided my email rebuttals to Ms. Boorman and Ms. Coles false email accusations about my work and skills, I became a victim of significant retaliation. By way of example only, I relied on Mrs. Coles (assigned as my new direct manager as of 4/13/2018) for support in the various projects and activities that she had assigned to me. However, after they receive my email rebuttals, Ms. Boorman and Ms. Coles became unresponsive to, ignored and failed to act on my requests for follow up email, project status and management support, all of which can be verified through numerous emails (Appendix Exhibits 13 to 35).]"

These are not the only Wells Fargo violations, harassment, discrimination and retaliation that Ms. Boorman and Ms. Coles has enforced against me as an employee of Wells Fargo. Both, Ms. Boorman and Ms. Coles are running the Compliance Operations department, as their own business, with their own policies and rules, which are a violation of Wells Fargo policies, Federal and New York State Laws. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

The retaliation and harassment from Ms. Boorman and Ms. Coles, including their abusive actions and violations of Wells Fargo Employment policies can be verified from previous discussions, instant messages (IMs) and exchange emails that I had with them from May 2nd to this date. Details and supporting documentation are available for Human Resources investigation, upon request.

In many occasions, Ms. Boorman and Ms. Coles made baseless comments about my work performance, and when I asked for them to provide evidence of their affirmations they would change the subject and would respond "well it's in general". Their responses seemed to be unfounded.

The false allegations/ accusations made by Ms. Boorman and Ms. Coles on multiple occasions about my professionalism, job qualifications and work performance are baseless.   Furthermore, I believe I am also the victim of acute and egregious retaliation by the same individuals for my efforts to oppose this mistreatment and other violations that I am reporting to Wells Fargo Human Resources.

In sum, it is in good faith, I believe Ms. Boorman and Ms. Cole's deplorable actions are in contravention of the Company's policies, violation of Federal and State Laws and they have violated, among other things, my employment rights at Wells Fargo.

This complaint does not include the support documentation that I am willing to provide for Wells Fargo Human Resources investigation.

The only remedy I am seeking is for an internal transfer to another Wells Fargo internal position over which Ms. Boorman and Ms. Coles won't have supervisory responsibility.

33

I enjoy working for Wells Fargo institution, which to me is a great Financial Institution to work. When I made a decision to report Ms. Boorman's misconduct described in detailed plaint to Human Resources, I am aware of the possible repercussions, retaliatory actions that will be taken by respective individuals.

It is my sincere hope that this letter will facilitate my efforts to address the egregious mistreatment at the hands of Ms. Boorman and Ms. Coles to thwart any further mistreatment, and to advance my efforts to obtain an internal transfer and other remedies directly with Wells Fargo Human Resources Department.

'[Notwithstanding the above, it is in good faith that I make an attempt to resolve this matter escalating those issues to Wells Fargo Human Resources in order to facilitate Wells Fargo's investigation of Ms. Boorman and Ms. Coles severe misconduct involving harassment, retaliation, discrimination against me and other company's violation related to Ethics and Compliance anticipating prompt action to remedy the harm caused by those individuals.

The only remedy I am seeking is for an internal transfer to another Wells Fargo internal position over which Ms. Boorman and Ms. Coles won't have supervisory responsibility]"


"[In sum, I am extremely upset by the way I have been mistreated by Ms. Boorman and Ms. Coles at Wells Fargo on a personal, emotional, and financial level.]

[I reasonably and in good faith believe that Ms. Boorman and Ms. Coles' deplorable actions are in violation of my rights under New York City, New York State, and Federal laws related to employment discrimination and also violation of Wells Fargo employment policies.]

[Furthermore, I am also the victim of acute and egregious retaliation for my efforts to oppose Ms Boorman and Ms, Cole's mistreatment, misconduct and violation of State and Federal employment laws.]

[ I have escalated  to Wells Fargo Human Resources in writing all these issues and also have provided support documentation (total 49 pages) for Human Resources investigation, because I cannot allow my professional career reputation to be tarnished by those individuals that use their manager position to violate Federal/ State employment laws and Wells Fargo policies. ]"


Very truly yours,


**Marcia Koutellos**
<u>marcia.koutellos@wellsfargo.com</u>
Wells Fargo Compliance
150 East 42nd Street, New York, NY 10017
Office: 1917.260.1218 | Mobile: 1646.577.5600

# APPENDIX - SUPPORTING DOCUMENTATION EMAILS & ATTACHMENTS

- **Exhibit 0**– Marcia Koutellos Complaint of Harassment, Retaliation and Discrimination submitted to Wells Fargo Head of Human Resources and CEO on May 29, 2018



05.29.18_HR_CEO_
Marcia Koutellos Co



Marcia Koutellos_
Wells Fargo Compli



05.30.18 _ HH_RE
Marcia Koutellos Co

- **Exhibit 1** – Wells Fargo Human Resources Equal Employment Opportunity



Human Resources
Equal Employment (

- **Exhibit 2** – Wells Fargo Ethics Conduct Management Office



Ethics Talking
Points_Conduct Mai

- **Exhibit 3** –- Wells Fargo Speak Up Non Retaliation Policy



Speak Up Non
Retaliation Policy.pc

- **Exhibit 4** – Wells Fargo Allegation and Management Policy



Allegation
Management Policy.

- **Exhibit 5** – Wells Fargo Performance Management Policy



Performance
Management Policy.

- **Exhibit 6** – Wells Fargo **PTO Eligibility & Accrual** – Teamworks Team Member Handbook link
  <http://portal.teamworks.wellsfargo.com/1/policies-and-guidelines/team-member-handbook/Pages/PaidTimeOff.aspx>

- **Exhibit 7** – Wells Fargo **Meal & Break Periods Policy [New York State]** – Teamworks Team Member Handbook link < http://portal.teamworks.wellsfargo.com/1/policies-and-guidelines/team-member-handbook/Pages/default.aspx>

- **Exhibit 8** – Wells Fargo **Work Hours for Exempt Employee** – Teamworks Handbook link < http://portal.teamworks.wellsfargo.com/1/policies-and-guidelines/team-member-handbook/Pages/Exempt.aspx >

- **Exhibit 9** – **Wells Fargo Job Offer Dated August 22, 2016**



Offer Letter for
Marcia Koutellos.pd

- **Exhibit 10** – **Wells Fargo Job Description – BCBS239 Governance Consultant/Compliance Consultant 4**



Compliance
Consultant 4 - BCBS

- **Exhibit 11** – Wells Fargo **Year-End 2016 Job Performance Review** by Manager Bob Bing



YE 2016
Performance Review

- **Exhibit 12** – Wells Fargo **Year-End 2017 Job Performance Review** by Manager Bob Bing

36



YE 2017
Performance Review

- **Exhibit 13** – <u>**Nancy Coles' New Job Description NOT Approved by Human Resources**</u>



E_CC4 Nancy Coles
New Job Description

- **Exhibit 14** – Outlook <u>Email Sent to Nancy Coles</u> (Wed 6/13/2018 12:40 PM) - RE: Business Group Reporting SME Working Group (Follow Up)



RE  Business Group
Reporting SME Wor

- **Exhibit 15** –Outlook <u>Email Sent to Nancy Coles</u> (Wed 6/13/2018 12:43 PM) - RE: Out Of Office Messages  (Follow Up)



RE  Out Of Office
Messages  (Follow L

- **Exhibit 16** – Outlook <u>Email Sent to Nancy Coles</u> (Wed 6/13/2018 12:39 PM) - RE: OR&C L2 Report Documentation Initiative – Phase 2 [SHRP BAU Tracking Notable Items Summary Report] - Escalation (Follow Up)



RE  RE  OR&C L2
Report Documentat

- **Exhibit 17** – Outlook <u>Email Sent to Cindy Boorman</u> (Wed 6/13/2018 12:40 PM) - RE: OR&C L2 Report Documentation Initiative – Phase 2 [SHRP BAU Tracking Notable Items Summary Report] – Escalation 1 (Follow Up)



RE  RE  OR&C L2
Report Documentat

- **Exhibit 18** – Outlook <u>Email Sent to Nancy Coles</u> (Wed 6/13/2018 12:44 PM) - RE: Standard schedule (Follow Up)



RE  Standard
schedule (Follow Up

- **Exhibit 19** – Outlook Email Sent to Nancy Coles (Wed 6/13/2018 12:37 PM) - RE: Reporting Activities- Review/ Analysis of Consolidated Compliance Reports Inventory (slides 8 & 9) [ MK Status] - Follow Up



RE  Reporting
Activities- Review  A

- **Exhibit 20** – Outlook Email Sent to Nancy Coles (Wed 6/13/2018 12:38 PM) - RE: Training Complete_SHRP Access Request for Marcia Koutellos Requested (Follow Up)



RE  Training
Complete_SHRP Acc

- **Exhibit 21** – Outlook Email Sent to Nancy Coles (Wed 6/13/2018 12:36 PM) - RE: CRMC procedures (Follow Up)



RE  CRMC
procedures (Follow

- **Exhibit 22** – Outlook Email Sent to Nancy Coles (Wed 6/13/2018 12:37 PM) - A message from Mike Roemer: Introducing the Compliance Skills Survey (Follow Up)



RE  A message from
Mike Roemer  Introc

- **Exhibit 23** – Outlook Email Sent to Cindy Boorman (Wed 6/13/2018 12:41 PM) - FW: Meeting Follow Up (Status)



RE  Meeting Follow
Up (Status).msg

- **Exhibit 24** – Outlook Email Sent to Mike Roemer (Wed 6/13/2018 12:42 PM) - FW: Meeting Follow Up (Status)

FW  Meeting
Follow Up (Status M

A.

6.28.18_AG_RE
Chief of Compliance

B.

- **Exhibit 25** – Outlook <u>Email Sent to Nancy Coles</u> (Wed 6/13/2018 12:39 PM) - RE: New Job Description (Follow UP)

RE  New Job
Description (Follow

A.

06.28.18_CB_RE PE
job title question (Fe

B.

06.28.18_MK_RE PE
job title question (Fe

C.

- **Exhibit 26** – Outlook <u>Email Sent to Nancy Coles</u> (Wed 6/13/2018 1:25 PM) - Doctor's Appointment

Doctor's
Appointment (Wedr

- **Exhibit 27** – Outlook <u>Email Sent to Nancy Coles</u> (Wed 6/13/2018 12:37 PM) – Work Prioritization (Follow Up)

RE  Work
Prioritization (Follov

- **Exhibit 28** – Outlook <u>Emails Job Interview Confirmations with Recruiters and Wells Fargo Hiring Managers</u>

Job Interview_ BIM
PLM Lead _ ID 54110

A.

INTERVIEWED: Business Initiatives Manager - Policy Lifecycle Management Lead - Job ID 5411043

B. Job Interview_ ORM 3 _ ID 5411837_inter

INTERVIEWED: Operational Risk Manager 3 position - Job ID: 5411837

C. Job Interview_ ORM 3 _ ID 5411837_with

INTERVIEW: Operational Risk Manager 3 position - Third Party Risk Management Policy Compliance Oversight - Job ID: 5411837 (Mike Eilers)

D. RE Job Interview - BIM - 5412346_Inter

INTERVIEWED: Business Initiatives Manager – Consent Order Program Office- Job ID 5412346

E. JOb Interview ORM 4 _ interviewed 05.2

INTERVIEWED: Operational Risk Manager 4 – Job ID 5403585 (Crystal Reilly, Mark Ward)

F. Job Interview_ ORM 4 FCC OMM _intervi

INTERVIEWED: Operational Risk Manager 4 – Financial Crimes Operations Ongoing Monitor Manager – Job ID 5400147 (Michael Cho)

G. Job Interview_ ORM 4 _interviewed 04.1

INTERVIEWED: Operational Risk Manager 4 – Reputational Risk Oversight – Job ID 5394714

- **Exhibit 29** – Wells Fargo Skype for Business – Nancy Coles Time Away from her Desk



Nancy Coles - Wells Fargo Skype.pdf

- **Exhibit 30** – Wells Fargo Skype for Business – Cindy Boorman Time Away from her Desk



Cindy Boorman - Wells Fargo Skype.p

- **Exhibit 31** – Wells Fargo **ANTI - HARASSMENT** – Teamworks Team Member link < http://portal.teamworks.wellsfargo.com/1/policies-and-guidelines/team-member-handbook/Pages/Harassment.aspx

- **Exhibit 32** – Wells Fargo **Conduct Management Office Email**



05.30.18_MG_RE
Marcia Koutellos Co

- **Exhibit 33** – Wells Fargo **Email from Wells Fargo Allegations and Disputes Team**



05.31.18_Wells
Fargo Employee Rel.

- **Exhibit 34** – Marcia Koutellos **Email & Complaint to Wells Fargo CEO and Head of Human Resources**



05.30.18_RE Marcia
Koutellos Complaint

- **Exhibit 35** – Nancy Coles **assigns project management work**



06.28.18_NC_11
NancyMarcia.ics

A.

07.02.18_CB_Follow
-up from our call.ms

B.

41

<u>ORIGINAL COMPLAINT SUBMITTED ON MAY 25, 2018.</u>

<u>PRIVATE AND CONFIDENTIAL</u>

**Ms. Hope A. Hardison**
Senior EVP Chief Administrator Office
Wells Fargo Human Resources
420 Montgomery St, 12 fl
San Francisco, CA 94104-1207 - USA

Re:  <u>Marcia Koutellos Complaint of Discrimination, Harassment and Retaliation at Wells Fargo Company</u>

Dear Ms. Hardison,

The purpose of this letter is to bring to your attention in Human Resources my formal complaint of discrimination, harassment and retaliation, which I have been subjected at Wells Fargo by Ms. CINTHIA BOORMAN ("Ms. Boorman") Compliance Manager, Wells Fargo Compliance and Ms. NANCY R. COLES ("Ms. Coles") Compliance Consultant, Wells Fargo Compliance. In addition, my complaint will also describe the severe violations of Wells Fargo Employment Policies, Federal and State Laws by both individuals (Ms. Boorman and Ms. Coles), which commenced on May 2, 2018 and has continued to this date.

On April 13, 2018, as a result of the resignation of my former manager Mr. Bing (April 2, 2018) his Governance & Reporting team (team of 4 people, including myself) were officially moved to Ms. Boorman's Compliance Operations group. At that time, Ms. Boorman assigned me to work with Ms. Coles as my new manager.

It is my sincere hope that this letter will facilitate my efforts to address the egregious mistreatment at the hands of Ms. Boorman and Ms. Coles, to thwart any further mistreatment, and to advance my efforts to obtain an internal job transfer directly with Wells Fargo Human Resources department. After the resignation of my former manager, Mr. Robert Bing ("Mr. Bing"), Compliance Manager 5, on April 2, 2018, I have applied for internal job opportunities (manager levels 3 & 4) via Wells Fargo Careers and successfully interviewed with respective Human Resources recruiters and Wells Fargo hiring managers. Ms. Boorman and Ms. Coles are aware that I have internally interviewed for the following management positions at Wells Fargo and since May 7, 2017, they have threatened me with a poor performance appraisal, which will prevent me from any future internal job transfers at Wells Fargo.

| Interview Date | Job ID | Wells Fargo Position | Interviewer(s) |
|---|---|---|
| April 6, 2018 | 5394714 | Operational Risk Manager 4 – Reputational Risk Oversight | Jorie Thomas (Recruiter) |
| April 27, 2018 | 5400147 | Operational Risk Manager 4 – Financial Crimes Operations | Michael Cho |
| April 30, 2018 | 5399612 | Financial Crimes Manager 3 – Product Risk Manager HRA | Michael Torregiano |
| May 15, 2018 | 5403585 | Operational Risk Manager 4 – Customer Due Diligence | Kat Claxton (Recruiter) |
| May 21, 2018 | 5403585 | Operational Risk Manager 4 – Customer Due Diligence | Crystal Reilly /Mark Ward |

42

In light of the ongoing Wells Fargo Compliance reorganization and upon review of respective job requirements, I made a decision to submit my job application internally via Wells Fargo Career site. During my 23 plus years of career experience in the Financial Services in the USA and International regions, I have acquired diverse management experience in Global Compliance, Enterprise Risk Management, Operations, Change Management and Technology functions, including extensive experience on implementation of Regulatory Reforms, Risk Frameworks, Program Governance and other Corporate enhancement that drives today's business improvements and profitability.

Overall, prior to Wells Fargo, at HSBC I was responsible for providing business enterprise-level compliance, risk management and regulatory strategies across multiple HSBC regions. (USA, Canada, Latin America, Mena and ASP), partnering with regional compliance executives, risk leaders, business groups and support functions and technology teams to critically evaluate risks, controls, policies, procedures, data management, program governance, reporting and implementation of key business strategies and regulatory enhancements across multiple areas of the organization.

At Wells Fargo, as the Company's legitimate employment records reflect, I am an excellent and hardworking employee, who has consistently performed in exemplary fashion since the commencement of my employment at Wells Fargo on September 1, 2016. According to Mr. Bing's assessment of my Wells Fargo 2016 and 2017 Year End Performance Reviews, I have exceeded Mr. Bing's expectations and as a result received "strong" ratings with positive comments about my overall performance from September 2016 to March 2018, and consequently was awarded a $21,000.00 bonus for fiscal year 2017. Overall, Mr. Bing's comments reflected my willingness and capability to take on all types of activities to support Mr. Bing and Ms. Satten Compliance initiatives and successfully met their objectives and expectations.

- Based on Mr. Bing's comments of my 2016 Year End performance, "*Marcia built a solid foundation to support RCRM risk data activities and was well positioned for success in 2017*".

- During the 2017 YE Performance, Mr. Bing wrote "*Marcia successfully met all 2017 objectives. In particular, Marcia brings a positive, can-do attitude to work, treats all team members with respect, readily adapts to organizational changes and takes pride in the work she produces. This position her for success in 2018*".

Based on the Wells Fargo job offer letter dated August 22, 2016, my Wells Fargo job tile is *Compliance Consultant 4 – BCBS Governance Oversight Consultant with corporate title as "Vice President"*. From September 1, 2016 to April 2, 2018, I reported directly to my former manager, Mr. Robert Bing, (Compliance Manager 5) SVP/ Head of Governance & Reporting and to his manager, Ms. Sara Satten, SVP, Compliance Operations Officer. I have always been a dedicated Wells Fargo employee and received high praise and good performance appraisals from senior management (Mr. Bing and Ms. Satten).

At Wells Fargo, when Mr. Bing was my direct manager (from September 2016 to April 2018), I was responsible for the implementation of an effective risk data aggregation and reporting strategies associated to Regulatory BCBS 239 program (Wells Fargo G&O Framework), risk assessments, controls and credible challenge reviews for State of Compliance, among other responsibilities, working alongside of Corporate Risk, Enterprise Data Analytics, Enterprise Controls Oversight and RCRM Data Provider teams to support execution of regulatory program and COC (Ms. Satten) initiatives.

On November 16, 2017, while working for Mr. Bing and Ms. Satten at Wells Fargo, I was diagnosed with an unexpected DVT (Deep Vein Thrombosis), which was a life-threatening illness that has changed my life. Doctors told me that I was not allowed to walk around for two weeks, because it could cause the blood clot to move up to my lungs and heart, resulting in death. At that time, I didn't want to take short term disability, because it was important for me to continue to work at Wells Fargo and keep my mind out of the DVT painful period. Therefore, I explained my health situation to my manager, Ms. Bing and he obtained an approval from Ms. Satten for me to work from home for a period of two weeks. I am very grateful for their kindness in understanding the difficult health situation with DVT that I was dealing with at that time. From November 2017 to March 31, 2018, while working for Mr. Bing, he allowed me to go to my doctor's follow up appointments and make up time for hours spent in the doctor's office. He never asked for doctor's note. Other times, when people in his group had a cold or flu, Mr. Bing would allow his team to work from home. He never harassed or discriminate people who directly reported to him.  Although, I was recovering from a life-threatening illness (DVT), I have always given 110% as a Wells Fargo employee and Mr. Bing knew that.

The intent of this letter is to seek Wells Fargo Human Resources investigation of my full complaint of discrimination, harassment and retaliation against Ms. Boorman and Ms. Coles. Ms. Boorman is a Compliance Manager 5 and Head of Compliance Operations, reporting to Ms. Jillian Berrman, Compliance Manager and Mr. Mike Roemer, Chief Compliance Officer. Ms. Coles is a Compliance Consultant and reports directly to Ms. Boorman. Ms. Coles has a degree in Law.

However, as described in greater detail below, I have been subjected to systemic retaliation, discrimination and continuous harassment by Ms. Boorman and Ms. Coles, which actions against me became utterly intolerable and has negatively impacted my work environment at Wells Fargo, creating a hostile work environment.

4.  Ms. Boorman and Ms. Coles are harassing me for using the time that I have taken from my follow up doctor's visit, lunch and coffee breaks to threatened me with poor employment performance appraisals. I have always ensured to let them know via email when I have a doctor's appointment, the time I leave the office and time I return to the office from respective doctor's appointment. I addition, I also ensured to make up time for time spent at doctor's office, before doctor's visit and obtain their approvals. They are not applying the same actions to other team members that reports to Ms. Boorman and her team. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

5.  The severe discrimination, harassment and retaliation to which I have been subjected at Wells Fargo under Ms. Boorman management commenced on May 2, 2018. Unfortunately, after confronting Ms. Coles on May 7, 2018, I have become the victim of significant retaliation, which has worsened, resulting on hostile work environment and deterioration of my health. By way of example only, Ms. Coles was assigned as my manager by Ms. Boorman and I relied on Ms. Coles for support of various projects that were related to reporting strategy and internal processes, since I had just joined the team on April 13, 2018. However, after I confronted Ms. Coles to oppose her violations of Wells Fargo employment policies and New York State Labor Standards Law, which was described on Ms. Coles email of May 7, 2018 (listed below), both Ms. Coles and Ms. Boorman have increase this harassment and retaliation, creating a hostile environment at Wells Fargo.

(f)  Ms. Coles Email - "if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business. You may work 8:00 – 5:00 or 7:00 – 4:00 and take an hour lunch." - Ms.

44

Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(g) Ms. Coles Email – "If you are ill or have a personal business to attend to, as an exempt team member, you must take PTO in a half-day or full day increment (our group does not provide the option of working from home when sick)"- Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(h) Ms. Coles Email - "Our group has been generous to allow us to take an hour or two here and there for personal appointments provided that the time away from the office is timely made up." Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(i) Ms. Coles Email - "Before you can take any further time away for other personal appointments, you need to make up in full the hours that were missed last week and the week before last or, alternatively, take a paid time off to account for that time." - Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation

(j) Based on Ms. Coles' email of May 7th, she stated: "if you choose to work 9:00 – 5:00, you do not have an available lunch hour for personal business". This is a critical violation of Wells Fargo policies and New York State Labor Standards.

### a. Wells Fargo Meals & Rest Periods Policy: New York

"30-minute meal period for team members working more than 6 hours extending over "noon day meal period" (11:00 a.m. to 2:00 p.m.); additional 20-minute meal period, taken between 5:00 p.m. and 7:00 p.m., if shift begin before 11:00 a.m. and continues past 7:00 p.m."

### b. New York State Labor Standards: "Guidelines for Meal Periods"

"Every person employed in or in connection with a mercantile or other establishment or occupation coming under the provisions of this chapter shall be allowed at least thirty minutes for the noonday meal, except as in this chapter otherwise provided. The noonday meal period is recognized as extending from eleven o'clock in the morning to two o'clock in the afternoon. An employee who works a shift of more than six hours, which extends over the noonday meal period, is entitled to at least thirty minutes off within that period for the meal period"

"Every person employed for a period or shift starting before eleven o'clock in the morning and continuing later than seven o'clock in the evening shall be allowed an additional meal period of at least twenty minutes between five and seven o'clock in the evening."

Ms. Cole's mandatory instructions for me to comply were only applicable to me and NOT to other employees that works for Ms. Boorman or at Wells Fargo. Ms. Coles and Ms. Boorman discriminatory actions are unlawful and should NOT be acceptable by Wells Fargo. Ms. Boorman and Ms. Coles are not applying the same rules to other team

45

members that reports to Ms. Boorman. I have supporting evidence about this severe harassment against me and Wells Fargo violations, available for Wells Fargo Human Resources investigation.

6. On May 22, 2018, Ms. Boorman came to New York office for a meeting with Ms. Jillian Berman (Ms. Berman) and Mr. David D'Amico (Mr. D'Amico). At that time, Ms. Boorman asked me to meet with me to go over project notes, but the main focused of her conversation was to give me a verbal warning about: (a) my time spent for ongoing doctor's follow up visits, (b) extensive time that I spent away from my desk, which was told by another person in the New York office that she uses as an informant, (c) how she was monitoring my time away from my desk using Wells Fargo Instant Messaging (IM), (d) how my former manager (Mr. Bing) told her details about my DVT, health treatment and how it negative impacted my 2017 performance, (e) issues with activities and project assigned by Ms. Coles, who reports directly to Ms. Boorman and has a Law degree.

   (i) My time spent for ongoing doctor's follow up visits - I have always ensured to let them know via email when I have a doctor's appointment, the time I leave the office and time I return to the office from respective doctor's appointment. I addition, I also ensured to make up time for time spent at doctor's office, before doctor's visit and obtain their approvals. They are not applying the same actions to other team members that reports to Ms. Boorman and her team. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

   (j) How another team member (manager in the New York office) told her that I have spent extensive time away from my desk in the New York office. – Ms. Boorman implied that this team member was Ms. Jillian Berman, who has her office three feet away from my cubical desk in the New York office. Ms. Boorman blatant lies and accusations that I am not conforming to her orders, rules are despicable and a clear form of harassment and discrimination against me, because she doesn't enforce the same actions to other team members that reports to Ms. Boorman. To have Mr. Berman (who is also Ms. Boorman's manager) to tell her false information about my work hours and whereabouts at Wells Fargo are NOT acceptable and a clear for a severe harassment. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

   (k) How she was monitoring my time away from my desk using Wells Fargo Instant Messaging (IM) – Ms. Boorman mentioned that very often and most occasions when she checks my Wells Fargo Instant Messaging (IM) status it shows that I am not on my desk and it was unacceptable for her. She affirmed that I should be on my desk at all times. Ms. Boorman and Ms. Coles are also using Wells Fargo Instant Messaging ("IM) to control the time that I am out of my desk. My desk is outside of Ms. Berman's office, who is also Ms. Boorman's manager. When a person doesn't type on the keyboard for some time, IM will show status "inactive", "away", "meeting", "busy". Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence to provide for Wells Fargo Human Resources investigation.

   (l) Mr. Boorman and Ms. Coles ongoing harassment - The Wells Fargo IM, well known as "Skype for Business" is utilized for online meetings, presentation and quick chats with other team members. Ms. Boorman is using Wells Fargo IM to harass me and impose actions that are not applicable to other team members that reports to Ms. Boorman. I have supporting evidence about

46

this severe harassment and discrimination against me, available for Wells Fargo Human Resources investigation.

(m) Mr. Boorman also told me how my former manager (Mr. Bing) told her details about my DVT health treatment and the negative impact to my 2017 performance. – This was a blatant lie from Mr. Boorman, because I received an outstanding 2017 Wells Fargo Performance appraisal from Mr. Bing (my former manager). In fact, I told her that based on Wells Fargo policies, Mr. Bing would never disclose any information about my personal health, because it would be a violation of Wells Fargo employment policies. In fact, on March 20, 2018, Mr. Bing arranged for a meeting with Wells Fargo Employee Relations, Ms. Jo Bingham ("Ms. Bingham") to review questions about PTO, STD and other employment policies that protect my job at Wells Fargo. Mr. Bing would never mention anything to Ms. Boorman about my previous health issues. Furthermore, at that time, I was informed by Ms. Bingham, Employee Relations that my Wells Fargo profile was clean without any notes from Mr. Bing about my previous DVT Health condition. Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment and discrimination against me, available for Wells Fargo Human Resources investigation.

(n) Ms. Boorman also made negative affirmations and accusations about issues with activities and projects assigned by Ms. Coles to me. – Another blatant lie. I have always conformed to Ms. Boorman and Ms. Coles project requests and ensure to complete them within timelines set by both. In addition, I have always provided status on respective activities via email, but for some reason, lately, Ms. Boorman and Ms. Coles always find an issue with my skills and project approach, even do I have always completed all activities. Consequently, they are keeping make threats that such "issues" will result in a poor performance appraisal. In one occasion, I escalated to them that another team member in her group was not providing project information or status, which was past due and at that time, they heavily criticized me for escalating those critical issues and blaming me for the team member delays in providing information for respective projects. Ms. Boorman and Ms. Coles are NOT using the same approach to other team members that work for Ms. Boorman. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

(o) Ms. Boorman also gave me a "verbal warning about issues with my work, attendance, doctor's visit, short breaks (to go to the bathroom, pick up lunch)", extensive time out of the office, which according to her were reported by another team member informant that has an office on the same floor in New York office. - Ms. Boorman and her informant approach and harassment against me are unacceptable and Wells Fargo should take immediate actions to stop Mr. Boorman's violations, harassment and discrimination against me I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

(p) Ms. Boorman also made a negative criticism and unprofessional comment to me about Mr. Mike Roemer, which was related to the Reporting Strategy project that she was putting together for Mr. Roemer. Her negative and unprofessional criticism about Mr. Roemer included:

- Ms. Boorman said: "*Mike (Mr. Roemer) can't figure it out what kind information he needs to report to the Wells Fargo Board*". She affirmed that is hard to work with him, because she must do everything for him.

- When I asked Ms. Boorman about "High Level Requirements" for the Reporting Enhancement project, Ms. Boorman said: "*Mike (Mr. Roemer) doesn't understand what Wells Fargo Board/ Committee needs and has difficulties in providing reporting requirements for her project.*

Ms. Boorman's comments were unprofessional, because I don't need to know her opinion about the Chief Compliance Officer, Mr. Mike Roemer. If she told me that about Mr. Roemer, she is telling other people too. It's very unprofessional.

These are not the only Wells Fargo violations, harassment, discrimination and retaliation that Ms. Boorman and Ms. Coles has enforced against me as an employee of Wells Fargo. Both, Ms. Boorman and Ms. Coles are running the Compliance Operations department, as their own business, with their own policies and rules, which are a violation of Wells Fargo policies, Federal and New York State Laws. I have supporting evidence about this severe harassment against me, available for Wells Fargo Human Resources investigation.

The retaliation and harassment from Ms. Boorman and Ms. Coles, including their abusive actions and violations of Wells Fargo Employment policies can be verified from previous discussions, instant messages (IMs) and exchange emails that I had with them from May 2nd to this date. Details and supporting documentation are available for Human Resources investigation, upon request.

In many occasions, Ms. Boorman and Ms. Coles made baseless comments about my work performance, and when I asked for them to provide evidence of their affirmations they would change the subject and would respond "well it's in general". Their responses seemed to be unfounded.

The false allegations/ accusations made by Ms. Boorman and Ms. Coles on multiple occasions about my professionalism, job qualifications and work performance are baseless.   Furthermore, I believe I am also the victim of acute and egregious retaliation by the same individuals for my efforts to oppose this mistreatment and other violations that I am reporting to Wells Fargo Human Resources.

In sum, it is in good faith, I believe Ms. Boorman and Ms. Cole's deplorable actions are in contravention of the Company's policies, violation of Federal and State Laws and they have violated, among other things, my employment rights at Wells Fargo.

This complaint does not include the support documentation that I am willing to provide for Wells Fargo Human Resources investigation.

The only remedy I am seeking is for an internal transfer to another Wells Fargo internal position over which Ms. Boorman and Ms. Coles won't have supervisory responsibility.

I enjoy working for Wells Fargo institution, which to me is a great Financial Institution to work. When I made a decision to report Ms. Boorman's misconduct described in detailed plaint to Human Resources, I am aware of the possible repercussions, retaliatory actions that will be taken by respective individuals.

It is my sincere hope that this letter will facilitate my efforts to address the egregious mistreatment at the hands of Ms. Boorman and Ms. Coles to thwart any further mistreatment, and to advance my efforts to obtain an internal transfer and other remedies directly with Wells Fargo Human Resources Department.

Very truly yours,

**Marcia Koutellos**
marcia.koutellos@wellsfargo.com
Wells Fargo Compliance
150 East 42nd Street, New York, NY 10017
Office: 1917.260.1218 | Mobile: 1646.577.5600